UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARCUS DUMOND, et al.,

            Plaintiffs,

   v.

MASSACHUSETTS FINANCIAL SERVICES
CO. and MFS FUND DISTRIBUTORS, INC.,

            Defendants.

C.A. No. 04-11458 (GAO)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants Massachusetts Financial Services Co. and MFS Fund Distributors, Inc. (collectively, "MFS") submit this memorandum of law in support of their motion to dismiss the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

*Introduction*

Plaintiffs have sued MFS alleging that the fees MFS charged to manage and distribute eleven of the MFS Funds were "excessive" in violation of Sections 12(b) and 36(b) of the Investment Company Act ("ICA"). To state such a claim, plaintiffs must make *factual* allegations supporting their conclusion that MFS's fees were "so disproportionately large that [they bore] no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." Compare Compl. ¶ 39 with U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 240 (1st Cir. 2004) ("parroting the language" of the "cause of action, without providing factual support, is not sufficient to state a claim.").[1] They have not done so.

---

[1] Citations to "Compl." refer to the Plaintiffs' Complaint filed on May 4, 2004.

Plaintiffs' excessive fee Complaint is devoid of almost any factual allegations about the fees MFS received from the eleven funds for which plaintiffs sue, the services MFS provided to earn those fees, or why those fees were so unreasonable that they could not have been the result of arm's-length bargaining.  Instead, plaintiffs simply allege with generality the legal conclusions upon which they rely, which is the same boilerplate approach that has been rejected by Courts of Appeals in the Second, Third, and Fourth Circuits as an inadequate basis upon which to sustain claims under Section 36(b).[2]  See Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140 (3d Cir. 2002); Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321 (4th Cir. 2001); Verkouteren v. Blackrock Fin. Mgmt., Inc., 1999 WL 511411 (S.D.N.Y. July 20, 1999), aff'd, 208 F.3d 204 (2d Cir. 2000).

### *Background*

Massachusetts Financial Services Co. is a Delaware corporation headquartered in Boston that provides investment advice, administrative services and other support to mutual funds (the "MFS Funds" or "Funds").  Compl. ¶¶ 8, 38.  MFS Fund Distributors, Inc. ("MFD") is the principal underwriter and distributor of the Funds.  Id. ¶ 37.

MFS charges the Funds investment management fees, calculated as a percentage of the daily net assets of each Fund.  Id. ¶ 8.  The fees to be paid are approved by the independent trustees who serve on the Boards of each of the MFS Funds, none of whom are "interested persons" as defined in the ICA.  Id. ¶ 17.  In addition to investment management fees, MFS charges the Funds for certain of the expenses incurred in the distribution process.  Id. ¶ 11.  These fees are adopted and approved by the Board of Trustees of each of the Funds pursuant to the SEC's Rule 12b-1.  See 17 C.F.R. § 270.12b-1; Compl. ¶ 24.  Plaintiffs claim that both the

---

[2] Requiring plaintiffs to plead facts in support of their legal conclusions does not impose a heightened pleading standard.  See Krantz v. Prudential Invs. Fund Mgmt LLC, 305 F.3d 140, 144 (3d Cir. 2002).

advisory fees and the Rule 12b-1 distribution fees are excessive, and violate Sections 36(b) and 12(b) of the ICA.  Id. ¶¶ 15, 26-28.

*Argument*

**I.      Motion To Dismiss Standard**

Although a court deciding a motion to dismiss must accept as true all the factual allegations in the complaint, Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001), a court need not "swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited."  Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).  The First Circuit has held that "it is only when . . . conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes." Cooperman v. Individual Inc., 171 F.3d 43, 47-48 (1st Cir. 1999) (citation omitted).  Plaintiffs must "allege a factual predicate concrete enough to warrant further proceedings."  Karvelas, 360 F.3d at 240 (citation omitted).

Where further proceedings will entail costly discovery and constitute a significant drain on the resources of the parties and the court, careful scrutiny of a complaint's allegations is warranted.  See, e.g., Cupp v. Alberto-Culver USA, Inc., 310 F. Supp. 2d 963, 968 (W.D. Tenn. 2004) (noting that the essential purpose of Rule 12(b)(6) is to "allow[] the court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery").  The First Circuit has held:

> [E]ven under the liberal pleading requirements of Rule 8(a), a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory" . . . Simply parroting

- 3 -

> the language of a . . . cause of action, without providing some
> factual support, is not sufficient to state a claim.

Karvelas, 360 F.3d at 240 (internal citations omitted). "Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999).

**II.       Plaintiffs Fail To State a Claim Under Section 36(b) of the ICA.**

    **A.       Plaintiffs Do Not Plead Enough Facts.**

Section 36(b) imposes a fiduciary duty on the investment adviser of a registered investment company "with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser." 15 U.S.C. § 80a-35(b). This discrete duty imposed by Section 36(b) is more narrow than the general fiduciary duty implied in the common law. See Green v. Fund Asset Mgmt., L.P., 286 F.3d 682, 685 (3d Cir. 2002). The remedy afforded by Section 36(b) is also narrow. A claim under that section may only proceed against the actual recipient of allegedly excessive compensation, and any excessive fees may only be recovered for the period beginning one year prior to the lawsuit being filed (in this case, for the year beginning May 4, 2003). 15 U.S.C. § 80a-35(b)(3). These "highly restrictive limitations on actions under Section 36(b) evidence an intent by Congress to protect investment advisers and their affiliates from open-ended litigation and nuisance suits." Krinsk v. Fund Asset Mgmt., Inc., 1986 WL 205, at *2-4 (S.D.N.Y. May 9, 1986) (Congress "struck a careful balance between the interest in enabling shareholders to police investment advisory fees and the interest in minimizing nuisance litigation.").

The Second, Third, and Fourth Circuits all have addressed the requirements for pleading a legally cognizable claim under Section 36(b). See Verkouteren v. Blackrock Fin. Mgmt., Inc.,

- 4 -

1999 WL 511411 (S.D.N.Y. July 20, 1999), aff'd, 208 F.3d 204 (2d Cir. 2000).  Plaintiffs must "plead facts sufficient to show that the amount of the advisory fee was 'so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." Id. (quoting Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923, 928 (2d Cir. 1982)); Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140 (3d Cir. 2002); Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321 (4th Cir. 2001).  In each of those cases, the courts affirmed dismissal of the Section 36(b) claims under Rule 12(b)(6) because of plaintiffs' failure to allege facts to support the pleaded legal conclusions advanced in their complaint.

      In Migdal, the Fourth Circuit stated:

> The district court held that these allegations failed to state a claim because plaintiffs did not address in any way the relationship between the fees that the advisers received and the services which they provided in return. . . .
>
> We agree with the district court.  To survive a motion to dismiss, a complaint may not simply allege in a conclusory manner that advisory fees are 'excessive.'  Instead, a plaintiff must allege facts that, if true, would support a claim that the fees at issue are excessive.  As the district court correctly recognized, in order to determine whether a fee is excessive for purposes of Section 36(b), a court must examine the relationship between the fees charged and the services rendered by the investment adviser. . . .
>
> *Plaintiffs have failed to allege any facts pertinent to this relationship between fees and services.  Specifically, while plaintiffs have challenged the fees that defendants charged, they have failed to allege sufficient facts about the services that defendants offered in return for those fees.*  For example, plaintiffs' comparison between the two underlying funds and three other mutual funds is not particularly meaningful precisely because it does not address the particular services offered by the defendants in this case.

Migdal, 248 F.3d at 327 (citations omitted) (emphasis added).  Similarly, in Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140 (3d Cir. 2002), the Court of Appeals affirmed dismissal of

the plaintiffs' Section 36(b) claim for excessive compensation "since Plaintiff failed to allege *any facts* indicating that the fees received were disproportionate to services rendered." Krantz, 305 F.3d at 143 (emphasis added).[3]

Here, as in Migdal, Krantz, and Verkouteren (and unlike in Wicks and Fidelity), plaintiffs do not allege facts indicating that the fees charged by MFS were disproportionate to the services rendered, but instead stick to pleading legal conclusions drawn from the Second Circuit's opinion in Gartenberg. Plaintiffs do not pair these impermissibly broad conclusions with meaningful factual allegations directed to the manner in which the fees were set or the relationship between the fees and services provided. Instead, plaintiffs cut-and-paste excerpts from academic and government studies about the mutual fund industry overall – even though the literature *does not even mention MFS* or the eleven MFS funds that plaintiffs allege charged excessive fees from mid-2003 until mid-2004. Compl. ¶¶ 46, 49.

For example, plaintiffs do not plead facts as to MFS or the Funds by quoting Warren Buffet's opinions about the mutual fund industry at large, or by excerpting a newspaper article about a different mutual fund company (Franklin Resources). Id. ¶ 69. Their Section 36(b) claim must be dismissed because, no matter how generously construed, none of these allegations say enough about MFS, the fees it obtains, and the services it. See Yampolsky 2004 WL 1065533, at 2 (dismissing Section 36(b) claim where, as here, "conspicuously absent from" plaintiffs' Complaint were "any factual allegations as to the *actual* fee negotiations or management and distribution services rendered by *these* defendants.").

---

[3] Unlike in the Second, Third, and Fourth Circuits, the Court of Appeals in this circuit has not addressed the pleading standard under Gartenberg. Two recent cases from this Court, Krantz v. Fidelity Mgmt. & Research Co., 98 F. Supp. 2d 150 (D. Mass. 2000) ("Fidelity") and Wicks v. Putnam Inv. Mgmt., LLC, 2005 WL 705360 (D. Mass. March 28, 2005), have sustained Section 36(b), but only where plaintiffs did comply with Rule 8(a) by making factual allegations to support at least some of the Gartenberg factors and by making allegations about each of the funds at issue in the lawsuit.

The Southern District of New York recently dismissed a pair of Section 36(b) complaints similar to this one, finding that plaintiffs' superficial pleading of legal conclusions was not supported by factual allegations sufficient to demonstrate how or why the fees were so disproportionately large that they bore no reasonable relationship to the services rendered. Yampolsky, 2004 WL 1065533.

> [N]owhere does either complaint, in sum or in substance, indicate how or why the fees are "so disproportionately large that [they] bear[] no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." For example, conspicuously absent from either of the complaints are any factual allegations as to the *actual* fee negotiations or management and distribution services rendered by *these* defendants. Instead, the complaints rely on speculation, inference and generalized observations about the securities industry from public figures such as Warren Buffet.

Id. at *2 (citation omitted) (emphasis in original). Such dismissals are far from unusual. See Levy v. Alliance Capital Mgmt. L.P., 1998 WL 744005, at *2-4 (S.D.N.Y. Oct. 26, 1998), aff'd, 189 F.3d 461 (2d Cir. 1991) (dismissing Section 36(b) claim because "a complaint may not simply allege in a conclusory manner that the advisory fees are excessive"); Olesh v. Dreyfus Corp., 1995 WL 500491, at *19, 21 (E.D.N.Y. Aug. 8, 1995) (dismissing Section 36(b) claim for failing to allege that the fee is so disproportionately large that it bears no reasonable relationship to the services rendered); Wexler v. Equitable Capital Mgmt. Corp., 1994 WL 48807, at *4 (S.D.N.Y. Feb. 17, 1994) (dismissing 36(b) claim where advisory fee allegations were "merely a pleading of a conclusion of fact").

**B.    The Excessive Advisory Fee Claim Must Be Dismissed.**

More specifically, plaintiffs have not alleged enough facts to support any of the legal conclusions upon which they rely, and to not come close to supporting the critical conclusion that advisory fees bear no reasonable relationship to the services rendered.

### 1. Plaintiffs Do Not Allege Any Facts Indicating the Nature and Quality of the Services Provided by MFS.

In Gartenberg, the Second Circuit concluded that the nature and quality of the services provided to the mutual fund by the adviser are relevant to the conclusion whether the fees charged are excessive. Gartenberg, 694 F.2d at 929-30. Plaintiffs attempt to apply this observation, but do so only superficially. They say the services MFS provides to the Funds are "straightforward" and include discretionary investment decisions concerning "stocks, bonds, and other securities for the Funds." Compare Compl. ¶¶ 41-45 with In re Thomas McKinnon Sec., Inc., 120 B.R. 301, 303 (Bankr. S.D.N.Y. 1990) (observing that it is the "investment advice and management skills of the asset managers [that] are the primary attractions for the funds"). This content-free adjective cannot carry the day. Plaintiffs fail entirely to allege anything concerning the "quality" of the "straightforward" services for which they claim the Funds overpaid. Unlike in the Fidelity complaint, plaintiffs do not allege that (or how) any particular MFS Fund was poorly managed or that any MFS portfolio manager failed to discharge his or her duties with professionalism and care. In fact, plaintiffs do not even mention most of the funds for which they sue.

### 2. Plaintiffs Do Not Allege Any Facts Indicating the Profitability of the Funds to MFS.

A mutual fund's profitability to the adviser-manager may be considered as part of an inquiry into whether the fees charged are excessive. Gartenberg, 694 F.2d at 929-30. Profitability is not just measured by the marginal cost of managing new assets for the fund in question, but must also include a reasonable allocation of other costs borne by the adviser relating to the fund. Schuyt v. Rowe Price Prime Reserve Fund, Inc., 663 F. Supp. 962, 977-78 (S.D.N.Y. 1987), aff'd, 835 F.2d 45 (2d Cir. 1987), cert. denied, 485 U.S. 1034 (1988).

The Complaint does not address this issue. It contains no allegation concerning the profitability of the eleven funds to MFS. See Compl. ¶¶ 46-48. The only factual allegation in this regard is that MFS's average profits *decreased* from 2002 to 2003. See id. ¶ 14 (alleging that MFS's earnings decreased by $6 million). Instead of pleading facts concerning profitability that would support a Section 36(b) claim that MFS's fees were excessive, the Complaint speculates that MFS's reporting "obfuscates" its "true profitability" and that suspected unspecified "inaccurate accounting practices" might be at play. See id. ¶ 46. Plaintiffs also aver the conclusion that MFS's "incremental costs" of providing advisory services are "nominal." They provide no factual basis, however, for how the decrease in earnings to which they refer is in any way excessive.

Even if plaintiffs had alleged facts showing that the eleven Funds were highly profitable to MFS, that alone would not be sufficient to show a violation of Section 36(b). In Schuyt, the court upheld a fee structure that gave the adviser a pre-tax profit margin as high as 77.3%. Schuyt, 663 F. Supp. at 989. The court found that in light of the surrounding circumstances, including the high quality of the services rendered and the strong qualifications and conscientiousness of the directors, even a profit margin of 77.3% was not so high as to violate Section 36(b). Id. at 988-89. Here, as discussed above, plaintiffs have not alleged any facts regarding the quality of the services rendered; nor, as discussed below, have they alleged any facts showing that the Trustees were not highly-qualified, careful and conscientious. Thus, even assuming MFS's business is highly profitable, plaintiffs have failed to allege that the "surrounding circumstances" made that profitability "excessive" with respect to any of the eleven funds in which plaintiffs invested during the 12-month period beginning May 4, 2003.

### 3. Plaintiffs Do Not Allege Any Facts Showing that MFS Realized Any Economies of Scale.

Of the seven paragraphs of the Complaint concerning economies of scale, five do not even mention MFS or any MFS Fund, see Compl. ¶¶ 49-53, and two refer obliquely to an MFS fund that plaintiffs do not even claim to have owned. See id. ¶¶ 54-55. Conspicuously absent are any factual allegations showing that in any of the eleven funds, MFS actually achieved any economies of scale in the year preceding the filing of this Complaint, the nature and amount of any such economies of scale, and the extent to which these never-alleged efficiencies were or were not shared with Fund shareholders.

Instead, plaintiffs allege that the entire mutual fund industry is overpaid. For example, plaintiffs allege that "[t]he existence of economies of scale in the mutual fund industry has been recently confirmed by both the SEC and the Governmental Accounting Office (the 'GAO')." Id. ¶ 49. Plaintiffs also cite academic research on the issue of economies of scale in the mutual fund industry at large. Id. ¶¶ 50-51. Plaintiffs further quote at length from a newspaper article about the economies of scale realized by Franklin Resources, a fund adviser with no relationship to MFS. As a matter of law, plaintiffs' "speculation, inference and generalized observations about the securities industry" and *other* fund advisers is insufficient to state a claim against MFS under Section 36(b). Yampolsky, 2004 WL 1065533, at *1-2; see also Krinsk v. Fund Asset Mgmt., Inc., 875 F.2d 404, 411 (2d Cir. 1989) (affirming district court's finding that plaintiff failed to show that defendant achieved economies of scale, since the fact that defendant's ratio of fee based revenues "declined at a time when the Fund size grew . . . does not establish that such decline was necessarily due to economies of scale"); Kalish v. Franklin Advisers Inc., 742 F. Supp. 1222, 1238 (S.D.N.Y. 1990) (courts reject the argument "that since a fund increased dramatically in size, economies in scale must have been realized"), aff'd, 928 F.2d 590 (2d Cir.

1991). Plaintiffs do not allege, for example, why the "breakpoint" fee structure of the MFS Emerging Growth Fund (which required management fee reductions by MFS as fund assets as grew) is inconsistent with a supposed failure by MFS to recognize economies of scale. See Ex. A.[4] Nor do they challenge the disclosure in that Fund's SAI that in negotiating MFS's advisory fee the "Trustees *considered whether there have been economies of scale* with respect to the management of the Fund and whether the Fund has appropriately benefited from any economies of scale, pursuant to the advisory fee breakpoints." Id. The only specific allegation included in the Complaint in this regard is that increases in MFS's management fees have outpaced growth in the Massachusetts Investors Trust (MIT) Fund, Compl. ¶ 54, *a fund not at issue in this case*.

### 4. Plaintiffs Do Not Allege Any Facts Showing That MFS Imposed Higher Fees on the Funds Than It Did on Other *Similar* Funds.

A fact-based "comparison of the fees charged to the Funds at issue in this case with those charged by other advisers to similar funds" could be relevant to the question whether the MFS fees are excessive. Yampolsky, 2004 WL 1065533, at *1. Plaintiffs allege in this regard that MFS earned higher fees from the MFS Funds than it did from institutional clients, while providing "precisely the same service" to those institutional clients. Compl. ¶¶ 41-42. According to plaintiffs, the purported disparity between mutual fund and institutional fees means that the former are excessive. But, in fact, there is no basis in the Complaint or logic to assume that this conclusion "rises to what experience indicates is an acceptable level of probability" such that it may be treated as a fact for pleading purposes. See Cooperman, 171 F.3d at 47-48. This very same conclusion was rejected in Strougo v. BEA Assocs., 188 F. Supp. 2d 373, 384

---

[4] The relevant pages from sample MFS Fund registration statements are attached hereto as Exhibits A and B. The Court can take judicial notice of documents, such as these, that are filed with the SEC. See, e.g., Recupito v. Prudential Sec., Inc., 112 F. Supp. 2d 449, 453 (D. Md. 2000).

(S.D.N.Y. 2002) (rejecting Section 36(b) claim based on allegations of lower fees for institutional clients).

The Complaint's only effort to identify a fund that charges a different rate to an institutional investor actually *undermines* plaintiffs' claim.  Plaintiffs say MFS charged the institutional customer *more* than the mutual fund (not less).  Compare Compl. ¶ 58 (alleging that MFS charged shareholders of MIT a management fee of 33 basis points) with id. (alleging that MFS charged an institutional shareholder of MIT a management fee of 34 basis points).  Reference to a quotation from *the founder of Vanguard Group* to the effect that his funds stand "alone" as the best mutual funds does nothing to save this Complaint from dismissal.  See Compl. ¶ 59; Id. Ex. 4 at 23.

Plaintiffs' other factual allegations also are not relevant to the comparative fee structure of the eleven MFS Funds that are the subject of this lawsuit.  For example, the allegations that the New Discovery Fund and the Global Trust Fund charged fees of 90 basis points and 84 basis points, respectively, could not possibly be relevant both because plaintiffs do not claim to have invested in those funds and because plaintiffs do not compare the fees charged to those funds to anything.  See Compl. ¶ 58.  Likewise, plaintiffs' allegation that the MFS Mid Cap Fund charged a fee of 75 basis points says nothing of the relative appropriateness of that fee because plaintiffs fail to compare it to any other fund, similar or otherwise.  See id.  The fact that MFS charges different fees to different funds does nothing other than show, consistent with the prospectus disclosure referred to above, that the Trustees in fact are paying attention.

### 5. Plaintiffs Do Not Allege Any Facts Regarding Fall-Out Benefits, and Their Allegations Regarding "Soft Dollars" Fail To State a Claim.

Fall-out benefits are "indirect profits to [the adviser-manager] attributable in some way to the existence of the Fund" in question.  Krinsk v. Fund Asset Mgmt., Inc., 715 F. Supp. 472, 494

(S.D.N.Y. 1988), aff'd 875 F.2d 404 (2d Cir. 1989). Such benefits could be relevant to an evaluation of a fee structure, but only if they are "so substantial that they rendered the Manager's fee so disproportionately large as to label its negotiation a 'breach of fiduciary duty' within the meaning of § 36(b)." Gartenberg, 694 F.2d at 932. Here, plaintiffs attempt to plead "fall-out benefits" by claiming that defendants received unspecified benefits from the "attraction of new customers," "cross-selling related funds to current customers," re-selling opportunities, the creation of "goodwill," "transfer agency and custodian fees," and "securities lending arrangements." Compl. ¶¶ 60-64. Of course, every mutual fund company is afforded some generic opportunities by virtue of its advisory contracts with retail funds, and all of them are permitted to charge fees. The notion that MFS had particular "benefits" of this sort, or that they somehow made the fees charged to these particular funds unconscionable, is entirely unsupported.[5]

Plaintiffs also allege that defendants received "soft dollars." Compl. ¶ 61. The Complaint describes "soft dollars" as "credits" MFS allegedly received from brokers "in exchange for routing the Funds' securities transaction orders and other business" to those brokers. Id. Plaintiffs allege that these "credits," to be used to obtain research and other services, only benefited the funds a "little" and benefited MFS more. See id. Plaintiffs fail to acknowledge, however, that payments to brokers (including through "soft dollars") for research and brokerage services are protected by the safe harbor set forth in Section 28(e) of the Securities Exchange Act of 1934. 15 U.S.C. § 78bb(e)(1). It provides:

---

[5] In any event, fees attributable to transfer and custodial services and securities lending arrangements are generated directly by the activities of the Funds, and thus "cannot be characterized as fall-out revenue." Krinsk, 875 F.2d at 411. But even assuming *arguendo* that these were "fall-out benefits," the Complaint nowhere alleges the magnitude of the benefits, much less explains how they render the investment advisory fees "so disproportionately large as to label its negotiation a 'breach of fiduciary duty' within the meaning of § 36(b)." Gartenberg, 694 F.2d at 932.

> No person . . . shall be deemed to have acted unlawfully or to have breached a fiduciary duty under State or Federal Law . . . solely by reason of his having caused the account to pay a member of an exchange, broker, or dealer an amount of commission for effecting a securities transaction in excess of the amount of commission another member of an exchange, broker or dealer would have charged for effecting that transaction, if such person determined in good faith that such amount of commission was reasonable in relation to the value of the brokerage and research services provided by such member, broker, or dealer, viewed in terms of either that particular transaction or his overall responsibilities with respect to the accounts as to which he exercises investment discretion.

15 U.S.C. § 78bb(e)(1). Plaintiffs do not allege that MFS's use of "soft dollars" fell outside of the safe harbor. Instead, contrary to the very text of the safe harbor, they bring a claim for a breach of fiduciary duty under federal law (Section 36(b)) anyway. This is impermissible. See id; see also Securities, Brokerage and Research Services, Exchange Act Release No. 23,170, 17 C.F.R. Part 241 (Apr. 23, 1986), available at 1986 WL 630442, at *10 ("[N]o violation of Section 36(b) could occur for a soft dollar arrangement falling within the safe harbor of Section 28(e)").

### 6. Plaintiffs Do Not Allege Any Facts Showing that the Independent Trustees of the Funds Were Not Well-Qualified and Conscientious In Considering and Approving the Advisory Fees.

"The expertise of the trustees, whether they are fully informed, and the extent of care and conscientiousness with which they perform their duties are among the most important factors to be examined in evaluating the reasonableness of compensation under Section 36(b)." Krinsk, 875 F.2d at 412. The business judgment of conscientious, independent directors must be accorded great weight; "the court is not authorized 'to substitute its business judgment for that of a mutual fund's board of directors in the area of management fees.'" Gartenberg, 694 F.2d at 928

(quoting the <u>Investment Company Amendments Act of 1970</u>, S. Rep. No. 91-184, 91st Cong., 2d Sess. (1970), <u>reprinted in</u> 1970 U.S. Code Cong. & Ad. News 4897).[6]

Plaintiffs allege that it is "obvious" that the Trustees "lack" independence and are not conscientious. This is a prototype asseveration to which no weight should be afforded. Plaintiffs concede that a majority of the Board of each of the Funds is composed of trustees who are not "interested" within the meaning of Section 2(a)(19) of the ICA. Compl. ¶ 17. Plaintiffs do no better by claiming that the Trustees made decisions with "virtually no information" and "rarely, if ever questioned" what they were told. <u>Id.</u> ¶¶ 17, 20. What seems "obvious" to plaintiffs is not enough under Rule 8 to turn speculation into a license for discovery. Plaintiffs do not identify an action or omission of any directors, or facts to support the conclusion that a Harvard Business School professor, a chief of cardiac surgery at teaching hospital, and the President/CEO of a financial services firm were "dominated and unduly influenced by Defendants in reviewing and approving the fees paid by Plaintiffs and other shareholders of the Funds." <u>Id.</u> ¶ 17.

There similarly is no substance to plaintiffs' allegations that MFS failed to fully inform the Trustees of all material facts relating to fees and compensation, or that the Trustees "failed to insist upon adequate information." <u>Id.</u> ¶ 70. Plaintiffs do not specify a single instance in which information actually was withheld from the Trustees, nor a single instance in which the Trustees lacked sufficient data to make a well-informed decision. As in <u>Yampolsky</u>, "conspicuously absent from" the Complaint "are any factual allegations as to the *actual* fee negotiations" engaged in by MFS and the independent Trustees. <u>Yampolsky</u>, 2004 WL 1065533, at *2. If

---

[6] The business judgment rule presumes that in making business decisions, corporate directors, like the Funds' trustees here, acted in good faith and in what they believed to have been the best interest of the corporation. <u>See</u> <u>Harhen v. Brown</u>, 431 Mass. 838, 845 (2000) ("business judgment rule affords protection to the business decisions of directors . . . because directors are presumed to act in the best interests of the corporation"); <u>Evangelist v. Fidelity Mgmt. & Research Co.</u>, 554 F. Supp. 87, 90-91 (holding trustees of a Massachusetts business trust may rely on the business judgment rule to the same extent as may directors of a Massachusetts corporation).

anything, the fact that the fee structure varies by Fund demonstrates that the Trustees give individual attention to each Fund.  Compare Ex. A with Ex. B.

Furthermore, even if plaintiffs' conjecture were to be accepted as true, they fail to allege that the Trustees were not well-qualified, careful and conscientious.  Under the standard of Section 36(b), an adviser is not required to provide the independent trustees with every conceivable piece of potentially-relevant information, nor are the trustees required to demand it.  As the court in Schuyt pointed out, responding to plaintiffs' criticism that the adviser had not provided incremental-cost studies to the directors, "the directors were an extremely bright and articulate group of individuals.  Had they felt that incremental cost studies would aid them in approving the fee, they surely would have asked the Adviser to do such studies."  Schuyt, 663 F. Supp. at 983.  Here, similarly, the allegation that the independent Trustees did not ask for or receive certain information is insufficient to impugn their care and conscientiousness.  The court in Schuyt also noted the role of independent counsel to the directors as an "important resource."  Id. at 982.

      C.    **Plaintiffs' Allegation that MFS Breached Its Fiduciary Duty Under § 36(b) Through Excess Profits From Economies of Scale (Count II) Is Duplicative, Fails To State a Claim and Should Be Dismissed.**

Count II should be dismissed because it is duplicative of Count I; plaintiffs merely claim here – as they do for Count I – that MFS received too much compensation from the Funds.  Furthermore, as discussed above, plaintiffs fail to state a claim for excess profits from economies of scale because they fail to allege any facts showing that MFS actually realized any economies of scale.  This Court, therefore, should dismiss Count II of the Complaint.

> **D.     Plaintiffs' Allegation that MFS Breached Its Fiduciary Duty Under § 36(b) Through Excessive Rule 12b-1 Distribution Fees (Count III) Is Duplicative, Fails To State a Claim and Should Be Dismissed.**

Count III should be dismissed because it is entirely duplicative of Count I; plaintiffs merely claim here – as they do previously – that MFS received excessive compensation from the Funds. They are no more specific about distribution costs than any other. Thus, Count III should be dismissed.

> **E.     Plaintiffs Fail To State a Claim Under Section 12(b) of the ICA (Count IV).**

For the same reasons that there is no private right under sections 26(f), 27(i), 34(b), 36(a), or indeed any provision of the ICA other than Section 36(b), there is no private right of action under Section 12(b) of the ICA. See Mem. of Law in Support of Defendants' Motion to Dismiss the Consolidated Amended Complaint filed on this date in Forsythe v. Sun Life Financial, Inc., Section III.A (pp. 8-11) (citing Olmsted v. Pruco Life Ins. Co. of New Jersey, 283 F.2d 429, 436 (2d Cir. 2002)).

In any event, plaintiffs cannot bring private claims under Section 12(b) based on the same conduct upon which they base a claim under Section 36(b). Krinsk, 875 F.2d at 406 ("[T]here can be no private right of action under section 12(b) when the claim is indistinguishable from a section 36(b) claim."). This is just such a claim. Compare Compl. ¶ 88 (Section 12(b) claim for Defendants' "accepting excessive or inappropriate compensation"). If it were to proceed it would "allow circumvention of the . . . specific procedural limitations of section 36(b)" as to who can be sued and the damages that can be recovered. Id. at 408; Merine v. Prudential-Bache Utility Fund, Inc., 859 F. Supp. 715, 722 (S.D.N.Y. 1994),("[t]he exclusive remedy provided by the ICA for payment of excessive fees from a mutual fund is § 36(b) of the ICA, the provision under which Merine has brought two other claims in this action.") Therefore, it must be dismissed.

*Conclusion*

For the foregoing reasons, plaintiffs' Complaint should be dismissed with prejudice.

>Respectfully submitted,
>
>/s/ Jonathan A. Shapiro_____
>Jeffrey B. Rudman (BBO #433380)
>William H. Paine (BBO #550506)
>Jonathan A. Shapiro (BBO #567838)
>Amanda P. Masselam (BBO #641108)
>WILMER CUTLER PICKERING
>  HALE AND DORR LLP
>60 State Street
>Boston, Massachusetts 02109
>Tel:  (617) 526-6000
>Fax: (617) 526-5000
>
>Attorneys for Defendants Massachusetts Financial Services Co. and MFS Fund Distributors, Inc.

Dated:  April 15, 2005