# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| MARCUS DUMOND, HENDRY BERDAT, )<br>STUART V. and ROSEMARY STURGESS, )<br>KATHLEEN BLAIR, WILLIAM and MARGIE )<br>BOOTH, KAREN PEACH, and RICHARD and )<br>EVELYN KELLER, )<br> )<br>    Plaintiffs, )<br> )<br>  v. )<br> )<br>MASSACHUSETTS FINANCIAL SERVICES )<br>CO. and MFS FUND DISTRIBUTORS, INC. )<br> )<br>    Defendants. )<br>_____) | Civil Action No. 04-11458 (GAO)<br><br>**ORAL ARGUMENT REQUESTED** |

## PLAINTIFFS' MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Michelle H. Blauner (BBO #549049)
Edward F. Haber (BBO #215620)
SHAPIRO HABER & URMY LLP
53 State Street
Boston, MA  02109
(617) 439-3939

Guy M. Burns, *pro hac vice*
Jonathan S. Coleman, *pro hac vice*
Becky Ferrell-Anton, *pro hac vice*
JOHNSON, POPE, BOKOR, RUPPEL &
BURNS, L.L.P.
100 North Tampa Street, Ste. 1800
Tampa, FL  33602
 (813) 225-2500

Lynn L. Sarko*, pro hac vice*
Michael D. Woerner, *pro hac vice*
Tana Lin, *pro hac vice*
Gretchen F. Cappio, *pro hac vice*
KELLER ROHRBACK, LLP
1201 Third Avenue, #3200
Seattle, WA  98101
(206) 623-1900

Michael J. Brickman, *pro hac vice*
James C. Bradley, *pro hac vice*
Nina H. Fields, *pro hac vice*
RICHARDSON,   PATRICK,
WESTBROOK & BRICKMAN, LLC
174 East Bay Street
Charleston, SC  29401
(843) 727-6500

### Counsel for Plaintiffs

**Dated:  May 18, 2005**

# I. **INTRODUCTION**

Plaintiffs are shareholders of eleven mutual funds in the MFS Fund Complex (the "Funds")[1], which were created, sold, advised, and managed by Massachusetts Financial Services Company and MFS Fund Distributors, Inc. (collectively "MFS" or "Defendants"). MFS charges the Funds advisory and distribution fees based on a percentage of each Fund's net asset value. Since their inception, the Funds' assets have increased dramatically, resulting in fees that are disproportionately large in relationship to the services rendered to Plaintiffs and the Funds.

Plaintiffs have brought claims against MFS pursuant to Sections 36(b) of the Investment Company Act of 1940 ("ICA"), 15 U.S.C. §§ 80a-35(b). Plaintiffs allege that Defendants charged excessive fees and retained economies of scale in violation of their fiduciary duties owed to Plaintiffs and the Funds (Counts I and II), and that they accepted excessive and inappropriate compensation pursuant to unlawful distribution plans (Counts III).[2]

MFS has moved to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6). MFS's motion to dismiss mischaracterizes Plaintiffs' Complaint, endeavors to hold Plaintiffs to a heightened fact-pleading standard where none is required, and improperly raises factual issues that cannot be resolved on a motion to dismiss. None of MFS's arguments passes muster against the notice pleading standard applicable to the Complaint. Indeed, using recent decisions in similar Section 36(b) cases as a guide (including a recent opinion of this Court), Plaintiffs' allegations easily survive a Rule 12(b)(6) motion. *See Wicks v. Putnam Investment Mgmt, LLC*, 2005 WL 705360, at *4 (D. Mass. Mar. 28, 2005) (O'Toole, J.) ("*Wicks*") [attached (with complaint at issue appended) as Exh. A].

---

[1]Those funds are: MFS Capital Opportunities Fund, MFS Emerging Growth Fund, MFS Government Securities Fund, MFS Government Limited Maturity Fund, MFS Mid Cap Growth Fun, MFS Research Fund, MFS Value Fund, MFS Municipal Income Fund, MFS Strategic Growth Fund, MFS Total Return Fund and Massachusetts Investors Growth Stock Fund.

[2]Plaintiffs also brought a claim under Section 12(b) of the ICA. Although Plaintiffs believe that their Section 12(b) claim has merit, mindful of recent precedent, Plaintiffs have chosen not proceed further with Count IV.

## II.  OVERVIEW OF PLAINTIFFS' CLAIMS

The ICA was enacted by Congress to regulate investment companies that operate mutual funds. *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 93 (1991).   Unlike other corporations, investment companies are typically created and managed by pre-existing entities known as investment advisers.   *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 536 (1984). Because the investment adviser generally supervises the daily operation of the fund and often selects affiliated persons to serve on the company's board of directors, the relationship between investment advisers and investment companies is "'fraught with potential conflicts of interest.'" *Id.* (quoting *Burks v. Lasker,* 441 U.S. 471, 481 (1979)).    Mindful of those potential conflicts, Congress crafted a regulatory scheme in the ICA that placed quantitative and qualitative limits on the relations between advisers and investment companies.  *See Lessler v. Little,* 857 F.2d 866, 870 (1st Cir. 1988); *United States v. Smolar,* 557 F.2d 13, 20 (1st Cir. 1971).

In 1970, Congress amended ICA Section 36 to add subsection (b), 15 U.S.C. §80a-35(b). Section (b) was expressly intended to address the "potential conflicts of interest" where investment advisors and their affiliates set the fees that they charge investment companies because the "forces of arm's-length bargaining do not work in the mutual fund industry. . . ."  Investment Company Amendments Act of 1970, S. Rep. No. 91-184 , reprinted in 1970 U.S.C.C.A.N. 4897, 4898, 4901-2, 4912, 1969 WL 4981 (Leg. Hist. May 21, 1969).  In light of that conflict of interest, Section 36(b) was enacted to provide an effective means "for the courts to act where mutual fund shareholders . . . believe there has been a breach of fiduciary duty." *Id.* at 4898.  It provides:

- •   a mutual fund's investment  advisor and its affiliates have a fiduciary duty with respect to compensation they receive from the mutual fund; and

- •   a mutual fund's shareholders may bring an action against the fund's investment advisor and/or affiliates to recover, on behalf of the fund, compensation that was collected in breach of the advisor's and/or the affiliate's fiduciary duty.

15 U.S.C. §80a-35(b).

Plaintiffs allege that MFS has violated its fiduciary duty by receiving fees that are disproportionately large compared to the services rendered to Plaintiffs and the Funds. Specifically, Plaintiffs claim that: (1) the nature of the services have remained essentially unchanged; yet, MFS's costs for providing these services have decreased while its revenues have increased dramatically, (¶¶ 15, 41)[3]; (2) the economies of scale generated as a result of a tremendous growth in Fund assets have not been shared with Funds or their shareholders and, instead, have allowed MFS to reap additional profits on top of its already excessive fees, (¶¶ 14, 16, 23, 25-26, 54-55); (3) the advisory fees charged by MFS to the Funds vastly exceed the fees MFS itself charges to other clients, such as institutional clients and non-affiliated mutual funds, who buy virtually identical services on the free market, (¶¶9-10, 41-42, 58 ); and (4) MFS did not provide (and the trustees did not request) the information needed to adequately understand MFS's true cost structure and the economies of scale realized and retained by MFS for purposes of the trustees' review and approval of the advisory and distribution contracts, (¶¶17, 70-72).

Plaintiffs' allegations are more than sufficient to state a claim for relief under Section 36(b) of the ICA.

## III. ARGUMENT

### A. There is No Special or Heightened Pleading Requirement Applicable to Section 36(b) Actions.

As this Court recently recognized, there is no "heightened pleading requirement for § 36(b) excessive fee claims." *Wicks*, 2005 WL 705360, at *4. MFS, however, ignores the applicable pleading standard and repeatedly attacks the Complaint's supposed failure to include certain "facts"—an unmistakable effort to hold Plaintiffs to a heightened pleading standard. *See, e.g.,* Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint ("Def. Mem.") at 4 ("Plaintiffs do not plead enough facts.").

---

[3] Citations to Complaint are referenced herein as "¶__."

MFS's position also runs afoul of both the Supreme Court's recent pronouncement in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). Moreover, the burden that MFS seeks to impose on Plaintiffs is in direct contravention to the applicable standard under Fed. R. Civ. P. 8(a) and 12(b)(6). The Southern District of New York recently discussed the *Swierkiewicz* decision and its impact on Section 36(b) claims in the context of denying a motion to dismiss:

> The defendants have pointed to several decisions in which courts dismissed a Section 36(b) claim for failure to state a claim. While recognizing that Rule 8's pleading standard is very liberal, these cases held that the complaints at issue were too conclusory to survive a motion to dismiss. Almost all of these cases preceded the Supreme Court's reminder in *Swierkiewicz* that a plaintiff need only give a plain statement of its claim and fair notice of the ground on which it rests.

*Pfeiffer v. Bjurman, Barry & Associates*, No. 03 Civ.9741, 2004 WL 1903075, *4 (S.D.N.Y. Aug. 26, 2004).

Similarly, the First Circuit has proclaimed that through *Swierkiewicz*, "the [United States Supreme] Court has signaled its disapproval of *all* heightened pleading standards except those that emanate from either congressional or Rule-based authority. Strong language in *Swierkiewicz* makes plain that federal courts should refrain from crafting heightened pleading standards, regardless of the special circumstances those standards are intended to address." *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 66 (1st Cir. 2004).

A plaintiff must only plead facts sufficient to place defendants on notice of the claims against them, not prove her case in the complaint. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). Notice pleading is the proper standard in *all* civil cases, save for a few exceptions not present here. *Swierkiewicz*, 534 U.S. at 513.[4] Indeed, this Court has twice recognized that claims under Section 36(b) of the ICA are *not* one of those exceptions. *See Wicks*, 2005 WL 705360, at *4 (O'Toole, J.) (agreeing that there is no

---

[4] "The handwriting is on the wall. *Swierkiewicz* has sounded the death knell for the imposition of a heightened pleading standard except in cases in which either a federal statute or specific Civil Rule requires that result." *Educadores*, 367 F.3d at 66.

"heightened pleading requirement for § 36(b) excessive fee claims"); *Richard Krantz v. Fidelity Mgmt. & Research Co.,* 98 F.Supp.2d 150, 159 (D. Mass. 2000) (Saris, J.) (proceeding under "notice pleading standard" as to § 36(b) claim and refusing to dismiss). *See also Strigliabotti v. Franklin Resources, Inc.,* 2005 WL 645529, at * 4 (N.D. Cal. March 7, 2005) [Attached (with complaint at issue appended) as Exh. B] (refusing to dismiss § 36(b) claims under Rule 8's liberal standard); *Pfeiffer,* 2004 WL 1903075, at *3 (stating that § 36(b) "complaint is governed by the pleading standards set forth in Rule 8a").

Under a notice pleading standard, detailed facts, such as those that MFS argues are lacking here, are not required. *Conley v. Gibson*, 355 U.S. 41, 47 (1957) ("the Federal Rules … do not require a claimant to set out in detail the facts upon which he bases his claim") (citing Fed. R. Civ. P. 8(a)(2)). Rather, Plaintiffs need only provide "a short and plain statement" of their claim so as to "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Swierkiewicz* 534 U.S. at 512 (quoting *Conley,* 355 U.S. at 47). "This simplified notice pleading standard relies on liberal discovery rules … to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512.

"Moreover, … where the proof is largely in the control of the defendant, 'dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly.'" *Fusco v. Xerox Corp.*, 676 F.2d 332, 337 n. 7 (8th Cir. 1982) (citations omitted); *see also Richard Krantz*, 98 F.Supp.2d at 159 (denying the defendant's motion to dismiss a § 36(b) claim in part because defendants were not publicly owned corporations and plaintiffs had not had the benefit of discovery). Here, many of the "facts" that MFS urges are lacking are uniquely within its knowledge.[5]

---

[5] As discussed below, recognizing that mutual shareholders have not had access to critical information about the investment advisory fees charged to them and the funds, the SEC has recently promulgated a rule requiring certain publicly filed documents to include a detail discussion of certain factors relevant to the approval of investment advisory fees. Disclosure Regarding Approval of Investment Advisory Contracts by Directors of Investment Companies, 69 Fed. Reg. 39798, 2004 WL 1452698 (SEC 2004) [Attached as Exh. C].

As set forth below, Plaintiffs have exceeded the notice pleading standard by alleging far more than what is sufficient to state legally cognizable claims against MFS under Section 36(b).

**B.      Plaintiffs Have Pled Facts Sufficient to Demonstrate They Are Entitled to Relief under Section 36(b) of the ICA.**

Relying on the Second Circuit's decision in *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923 (2d Cir. 1982) ("*Gartenberg*"), and its progeny, MFS asserts that the Complaint fails to satisfy the pleading standard for claims under Section 36(b).  MFS's attack on the Complaint fails because the *Gartenberg* decision did not establish a pleading standard for a Section 36(b) claim.  In any event, as demonstrated below, Plaintiffs have adequately pled facts, which if proven, demonstrate that Defendants have violated their fiduciary duties under Section 36(b) by receiving compensation that is excessive and disproportionately large to the services they render to the Funds.  Recent decisions, including this Court's decision in *Wicks*, have sustained Section 36(b) claims such as those alleged in the Complaint against motions to dismiss.

**1.      *Gartenberg* Does Not Address The Sufficiency of the Pleadings.**

In *Gartenberg*, the Second Circuit considered the advisory fees charged a money market mutual fund.  The Second Circuit held that "to be guilty of a violation of §36(b) ... the advisor-manager must charge a fee that ... could not have been the product of arm's-length bargaining.  To make this determination all pertinent facts must be weighed." *Id.* at 928.  After evaluating the facts presented at trial, the District Court found that the "plaintiffs have failed to meet their burden of <u>proving</u> that the fees charged by the Manager to the Fund were so excessive or unfair as to amount to a breach of fiduciary duty within the meaning of §36(b)." *Id.* at 930 (emphasis added). *See also Meyer v. Oppenheimer Mgmt. Corp.*, 895 F.2d 861, 866 (2d Cir. 1990) ("[a]n advisory fee violates Section 36(b) if it 'is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining.'").

The *Gartenberg* court established a framework that some courts have used to determine whether a fee violates Section 36(b).  The factors relevant to this determination are:  (1) the nature

and quality of the services provided to the fund shareholders; (2) the profitability of the fund to the adviser-manager; (3) economies of scale in operating the fund as it grows larger; (4) comparative fee structures; (5) fall-out benefits, i.e., indirect profits to the adviser attributable in some way to the existence of the fund; and (6) the independence and conscientiousness of the directors. *Krinsk v. Fund Asset Mgmt, Inc.,* 875 F.2d 404, 409 (2d Cir. 1989) (citing *Gartenberg*, 694 F.2d at 929-30). However, *Gartenberg* did not, as Defendants would have it, create a pleading standard for Section 36(b) claims.[6]  Moreover, as this Court observed in *Wicks*, "[t]he First Circuit has not expressly adopted the *Gartenberg* factors." 2005 WL 705360, at *4.

Indeed, other courts have expressly held that the six "*Gartenberg* factors" do not have to be specifically pled.  In *Strougo v. BEA Associates*, 2000 WL 45714, **6-7 (S.D.N.Y. Jan 19, 2000), the court held:

> *Gartenberg* is a post-trial decision in which the evidence can be weighed against the six-factor test. The pleading standards under the federal rules – absent a heightened requirement such as exists for pleading fraud under Rule 9(b) – do not contemplate pleadings sufficiently detailed to enable a court to make a determination on a 12(b)(6) motion as to whether the six *Gartenberg* factors were met. Rather, the inquiry at this stage should be whether the Amended Complaint alleges sufficient facts to make out a claim under the more general *Gartenberg* formulation that "the adviser-manager must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered."

*See also Millenco L.P. v. MEVC Advisors, Inc.*, 2002 WL 31051604, at * 3, n. 3 (D. Del. Aug 21, 2002) (refusing to "engage in analysis" of  *Gartenberg* factors because *Gartenberg* "does not set a pleading standard").

As this Court recently held in *Wicks:* "I agree with the plaintiffs that *Gartenberg*-should it be the appropriate standard-does not establish a heightened pleading requirement for §36(b)

---

[6] Several other cases cited by MFS also arose in the context of motions for summary judgment or bench trials after the factual record had been fully developed.  *See Green v. Fund Asset Mgmt., L.P.*, 286 F.3d 682 (3d Cir. 2002) (summary judgment and plaintiffs did not even allege the advisors' compensation was excessive); *Krinsk v. Fund Asset Mgmt.*, 875 F.2d 404 (2d Cir. 1989) (bench trial); *Strougo v. BEA Assoc.*, 188 F.Supp.2d 373 (S.D.N.Y. 2002) (bench trial); *Kalish v. Franklin Advisers Inc.*, 742 F.Supp. 1222 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 590 (2d Cir. 1991) (bench trial); *Schuyt v. Rowe Price Prime Reserve Fund*, 663 F.Supp. 962, 973 n. 38 (S.D.N.Y.), *aff'd*, 835 F.2d 45 (2d Cir. 1987) (bench trial).

excessive fee claims. A plaintiff's failure to plead certain *Gartenberg* factors is not itself grounds for dismissal." 2005 WL 705360, at *4.

> **2. Plaintiffs Have Alleged Facts To Support Each of the *Gartenberg* Factors.**

While nothing requires that all six factors be present in any given case, *see Wicks*, 2005 WL 705360, at * 4, Plaintiffs' Complaint alleges a factual basis for each of the *Gartenberg* factors, thereby sufficiently alleging that the fees charged the Funds are so disproportionately large in comparison to the services rendered that they were not the result of arm's length bargaining. *See, e.g.,* ¶¶15, 41 (alleging that although the nature of the services MFS provides to the Funds *has remained essentially unchanged*, MFS's costs in providing these services have *decreased* while its fees have *risen* at dramatic rates); ¶¶15, 47-48 (alleging that the enormous profitability of the Funds to MFS can be demonstrated by MFS's full costs of providing advisory services and by the fact that MFS's incremental costs of providing services to Plaintiffs are nominal); ¶¶14, 16, 25, 54-55, 59 (alleging that MFS is wrongfully retaining the benefits of economies of scale as opposed to passing them on to Fund shareholders); ¶¶9-10, 41-42, 56-58 (alleging that MFS charges the Funds substantially higher fees than what *MFS itself* charges institutional clients and other non-affiliated mutual funds for identical advisory services); ¶¶60-65 (alleging that MFS receives fall-out benefits (i.e., indirect profits) through various channels); and ¶¶17, 70-72(alleging that the Funds' trustees failed to fulfill their duties to the Funds because MFS has withheld (or the trustees have failed to request) necessary information). No more could be required in a pleading.

> **3. Courts, Including this One, Have Consistently Upheld Section 36(b) Claims Based on Allegations Similar to Those in the Complaint.**

Recently, in *Wicks v. Putnam Investment Mgmt., LLC*, this Court flatly rejected a defendant's efforts to summarily dispose of § 36(b) claims almost identical to the ones alleged here. 2005 WL 705360, at * 4. The *Wicks* plaintiffs, like Plaintiffs in this case, alleged *inter alia* that: although the Funds' assets have increased, the nature and quality of the services rendered by

defendants has not changed substantially, allowing economies of scale to be created that defendants have failed to share with the Funds; that defendants provide the same advisory services to their institutional clients for substantially lower fees then they charge the Funds; and that defendants receive soft dollars that benefit defendants and not the Funds. *See Id.* at *1. Based on these allegations, the court found that the *Wicks* plaintiffs had stated claims under Section 36(b). MFS makes no meaningful attempt to distinguish the Complaint at issue in this case from the *Wicks* Complaint. Def. Mem. at 6 & n. 3. A comparison of the two complaints reveals that the types of factual allegations in the two complaints are largely the same. Compare Complaint with Exh. A, Part 2. The holding in *Wicks* is directly applicable to this case. This Court should deny MFS's motion to dismiss for these same reasons it denied defendant's motion to dismiss in *Wicks*.

Indeed, courts in this district have upheld other complaints alleging Section 36(b) violations where plaintiffs have made a far lesser showing than Plaintiffs in this case. *See Richard Krantz*, 98 F.Supp.2d at 157-58 (denying motion to dismiss § 36(b) claim where plaintiff alleged facts concerning only four of the six *Gartenberg* factors); *see also ING Principal Protection Funds Derivative Litig.*, 2005 WL 1107072, at * 3 (D. Mass. May 9, 2005) (Tauro, J.) (denying motion to dismiss § 36(b) where complaint focused primarily on the disparity between treatment between the funds at issue and defendant's other funds). In *Richard Krantz*, the court upheld plaintiff's § 36(b) claim based primarily on the factual allegation that "the defendants did not pass savings on to the funds' investors that [defendants] realized from economies of scale (*Gartenberg* factor 3) due to the enormous growth in assets under management as well as efficiencies caused by computer advances." 98 F.Supp.2d at 159. The court found particularly significant the plaintiff's allegation that "between 1985 and 1995 the total revenues of defendants *increased* as a percentage of the mutual fund assets under management." *Id.* Plaintiffs have made similar allegations here. *See* ¶¶ 14, 25, 54.

The rulings in this district are not unique.   Indeed, several other courts have upheld Section 36(b) claims based on virtually identical allegations to those set forth in the Complaint.   In *Strigliabotti v. Franklin Resources, Inc.*, the court curtailed similar efforts by defendants to hold the plaintiffs to a heightened pleading standard and found that virtually identical allegations regarding the disproportionate relationship between fees and services sufficed under Rule 8's liberal pleading standard.  2005 WL 645529, at * 4.  There, as here, the plaintiffs alleged that the defendants charge the plaintiffs much higher fees than other clients for equivalent advisory services; that fund assets had grown, while the nature of services had stayed the same, resulting in disproportionately large advisory fees; and that the defendants had retained excess profits from economies of scale caused by a dramatic growth in assets managed by defendants.  *See id.* at *3.  *See also* Exh. B, Part 2.

Likewise, in *Jones v. Harris Associates, L.P.*, 2005 WL 831301, at * 2 (N.D. Ill. Apr. 7, 2005) ("*Jones*") [attached (with complaint at issue appended) as Exh. D], reviewing a practically identical complaint, the court found that "[c]ontrary to Harris's interpretation, the complaint does not solely advance legal conclusions or contentions devoid of factual content specifically attributable to the relationship between Harris and the funds in which the Plaintiffs invested."  In fact, the court found that Plaintiffs' allegations that the fund complex paid more in 2003 than it did ten years earlier for identical services and that other clients receive like services at significantly lower rates compelling:  "It is not inconceivable that the fees charged, given the exponential increase and different treatment of other clients alleged, were so disproportionate to the value of the services rendered that a violation of § 36(b) would lie."  *Id.   See also* Exh. D, Part 2.  Plaintiffs here have made the same sort of allegations here.  *See*  ¶¶ 9-10, 14-15, 54, 56-59.

Moreover, in *Miller v. Mitchell Hutchins Asset Mgmt., Inc.*, No. 01-CV-192-DRH (S.D. Ill. Mar. 6, 2003) ("*Miller*"), the court denied the defendants' motion to dismiss a complaint containing strikingly similar allegations to the ones in the instant Complaint.   The *Miller* court specifically

noted that the plaintiffs, like the Plaintiffs here, had pled facts as to each of the *Gartenberg* factors. *See Id.* [Attached (with complaint at issue appended) as Exh. E].

In *Pfeiffer,* the court declined to dismiss a Section 36(b) claim, finding "[i]t is unnecessary for the plaintiff to set forth evidentiary details to support [the] allegation [that the defendant's increased 12b-1 fees were not reasonably related to the services it performed for the Fund], or to support those elements of the *Gartenberg* test that may apply to promotion, distribution, and service fees." 2004 WL 1903075, *4.

Defendants ignore most of these cases and, with respect to the opinions they actually acknowledge (*Wicks* and *Richard Krantz*), merely cobble together baseless arguments that the complaints are distinguishable from the Complaint in this case. Def. Mem. at 6. However, courts reviewing Section 36(b) claims – as well as the similarities between the *Wicks, Strigliabotti*, *Jones*, and *Miller* Complaints and the Complaint here – compel the conclusion that Plaintiffs state a claim that the fees charged by Defendants are so disproportionately large that they bear no reasonable relationship to the advisory services actually rendered on behalf of the Funds.

### 4.    Defendants' Cases Provide No Support for Dismissing the Complaint.

Defendants primarily rely upon *Migdal v. Rowe-Price Fleming Int'l, Inc,* 248 F.3d 321, 327 (4th Cir. 2001) (Def. Mem. at 5), *Sheldon Krantz v. Prudential Invs. Fund Mgmt., LLC*, 305 F.3d 140, 143 (3d Cir. 2002) (Def. Mem. at 5-6); and *Yampolsky v. Morgan Stanley Inv. Advisers Inc.*, No. 03 Civ. 5710, 2004 WL 1065533, *2 (S.D.N.Y. May 12, 2004) (Def. Mem. at 6-7), to support their argument for dismissal. Unlike *Wicks, Strigliabotti, Jones,* and *Miller*, all of which contained virtually identical Section 36(b) allegations to those in the Complaint at issue here, MFS's cases are based on different factual scenarios and dissimilar allegations. They are easily distinguishable.

First, as a practical matter, *Migdal* (and its progeny) applied a heightened fact pleading standard. To the extent that *Migdal* did stand for the proposition that fact pleading is required

under Section 36(b), *Migdal* predates *Swierkiewicz* and has been effectively overruled as to that issue. *See Pfeiffer*, *supra*, at *4.

Second, there was a dearth of information contained in those complaints to support Section 36(b) claims. Indeed, none of those cases provides support for Defendants' position that the Section 36(b) claims should be dismissed here because none of those complaints contains the level of detailed factual allegations that appear in Plaintiffs' Complaint. *See Strigliabotti*, 2005 WL 645529, at * 4 (agreeing with Plaintiffs "that *Migdal* and *Sheldon Krantz* involved significantly different and more deficient complaints").

The *Migdal* court dismissed the complaint because it contained only conclusory allegations that amounted to nothing more than "the mere recitation of boilerplate statutory language." *Migdal*, 248 F.3d at 328. The plaintiffs' claim of excessive fees regarding two mutual funds was based on four allegations: (1) the amount of fees, (2) the fact that two or three similar funds charged lower fees while outperforming the funds at issue, (3) the fact that the funds at issue failed to meet their performance benchmarks, and (4) the fact that despite the funds' underperformance, the defendant/advisor's earnings increased by more than 20%. *See Id.* at 327. The *Migdal* complaint did not identify, much less make a substantial factual showing, as to the *Gartenberg* factors. Unlike this case, there was no mention of economies of scale, no discussion of the advisers' profitability, no mention of fall-out benefits, and only a very limited comparison of the fees at issue to fees charged to other funds and of the nature of the services rendered in exchange for the fees charged. *See* Migdal, Second Am. Compl. [Attached as Exh. F].

The complaint in *Sheldon Krantz* was even more lacking in supporting factual allegations than the *Migdal* complaint. *See Sheldon Krantz*, First Am. Compl. ("*Sheldon Krantz* Compl.") [Attached as Exh. G]. The *Sheldon Krantz* complaint focused almost exclusively on whether the "independent" directors' service on multiple boards renders them "interested" and whether, as a

result, the contracts were unlawful under Sections 10(a) and 15(c) of the ICA. The entire Section 36(b) excessive fee allegation essentially is stated in three sentences:

> Plaintiff alleges that none—much less 40%—of the members of the Fund's board are independent, as required by ICA Section 10(a). As a result, the Agreements were not properly negotiated at arm's-length and could not be properly approved as required by ICA Section 15(c). Consequently, the Fund has paid defendants' excessive fees pursuant to invalid, sweetheart contracts, thereby entitling plaintiff to seek recovery of those fees pursuant to ICA Section 36(b).

*Sheldon Krantz* Compl. ¶13. The complaint was utterly devoid of <u>any</u> facts demonstrating that the fees were disproportionate to the services rendered; instead, the excessive fee allegation was couched solely in terms of the directors' lack of independence.

*Yampolsky*, upon which MFS relies heavily, is similarly unhelpful to MFS's position. In *Yampolsky*, the plaintiffs' claim of excessive fees was based simply on the underperformance of the funds at issue, the fees paid by the funds, and the independence of the directors. *Yampolsky*, 2004 WL 1065533 at *2. Importantly, as in *Migdal* and *Krantz*, the *Yampolsky* plaintiffs made no allegations regarding the retention of economies of scale, the relationship between the fees charged and services rendered, or what Defendants <u>themselves</u> charge for providing identical services to their other clients. *See Yampolsky* Compl. [Attached as Exh. H]. While Defendants attempt to liken Plaintiffs' Complaint to the one in *Yampolsky*, the fact that the two complaints reference the *Gartenberg* factors and share in common some quotes from industry critics, of course, does not render them similar enough to warrant dismissal of Plaintiffs' Complaint.

A comparison of the Complaint in this case and the *Yampolsky* complaint reveals that Plaintiffs have exceeded the allegations at issue in *Yampolsky*. Nevertheless, it bears emphasizing that, without discovery, some of the missing facts that proved fatal to the *Yampolsky* complaint have been unavailable to shareholders. Significantly, in *Yampolsky,* the court faulted Plaintiffs for not making allegations about the actual fee negotiations. 2004 WL 1065533 at *2. However, pleading such facts has been a practical impossibility because this type of information has not been

publicly available.    Indeed, recognizing that "[i]ncreased transparency with respect to investment advisory contracts, and fees paid for advisory services, will assist investors in making informed choices among funds and encourage fund boards to engage in vigorous and independent oversight of advisory contracts," the SEC recently promulgated a new rule adopting enhanced shareholder disclosure rules.  69 Fed. Reg. 39798, 39799 [Exh. C].   The enhancements "are intended to address [the SEC's] concerns that some funds do not provide adequate specificity regarding the board's basis for its decision."   The rule requires a fund to include in certain publicly filed reports a discussion of:

> (1) The nature, extent, and quality of the services to be provided by the investment adviser; (2) the investment performance of the fund and the investment adviser; (3) the costs of the services to be provided and profits to be realized by the investment adviser and its affiliates from the relationship with the fund; (4) the extent to which economies of scale would be realized as the fund grows; and (5) whether fee levels reflect these economies of scale for the benefit of fund investors.

*Id.* at 39801.  Previously, this sort of detailed factual information regarding the board's approval of advisory fees has not been disclosed in publicly available materials.

At any rate, Plaintiffs here have far surpassed the allegations held insufficient by the courts in *Sheldon Krantz, Migdal,* and *Yampolsky*.  Here, Plaintiffs' allegations are more than sufficient to defeat Defendants' motion to dismiss the Section 36(b) claims.  *See Strigliabotti,* 2005 WL 645529, at * 4 (denying motion to dismiss as to virtually identical complaint and finding it distinguishable from the *Sheldon Krantz, Migdal*, and *Yampolsky* complaints).[7]

---

[7] Defendants cite several other Section 36(b) cases; however, each is easily distinguishable on its facts.   In *Verkouteren v. Blackrock Fin. Mgm't, Inc.,* 1999 WL 511411 (S.D.N.Y. July 20, 1999), the court's decision appears to be based largely on its finding that the plaintiffs had been unable to show that the outside directors were "interested." In an earlier opinion, the court had noted "the crux of all charges in the complaint is that the seven supposedly independent directors are not truly independent, but actually controlled by defendant." *Verkouteren v. Blackrock Fin. Mgm't, Inc.,* 37 F.Supp.2d 256 (S.D.N.Y. 1999).  In support of his § 36(b) claim, the plaintiff argued *only* that:  "(1) defendant subverted the independence of the fund directors by negotiating solely with "interested" directors;  and (2) defendant's advisory fees amounted to "fee gouging" compensation from the funds." 37 F.Supp.2d at 261.  Based on these opinions, it is clear that unlike Plaintiffs here, the *Verkouteren* plaintiff made no showing as to most, if not all, of the *Gartenberg* factors.

In *Levy v. Alliance Capital Management, L.P.,* 1998 WL 744005 (S.D.N.Y. Oct. 26, 1998) "the amended complaint merely alleges that the Trust is required under the new agreement to pay 'substantially more' in advisory fees and expenses to Alliance than it had under the old agreement." *Id.* at * 4.  Importantly, the Court noted that the plaintiff

5.    **In Attacking Plaintiffs' Complaint, MFS Distorts Plaintiffs' Allegations (or Ignores Them Completely) and Raises questions of Fact Which Cannot Be Resolved in a Motion to Dismiss.**

MFS launches a barrage of attacks on Plaintiffs' allegations as to each of the *Gartenberg* factors, none of which has any merit.  In an effort to avoid Plaintiffs' claims, MFS reads Plaintiffs' allegations in an unnecessarily narrow fashion, or ignores them altogether, and raises convoluted or irrelevant arguments that are nothing more than red herrings.  Further, some of MFS's arguments raise questions of fact, which are clearly not an appropriate focus of a motion to dismiss.

As this court has recognized, "[a] plaintiff's failure to plead certain *Gartenberg* factors is not itself grounds for dismissal."  *Wicks,* 2005 WL 705360, at *4.  Although Plaintiffs have demonstrated in section 2 above that they have made sufficient factual allegations as to each of the *Gartenberg* factors, a few of Defendants' criticisms of the factors bear discussing.

a.    **The Nature and Quality of MFS's Services.**

Contrary to Defendants' assertions, Plaintiffs allege facts as to both the nature <u>and</u> the <u>quality</u> of Defendants' services.  Def. Mem. at 8.  "The nature of the investment advisory services provided to the Funds is straightforward:  Defendants buy and sell, at their discretion, stocks, bonds, and other securities for the Funds."  ¶41.  As alleged in the Complaint, "the nature of these services has remained <u>unchanged</u> despite dramatic growth in the assets of the Funds and advisory

---

failed "to explain how the fees and expenses are excessive in light of the '*Gartenberg*' factors that courts consider." *Id.*

The Section 36(b) claim in *Olesh v. Dreyfus Corp.*, 1995 WL 500491 (E.D.N.Y. Aug. 8, 1995) arose out of a merger between the adviser to the funds at issue and a third party entity.  The court found that negotiating "'a merger which enhances only its own interests, at the expense of the Dreyfus Funds and their stockholders' does not violate §36(b) where the alleged 'expense' is only exposure 'to the additional risks and costs that the merger entails for them,' and there is no allegation that these future costs will be excessive." *Id.* at * 19.  In short, the plaintiffs brought their claims prematurely because the excessive fees that they feared had not yet been imposed.  However, the court noted that "Plaintiffs may well be able under § 36(b) to sue for restitution once excessive fees have been imposed."

Finally, in *Wexler v. Equitable Capital Management Corp.*, 1994 WL 48807 (S.D.N.Y. Feb. 17, 1994), the plaintiff made "no claim that the fee is disproportionately large but merely argues that the trustees might have negotiated a reduced fee and, by not doing so, violated their fiduciary duty."  Thus, the claim was not one for excessive fees but rather, as the court found, a claim against the trustees for "failure to negotiate." *Id*. at * 4.

In short, Defendants find no support in any of the § 36(b) cases they cite.

revenues." *Id.* Moreover, "advances in computing and communication technologies in the past twenty years have resulted in exponential efficiencies that have dramatically reduced the costs of servicing mutual funds…." ¶15. These allegations are equally applicable to each of the eleven Funds at issue in this case. Thus, Plaintiffs have made specific allegations regarding the type of services that MFS provides and the costs of providing those services. In addition, Plaintiffs allege that MFS's assets under management have increased, an occurrence that because of tremendous economies of scale, should have—but has not—resulted in much lower fees charged to Plaintiffs and the Funds. ¶¶14-16. On the contrary, MFS's fees have increased. ¶15.

MFS blatantly ignores the Complaint's allegations that bear on the quality of the services it provides to the Funds. As discussed in more detail below, MFS performs identical services for its other clients (albeit clients with arm's-length negotiating power) at significantly lower prices. ¶¶9-10, 41-42. This disparity in fees is illustrative of the quality of services provided to the Funds as it evinces MFS's preference for its own financial interests at the expense of the Funds and their shareholders. ¶42. Further, the Complaint alleges that the Funds bear the burden of this conflict of interest, not merely in terms of higher fees but also in losses and expenses being borne by the Funds – again, a fact indicative of the quality of MFS's services. ¶43. Similarly, Defendant's illegal use of Fund assets to attract non-retail clients that, unlike the Funds, benefit from certain considerations such as fee rebates as well as Defendants' participation in directed brokerage schemes bear directly on the quality of MFS's services. ¶¶44-45.

Contrary to Defendants' insinuations, performance is not the sole indicator of quality, and each of the foregoing demonstrates that there is an inherent conflict of interest between Defendants and the Funds that impact the quality of their services.

**b.     MFS's Profitability from Advising the Funds.**

16

MFS's criticisms of the Complaint's supposed shortcomings regarding Defendants' profitability are disingenuous at best.  Def. Mem. at 9.  As shown above, Plaintiffs have made specific allegations that MFS's revenues and profit margins have grown dramatically.  ¶¶15, 47-48. Nevertheless, MFS disparages the Complaint for not providing specific profitability figures for each Fund.  However, this is precisely the type of specific factual information lacking from publicly available materials that the SEC has only recently required investment advisers to disclose.  *See* 69 Fed. Reg. 39798, 2004 WL 1452698 (enhancement 3).  Moreover, this Court has previously refused to dismiss Section 36(b) claims where "specific financial information is not available prior to discovery."  *Richard Krantz*, 98 F.Supp.2d at 159.  Without discovery, it is impossible for Plaintiffs to know MFS's precise profit margins with respect to the Funds or how MFS allocates its costs among the Funds or between the Funds and its other lines of business.

### c.    Economies of Scale Realized by MFS, but not Passed on to the Funds.

Defendants read Plaintiffs allegations with respect to economies of scale too narrowly.  For starters, the Complaint refers to the Funds collectively.  ¶¶1, 5.  Like the plaintiffs in *Richard Krantz* (98 F.Supp.2d at 159) and *Wicks* (2005 WL 705360 at * 1)*,* Plaintiffs have alleged that despite a dramatic growth in assets, Defendants' fees have grown, both in terms in whole dollars and as a percentage of assets, demonstrating that the Funds or their shareholders have enjoyed no economies of scale. ¶25; *see also* ¶¶14-15.  Plaintiffs merely cite Massachusetts Investors Trust as an example.

To dispute Plaintiffs' allegations that MFS's increase in assets under management should have decreased the fees charged to Plaintiffs and the Funds, MFS makes an argument which, at most, raises a question of fact but certainly does not provide any basis for granting MFS's motion. Specifically, MFS attaches to its brief excerpts of samples registration statements (a document

neither referenced in nor central to Plaintiffs' claims).[8]  MFS muses why the fee break point schedule applicable to the MFS Emerging Growth Fund does not adequately reflect economies of scale.  *See* Def. Mem. at 11, Exh. A.  However, the mere existence of a fee structure that employs break points does not mean that economies of scale are adequately being passed on to Plaintiffs and the Funds.  Plaintiffs allege fees have grown as a percentage of assets (¶25); as such, regardless of the break point structure, MFS is retaining economy of scale benefits for itself rather than passing them on to shareholders in accordance with its fiduciary duties.  Moreover, where, as here, the initial advisory fee is too high, breakpoints are spaced far apart, and the fee reductions at breakpoints are small, Defendants, not the Funds, benefit from the economies.  At most, MFS has created a question of fact as to whether these breakpoints adequately pass on the economies of scale generated as assets increase—an issue that cannot be resolved in a motion to dismiss.

Further, Defendants disparage the Complaint for not challenging a statement in the Statement of Additional Information that the trustees considered economies of scale when approving the fee.  Def. Mem. at 11.  This argument is illogical in light of the Complaint's specific allegations that the trustees "do not understand Defendants' true cost structure and, in particular, the economies of scale enjoyed by them in providing investment advisory services to the Funds and their institutional and other clients." ¶ 71; *see also* ¶ 17.

> d.    **The Disparity between the Fees Charged to the Funds and MFS's Third-Party Clients.**

As Plaintiffs point out in their Complaint, one of the most salient inquiries regarding the excessiveness of MFS's fees is what MFS charges its other clients (who bargain with it and actually negotiate fees) for identical services. ¶56.  MFS tries to downplay the importance of this comparison because the comparison indisputably raises the inference that the fees charged to the Funds are disproportionately large and could not be the product of arm's length bargaining.  Indeed,

---

[8] Ironically, though MFS criticizes Plaintiffs for not making specific allegations at each Fund, MFS merely refers to examples in its brief.

the SEC recently confirmed the relevancy of this comparison when it adopted a requirement that certain publicly available documents "will be required to indicate whether the board relied upon comparisons of the services to be rendered and the amounts to be paid under the contract with those under other investment advisory contracts, such as …other types of clients (e.g., pension funds and other institutional investors.)"  69 Fed. Reg. 39798, 39801-802, 2004 WL 1452698  [Exh. C].

Here, the Complaint alleges that "[t]he pure investment advisory services Defendant Advisors provide to the Funds are identical to the investment advisory services Defendants or its affiliates provide to other clients, such as [its institutional clients], and entail essentially identical costs."  ¶9.  Thus, Plaintiffs allege that a comparison of the management fee charged to the Funds with the management fee Defendants charge their other clients is an apples-to-apples comparison— allegations which must be taken as true for purposes of resolving this motion.[9]   *Gorski v. New Hampshire Dept. of Corrections*, 290 F.3d 466, 473 (1st Cir. 2002) (O'Toole, J., sitting by designation) ("factual allegations of the complaint are to be accepted as true, and all reasonable inferences that might be drawn from them are indulged in favor of the pleader").

Without the benefit of any discovery, Plaintiffs do not have ready access to specific data regarding the fees MFS charges to its other clients.  Nevertheless, with only a dearth of information available to them, Plaintiffs set forth several comparative fee structures that indicate MFS is charging advisory fees to the Funds that are disproportionate to the value of the services rendered. ¶ 58.  For instance, MFS charges the Public Employee Retirement System of Idaho ("PERSI"), with

---

[9]   MFS cannot cite any authority requiring this Court to ignore the compelling evidence of what it charges its other clients for the same services on the open market.  In the case upon which MFS relies, *Strougo v. BEA Associates*, 188 F.Supp.2d at 384 (which was decided after trial) (Def. Mem. at 11-12), there was no evidence that the services were the same.  Notably, the *Strougo* Court had earlier denied a motion to dismiss where the plaintiff had alleged: "that, of 85 world equity funds, only 18, or 21%, had a higher expense ratio than the Fund."  *Strougo*, 2000 WL 45714, at * 7.  More recently, courts have considered allegations regarding what Defendants charge their non-mutual fund clients when determining whether a complaint has adequately stated a claim that fees charged to mutual funds are disproportionately large to the services rendered by an advisor.  *See Strigliabotti*, 2005 WL 645529, at * 3; *Jones*, 2005 WL 831301, at * 2; *Wicks*, 2005 WL 705360, at *1.  The SEC has also stated that such comparisons may be relevant. 69 Fed. Reg. 39798, 39801-802, 2004 WL 1452698  [Exh. C].

whom it negotiates at arm's-length, a fee of approximately $600,000 to manage an equity portfolio of $173 million. *Id.* In contrast, for advising its own Funds, MFS charges between 5 and 35 times more than it charges PERSI. *Id.* This demonstrates not only the great disparity between the fees charged to the Funds and the fees charged to MFS's clients who negotiate at arm's-length but also that MFS is able to manage portfolios in the same investment style for its non-affiliated clients at a fraction of the price they charge Plaintiffs and the Funds. Accordingly, the Complaint adequately alleged that the fees charged to the Funds are disproportionately large to the services rendered.

### e.    MFS Receives Indirect Profits from Fall-Out Benefits.

As set forth above, the Complaint makes allegations specific to Defendants' receipt of fall-out benefits from which Defendants obtain indirect profits. ¶¶60-65. For purposes of deciding this motion, these allegations must be taken as true. *See Gorski*, 290 F.3d at 473. Plaintiffs allege that fall-out benefits (such as soft dollar arrangements) benefit Defendants and result in increased costs to the Funds' shareholders with no corresponding benefits. ¶61. Such arrangements made possible by virtue of the existence of the Funds and the shareholders' payment of advisory fees, whereby Defendants obtain the financial benefit while Plaintiffs and the Funds bear the financial burden, are indicative of the excessive nature of Defendants' fees.

Defendants attempt to seek refuge in an SEC safe harbor regarding soft dollars. Def. Mem. at 13-14. First, Plaintiffs make allegations regarding numerous fall-out benefits, not simply soft dollars. ¶¶60, 62-64. Moreover, assuming *arguendo* that Defendants' practices fall within the safe harbor, a fact that can only be borne out by discovery, those practices even if not illegal, still support Plaintiffs' claim that the fees charged by MFS are excessive.

### f.    The Lack of Independence and Conscientiousness of the Funds' Trustees.

Finally, MFS argues that the fees were approved by statutorily disinterested trustees whose business judgment the Court should not second-guess. Def. Mem. at 14-16. For starters, MFS has it backwards. Under a Section 36(b) analysis, one of the factors this Court should consider in

determining whether a fee is disproportionately large to the services rendered is "the independence and conscientiousness of the independent trustees."[10]     Plaintiffs do not challenge whether the trustees are statutorily disinterested; however, "the lack of conscientiousness of even disinterested [trustees] in reviewing the fees paid by the Funds, the lack of adequate information provided to the [trustees] in connection with their approvals of the advisory agreements and Distribution Plans, and the control of management over the [trustees] in reviewing the fees paid by the Funds … are important factors under the *Gartenberg* line of cases … ."   ¶68.   Indeed, the ICA imposes upon MFS a duty (albeit one it has failed to meet) to provide the trustees with the information they need to perform their obligations in reviewing and approving the contracts between MFS and the Funds. 15 U.S.C. § 80a-15(c).  Plaintiffs plainly allege that MFS has failed to provide the Funds' trustees with information required to ascertain adequately MFS's true cost structure, MFS's enjoyment of economies of scale, and the disparity between the fees charged to the Funds and MFS's other clients, ¶¶70-71, making it impossible for the trustees to determine whether the fees are reasonable. Moreover, a "post hoc" review of the negotiations between the trustees[11] and MFS and the trustees' conscientiousness is precisely what *Gartenberg* encourages.   As another court recognized:

> [I]t was unrealistic to rely upon the directors to adequately enforce or negotiate the terms of the investment company's direct contract with the adviser.  In light of the investment company directors' particular ineffectiveness in direct "dealings between the fund and its investment adviser," Congress provided a direct cause of action for shareholders against the investment adviser.  In sum, Congress enacted § 36(b) in order to address a narrow area of concern:  the negotiation and enforcement of payment arrangements between the investment adviser and its fund.

---

[10] The Supreme Court found that "[i]n contrast to its approach in other aspects of the 1970 amendments [to the ICA], Congress decided not to rely solely on the fund's directors to assure reasonable adviser fees, notwithstanding the increased disinterestedness of the board."  *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 542 (1984) at 540 (citing *Burks v. Lasker*, 441 U.S. 471, 481-82 n. 10, 484 (1979)).

[11] In light of the disparity between the fees charged to MFS's other clients (who possess real bargaining power) and the fees charged to the Funds, it is self-evident that the fees are not the product of any real negotiation between the trustees and MFS.

*In re Nuveen Fund Litig.*¸ No. 94 C 360, 1996 WL 328006, *13 (N.D. Ill. June 11, 1996).[12]

**C.    Plaintiffs have Stated Sufficient Facts to State a Claim that Defendants have Wrongfully Received Excess Profits from Economies of Scale (Count II) in Violation of Section 36(b).**

MFS's argument that Count II's excess profits claim is duplicative of Count I (Def. Mem. at 16) demonstrates its fundamental misperception that Section 36(b) only provides a remedy for excessive fees. Section 36(b) is not limited to excessive fee claims; instead, that section provides a cause of action "for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or the security holders thereof to such investment adviser or person." 15 U.S.C. § 80a-35(b). In Count II, Plaintiffs allege that Defendants have wrongfully retained excess profits from economies of scale, which are a product of a growth in assets managed by Defendants "caused in part by marketing programs paid for with the distribution fees charged to Plaintiffs and in part by Defendants' ability to provide the identical investment advisory services they provide Plaintiffs to other clients at little or not additional cost." ¶ 16. This claim goes further than Plaintiffs' excessive fee claim in Count I by alleging that not only are the advisory fees themselves excessive, but also that Defendants receive excessive profits occasioned by economies of scale that are generated as the Funds grow larger. As discussed above, and contrary to Defendants' arguments, Plaintiffs have specifically alleged that growth in assets have generated substantial economies of scale. *See, e.g.,* ¶ 14-16.

Importantly, *Migdal*, on which Defendants rely, provides an implicit basis for Count II of Plaintiffs' Complaint. *Migdal*, 248 F.3d at 327 (noting the importance of an allegation regarding "excess profits from economies of scale" in context of § 36(b)). Indeed, it is hard to understand why an adviser would not be liable for charging excessive fees in breach of its fiduciary duty where a fund advisor experiences extraordinary economies of scale in providing investment advisory

---

[12] Although the court granted the defendants' motion to dismiss, the plaintiffs had not alleged, as Plaintiffs do here, that the advisory fees were excessive. Rather, the plaintiffs challenged the propriety of an investment adviser's financial counsel—a claim the Court believed was not cognizable under its narrow reading of § 36(b).

services to a phenomenally growing asset base but retains the benefits of those economies by not passing them on to the shareholders of the fund in any meaningful way.  This is precisely what Plaintiffs have alleged.  ¶¶14-16, 78-79.

Defendants have cited nothing to indicate that such a claim does not exist.  Indeed, in *Wicks, Strigliabotti, Jones,* and *Miller,* the courts declined to dismiss the exact same claim based on virtually identical allegations.  *See Jones*, 2005 WL 8311301, at * 3; *see generally Wicks*, 2005 WL 645529; *Strigliabotti,* 2005 WL 645529; and *Miller* Order [Exh. F].

### D.    Plaintiffs State a Claim that Defendants Charge Excessive Distribution Fees That Allow Them to Extract Additional Advisory Fees in Violation of § 36(b).

In Count III, Plaintiffs allege that Defendants have breached their fiduciary duties under Section 36(b) not only by receiving 12b-1 distribution fees[13] that are themselves excessive, but also by using the distribution fees as a vehicle through which to extract additional compensation for their advisory services.  ¶¶23, 25-27.   In *Meyer v. Oppenheimer Mgmt. Corp.,*  764 F.2d 76 (2d Cir. 1985), the court expressly found that "[a] claim that payments made under Rule 12b-1 are excessive when combined with advisory fees, where both payments are made to "affiliated persons" of an investment adviser, is cognizable under section 36(b)."  *See also Sheldon Krantz*, 305 F.3d at 142; *Pfeiffer,* 2004 WL 1903075, at * 4.  Thus, Count III is cognizable as a separate claim under § 36(b).

Assuming *arguendo* that the test for <u>proving</u> that a distribution fee violates Section 36(b) is whether the fee "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining," *Gartenberg* 694 F. 2d at 928, Plaintiffs have stated a claim under §36(b) for excessive distribution fees.   The Complaint alleges that not only are the distribution fees themselves excessive and disproportionately large to the services rendered to the funds in exchange for those fees, but also that Defendants have used the distribution fees to "extract[] additional compensation for their retail

---

[13] The distribution fees pay for marketing programs used to attract new investors and sell fund shares in order to grow or stabilize Fund assets purportedly so that the Funds can benefit from economies of scale through reduced advisory fees.  ¶¶ 22-23.

23

advisory services by causing Plaintiffs and other shareholders to pay Defendants' marketing expenses to acquire new shareholders so that these new shareholders could pay additional advisory fees to Defendants." ¶ 23; *see also* ¶ 27.

Defendants turn a blind eye to Plaintiffs' allegations regarding the distribution fees charged to shareholders and the Funds. Specifically, Plaintiffs allege that Defendants receive over $40 million in 12b-1 distribution fees annually from only one mutual fund. ¶ 40. Plaintiffs further allege that in exchange for these enormous fees, the shareholders and the Funds have received <u>no</u> benefit from Defendants' "marketing, selling, and distributing mutual fund shares to new shareholders" (i.e., the actual distribution services); instead, any rewards realized (i.e., economies of scale) have gone solely to Defendants. ¶¶ 25-27; 82-83. Thus, in reality, the services rendered in exchange for the distribution fees are really services that benefit Defendants, not Plaintiffs and the Funds. Millions of dollars in fees in exchange for services of zero value to the Funds and their shareholders is indisputably a fee that is disproportionately large to the services rendered by the Defendants. To make matters worse, to the extent that Defendants' distribution activity has increased the assets in the Funds (a fact that may or may not be proven through discovery), Plaintiffs allege the distribution fees have actually increased Defendants' advisory fees as well because those fees are calculated as a percentage of the assets of the Funds. ¶ 26. These allegations are more than sufficient to survive a motion to dismiss. As with Count II, courts (including this one) have sustained virtually identical claims based on virtually identical allegations. *See Wicks*, 2005 WL 645529; *Strigliabotti* 2005 WL 645529; and *Miller* Order [Exh. F].

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that MFS's motion to dismiss be denied.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 7.1(D) of the Local Rules of the United States District Court for the District of Massachusetts, Plaintiffs believe that oral argument would assist the Court and request to be heard on Defendants' motion to dismiss.

Dated: May 18, 2005

Respectfully submitted:

SHAPIRO HABER & URMY, LLP

/s/ Michelle H. Blauner
Michelle H. Blauner (BBO #549049)
Edward F. Haber (BBO #215620)
53 State Street
Boston, MA  02109
(617) 439-3939 main
(617) 439-0134 facsimile

Lynn L. Sarko
Michael D. Woerner
Tana Lin
Gretchen F. Cappio
KELLER ROHRBACK, LLP
1201 Third Avenue, #3200
Seattle, WA  98101

Guy M. Burns
Jonathan S. Coleman
Becky Ferrell-Anton
JOHNSON, POPE, BOKOR, RUPPEL & BURNS, L.L.P.
100 North Tampa Street, Ste. 1800
Tampa, FL  33602

Michael J. Brickman
James C. Bradley
Nina H. Fields
RICHARDSON PATRICK WESTBROOK & BRICKMAN, LLC
174 East Bay Street, Suites 100 & 200
Charleston, SC  29401

**Counsel for Plaintiffs**