Westlaw.

69 FR 39798-01                                                          Page 1
69 FR 39798-01, 2004 WL 1452698 (F.R.)
(Cite as: 69 FR 39798)

RULES and REGULATIONS

SECURITIES AND EXCHANGE COMMISSION

17 CFR Parts 239, 240, and 274

[Release Nos. 33-8433; 34-49909; IC-26486; File No. S7-08-04]

RIN 3235-AJ10

Disclosure Regarding Approval of Investment Advisory Contracts by Directors of
Investment Companies

Wednesday, June 30, 2004

*39798 AGENCY: Securities and Exchange Commission.

ACTION: Final rule.

SUMMARY: The Securities and Exchange Commission is adopting rule and form amendments
under the Securities Act of 1933, the Securities Exchange Act of 1934, and the
Investment Company Act of 1940 to improve the disclosure provided by registered
management investment companies about how their boards of directors evaluate and
approve, and recommend shareholder approval of, investment advisory contracts.  The
amendments require a registered management investment company to provide disclosure
in its reports to shareholders regarding the material factors and the conclusions
with respect to those factors that formed the basis for the board's approval of
advisory contracts during the most recent fiscal half-year.  The amendments also are
designed to encourage improved disclosure in proxy statements regarding the basis
for the board's recommendation that shareholders approve an advisory contract.

DATES: Effective Date: August 5, 2004, except that the amendments to Item 12 of Form
N-1A, [FN1] Item 18 of Form N-2, [FN2] and Item 20 of Form N-3 [FN3] are effective
January 31, 2006.

    FN1 17 CFR 239.15A and 274.11A.

    FN2 17 CFR 239.14 and 274.11a-1.

    FN3 17 CFR 239.17a and 274.11b.

    Compliance Date: All fund reports to shareholders for periods ending on or after
March 31, 2005, and all fund proxy statements on Schedule 14A filed on or after
October 31, 2004, are required to comply with these amendments.  Section II.C. of
this release contains more information on the compliance date.

FOR FURTHER INFORMATION CONTACT: Deborah D. Skeens, Senior Counsel, or Paul G.
Cellupica, Assistant Director, Office of Disclosure Regulation, Division of
Investment Management, (202) 942-0721, at the Securities and Exchange Commission,
450 Fifth Street, NW, Washington, DC 20549-0506.

SUPPLEMENTARY INFORMATION: The Securities and Exchange Commission  ("Commission") is
adopting amendments [FN4] to Schedule 14A, [FN5] the schedule used by registered
investment companies and issuers registered under section 12 of the Securities
Exchange Act of 1934 ("Exchange Act") [FN6] for proxy statements pursuant to section
14(a) of the Exchange Act, and Forms N-1A, N-2, and N-3, registration forms used by
management investment companies to register under the Investment Company Act of 1940

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01                                                    Page 2
69 FR 39798-01, 2004 WL 1452698 (F.R.)
(Cite as: 69 FR 39798)

("Investment Company Act") [FN7] and to offer their securities under the Securities
Act of 1933 ("Securities Act"). [FN8]

   FN4 The Commission proposed these amendments in February 2004.  Investment Company
Act Release No. 26350 (Feb. 11, 2004) [69 FR 7852 (Feb. 19, 2004)] ("Proposing
Release").

   FN5 17 CFR 240.14a-101.

   FN6 15 U.S.C. 78a et seq.

   FN7 15 U.S.C. 80a-1 et seq.

   FN8 15 U.S.C. 77a et seq.

Table of Contents

I. Background

II. Discussion

A. Disclosure Requirement in Shareholder Reports

B. Disclosure Enhancements

C. Compliance Date

III.  Paperwork Reduction Act

IV. Cost/Benefit Analysis

V. Consideration of Burden on Competition; Promotion of Efficiency, Competition, and
Capital Formation

VI. Final Regulatory Flexibility Analysis

VII. Statutory Authority

Text of Rule and Form Amendments

I. Background

   Unlike most business organizations, registered management investment companies
("funds") [FN9] are typically organized by an investment adviser that is responsible
for the day-to-day operations of the fund.  In most cases, the investment adviser is
organized as a corporation, whose shareholders may have an interest with respect to
the fund that is quite different from the interests of the fund's shareholders.  One
of the key areas where the interests of fund shareholders and shareholders of the
investment adviser diverge is fees.  While fund shareholders ordinarily prefer lower
fees to achieve greater returns, shareholders of the fund's investment adviser often
want to maximize profits through higher fees.

   FN9 Management investment companies typically issue shares representing an
undivided proportionate interest in a changing pool of securities, and include open-
end and closed-end companies.  See T. Lemke, G. Lins, A. Smith III, Regulation of
Investment Companies, Vol. I, ch. 4, § 4.04, at 4-5 (2002).  An open-end company is
a management company that is offering for sale or has outstanding any redeemable
securities of which it is the issuer.  A closed-end company is any management
company other than an open-end company.  See section 5 of the Investment Company Act
[15 U.S.C. 80a-5].  Open-end companies generally offer and sell new shares to the
public on a continuous basis.  Closed-end companies generally engage in traditional
underwritten offerings of a fixed number of shares and, in most cases, do not offer
their shares to the public on a continuous basis.

©  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01                                                      Page 3
69 FR 39798-01, 2004 WL 1452698 (F.R.)
(Cite as: 69 FR 39798)

    The Investment Company Act relies on fund boards of directors to police conflicts
of interest, including conflicts with respect to fees to be received by investment
advisers.  Section 15(a) makes it unlawful for any person to serve as an investment
adviser to a fund, except pursuant to a written contract that has been approved by a
majority vote of the fund's shareholders and that continues in effect for not more
than two years, unless its continuance is approved at least annually by the board of
directors or a majority vote of the shareholders. [FN10] In addition, section 15(c)
requires that the terms of any advisory contract, and any renewal thereof, be
approved by a vote of the majority of the disinterested directors. [FN11] Section
15(c) also requires a fund's directors to request and evaluate, and an investment
adviser to a fund to furnish, such information as may reasonably be necessary to
evaluate the terms of any advisory contract. [FN12] As part of their fiduciary
duties with respect to fund fees, boards of directors are required to evaluate the
material factors applicable to a decision to approve an investment advisory
contract. [FN13]

    FN10 15 U.S.C. 80a-15(a).

    FN11 We refer to directors who are not "interested persons" of the fund as
"independent directors" or "disinterested directors." The term "interested person"
is defined in section 2(a)(19) [15 U.S.C. 80a-2(a)(19)] of the Investment Company
Act.

    FN12 15 U.S.C. 80a-15(c).

    FN13 See, e.g., Burks v. Lasker, 441 U.S. 471, 483 (1979) ("Congress consciously
chose to address the conflict-of-interest problem through the [Investment Company]
Act's independent-directors section."); Brown v. Bullock, 194 F. Supp. 207, 235
(S.D.N.Y.) ("By giving the directors the right to extend and to terminate the
[investment advisory] contract, the Act necessarily also imposes upon the directors
the fiduciary duty to use these powers intelligently, diligently and solely for the
interests of the company and its stockholders."), aff'd, 294 F.2d 415 (2nd Cir.
1961).

    Since 1994, we have required fund proxy statements seeking approval of an
investment advisory contract to include a discussion of the material factors that
form the basis of the fund board's recommendation that shareholders approve the
contract. [FN14] In 2001, we adopted amendments requiring a fund to provide similar
disclosure in its Statement of Additional Information *39799 ("SAI") [FN15]
regarding the basis for the board's approval of an existing investment advisory
contract. [FN16]

    FN14 Item 22(c)(11) of Schedule 14A.  See Investment Company Act Release No. 20614
(Oct. 13, 1994) [59 FR 52689 (Oct. 19, 1994)] (adopting amendments to Schedule 14A).

    FN15 The SAI is part of a fund's registration statement and contains information
about a fund in addition to that contained in the prospectus. The SAI is required to
be delivered to investors upon request and is available on the Commission's
Electronic Data Gathering, Analysis, and Retrieval System ("EDGAR").

    FN16 Item 12(b)(10) of Form N-1A (registration statement for open-end management
investment companies); Item 18.13 of Form N-2 (registration statement for closed-end
management investment companies); Item 20(l) of Form N-3 (registration statement for
separate accounts organized as management investment companies that offer variable
annuity contracts); Investment Company Act Release No. 24816 (Jan. 2, 2001) [66 FR
3734, 3744 (Jan. 16, 2001)] (adopting requirement for disclosure in SAI of basis for
board's approval of advisory contract).

    Recently, concerns have been raised regarding the adequacy of review of advisory
contracts and management fees by fund boards.  In particular, the level of fees
charged by investment advisers to mutual fund clients, especially in comparison to
those charged by the same advisers to pension plans and other institutional clients,
has become the subject of debate. [FN17] In February 2004, the Commission proposed
to require enhanced disclosure regarding the board's basis for approving, or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01                                                           Page 4
69 FR 39798-01, 2004 WL 1452698 (F.R.)
(Cite as: 69 FR 39798)

recommending that shareholders approve, investment advisory contracts, in order to
encourage fair and reasonable fund fees.  Increased transparency with respect to
investment advisory contracts, and fees paid for advisory services, will assist
investors in making informed choices among funds and encourage fund boards to engage
in vigorous and independent oversight of advisory contracts. [FN18] This proposal
was part of a larger series of Commission rulemaking initiatives that have sought to
improve disclosure to investors concerning fund fees and charges. [FN19]

    FN17 See, e.g., John P. Freeman and Stewart L. Brown, Mutual Fund Advisory Fees:
The Cost of Conflicts of Interest, 26 Iowa Journal of Corporation Law 609, 634
(Spring 2001) (arguing that advisory fees charged by investment advisers for equity
pension funds are substantially lower than advisory fees charged by investment
advisers for equity mutual funds because advisory fees for pension funds are
negotiated through arm's-length bargaining); Special Report: Perils in the Savings
Pool--Mutual Funds, The Economist, Nov. 8, 2003, at 65 (arguing that fund boards
tend to "rubber-stamp" their advisers' contracts without question); Testimony of
Gary Gensler, Hearing before the U.S. House of Representatives Committee on
Financial Services, Subcommittee on Capital Markets, Insurance and Government
Sponsored Enterprises, 108th Cong., 1st Sess. (Mar. 12, 2003) (arguing that "mutual
fund boards fire their advisers with about the same frequency that race horses fire
their jockeys").  But see Sean Collins, The Expenses of Defined Benefit Pension
Plans and Mutual Funds, Investment Company Institute Perspective (Dec. 2003),
available at http://www.ici.org/statements/res/1per09-06.pdf (contending that the
management fees of mutual funds cover a broader array of services than the fees paid
by pension funds to external managers, and that mutual funds and pension funds incur
similar fees for similar portfolio management services); Richard M. Phillips, Mutual
Fund Independent Directors: A Model for Corporate America?, Investment Company
Institute Perspective, at 7 (Aug. 2003), available at http://
www.ici.org/statements/res/2per09-04.pdf (arguing that the effectiveness of fund
boards should not be measured by reference to the frequency with which boards
terminate investment advisers).

    FN18 See Statement of the Commission Regarding the Enforcement Action Against
Alliance Capital Management, L.P., SEC Press Release 2003-176 (Dec. 18, 2003)
http://www.sec.gov/news/press/2003-176.htm (stating Commission's view that the best
way to ensure fair and reasonable fees "is a marketplace of vigorous, independent,
and diligent mutual fund boards coupled with fully-informed investors who are armed
with complete, easy-to-digest disclosure about the fees paid and the services
rendered").

    FN19 Investment Company Act Release No. 26464 (June 7, 2004) [69 FR 33262 (June
14, 2004)] (adopting amendments that require enhanced disclosure regarding
breakpoint discounts on front-end sales loads); Investment Company Act Release No.
26372 (Feb. 27, 2004) [69 FR 11244 (Mar. 9, 2004)] (adopting requirements for
expense disclosure in fund shareholder reports); Investment Company Act Release No.
26341 (Jan. 29, 2004) [69 FR 6438 (Feb. 10, 2004)] (proposing point-of-sale
disclosure and a new confirmation statement for brokers to use when selling fund
shares); Investment Company Act Release No. 26313 (Dec. 18, 2003) [68 FR 74820 (Dec.
24, 2003)] (requesting comment on measures to improve disclosure of mutual fund
transaction costs); Investment Company Act Release No. 26195 (Sept. 29, 2003) [68 FR
57760 (Oct. 6, 2003)] (adopting amendments requiring investment company
advertisements to highlight the availability and importance of information on fees
and charges found in the prospectus).

    The Commission received 22 comment letters relating to the proposed amendments from
investors, participants in the fund industry, and others.  The commenters generally
supported the Commission's proposals, although some expressed concerns regarding
portions of the disclosure requirements or suggested changes.  Today, the Commission
is adopting these proposed amendments, with modifications to address commenters'
concerns.

    In addition to the amendments that we are adopting in this release, we are amending
the fund recordkeeping rule to require that funds retain copies of the written
materials that directors considered in approving an advisory contract. This

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

recordkeeping requirement will facilitate our compliance examiners' review of whether directors are obtaining the necessary information to make an informed assessment of the advisory contract.  The release amending the fund recordkeeping rule also includes measures designed to improve the effectiveness of fund boards of directors and enhance their independence in dealing with matters such as the advisory fee.

II. Discussion

A. Disclosure Requirement in Shareholder Reports

  The Commission is adopting, substantially as proposed, amendments to Forms N-1A, N-2, and N-3 [FN20] that require fund shareholder reports to discuss, in reasonable detail, the material factors and the conclusions with respect thereto that formed the basis for the board of directors' approval of any investment advisory contract. [FN21] This requirement applies to shareholder reports of open- and closed-end management investment companies and insurance company managed separate accounts that offer variable annuities.

  FN20 Open-end management investment companies use Form N-1A to register under the Investment Company Act and to offer their shares under the Securities Act.  Closed-end management investment companies use Form N-2, and insurance company managed separate accounts that offer variable annuities use Form N-3.

  FN21 Item 21(d)(6) of Form N-1A; Instruction 6.e. to Item 23 of Form N-2; Instruction 6(v) to Item 27(a) of Form N-3.  The amendments to Form N-1A in this release reflect the renumbering of items in amendments that the Commission recently adopted to the requirements for fund shareholder reports, that renumber Item 6 (Management, Organization, and Capital Structure), Item 13 (Management), and Item 22 (Financial Statements) of Form N-1A as Items 5, 12, and 21, respectively.  See Investment Company Act Release No. 26372, supra note 19.  These recent amendments also added Item 21(d) to Form N-1A, Instruction 6 to Item 23 to Form N-2, and Instruction 6(v) to Item 27(a) of Form N-3, containing requirements for annual and semi-annual reports to shareholders for each respective registration form.

  Several commenters, including investor advocacy groups and fund directors, supported the proposed requirement to include disclosure regarding the board's basis for approval of any investment advisory contract in shareholder reports, agreeing with the Commission that shareholder reports are the location where investors are more likely to read and benefit from this disclosure.  However, some fund industry commenters objected to inclusion of the proposed disclosure in shareholder reports.  These commenters argued that the disclosure could be lengthy, and that adding it to shareholder reports could dilute their effectiveness.  In addition, these commenters noted that information in shareholder reports is subject to certification by the fund's principal executive and principal financial officers, and argued that it would be inappropriate to require fund officers to certify disclosure that explains the *39800  board's basis for approving an advisory contract. [FN22]

  FN22 See rule 30a-2(a) under the Investment Company Act (requiring reports filed on Form N-CSR to require certifications in the form specified in Item 11(a)(2) of Form N-CSR); Item 1 of Form N-CSR (requiring copy of report transmitted to shareholders pursuant to rule 30e-1 under the Investment Company Act); Item 11(a)(2) of Form N-CSR (form of certification).

  We continue to believe, however, that including disclosure regarding the board's basis for approving an advisory contract in shareholder reports will provide existing fund shareholders with more timely disclosure of the reasons for the board's approval of an investment advisory contract.  The visibility of this disclosure, alongside other current information about a fund, such as investment performance and current period dollars and cents expense disclosure, [FN23] may encourage funds to provide a meaningful explanation of the board's basis for approving an investment advisory contract.  This, in turn, may encourage fund boards to consider investment advisory contracts more carefully and investors to consider more carefully the costs and value of the services rendered by the fund's investment

69 FR 39798-01                                                    Page 6
69 FR 39798-01, 2004 WL 1452698 (F.R.)
**(Cite as: 69 FR 39798)**

adviser.

FN23 The Commission recently adopted rules that require open-end management
investment companies to include in shareholder reports Management's Discussion of
Fund Performance and information regarding the dollar amount of expenses paid by
investors on an ongoing basis.  See <u>Investment Company Act Release No. 26372</u>, supra
note 19.

We believe that it is appropriate to require a fund's principal executive and
financial officers to certify the description of the board's evaluation process
based on their knowledge. [FN24] A certifying officer could rely on information
contained in the meeting minutes of the board and other information regarding the
board's evaluation that is retained as part of the fund's records. [FN25] In
addition, a fund's board could approve the discussion that is to be included in
shareholder reports regarding its basis for approving an advisory contract, in order
to assist the fund's principal executive and financial officers in meeting their
obligations under the certification requirement.

FN24 See Paragraph 2 of the certification of Item 11(a)(2) of Form N-CSR
(requiring officer to certify "based on his or her knowledge").  Cf. Item 3(a) of
Form N-CSR (requiring disclosure of whether a fund's board of directors has
determined that it has at least one audit committee financial expert); Item 4(h) of
Form N-CSR (requiring disclosure of whether the audit committee of a fund's board
has considered whether the provision of non-audit services rendered to the fund's
investment adviser and certain related parties that were not pre-approved by the
audit committee is compatible with maintaining the principal accountant's
independence).

FN25 See rule 31a-1(b)(4) under the Investment Company Act [<u>17 CFR 270.31a-
1(b)(4)</u>] (requiring funds to maintain minute books of directors' or trustees'
meetings).  The Commission is publishing a release adopting amendments to rule 31a-
2, the fund recordkeeping rule, that require that a fund retain any written
information considered by the directors in approving the terms or renewal of a
contract between the fund and an investment adviser.

As adopted, the disclosure requirement in fund shareholder reports will apply to
any new investment advisory contract or contract renewal, including subadvisory
contracts, approved by the board during the most recent fiscal half-year.  The
proposal would have excluded contracts that were approved by shareholders from the
disclosure requirement.  We have determined to include these contracts because we
agree with commenters that this comprehensive disclosure will better enable
shareholders to remain up-to-date on advisory contract approvals, regardless of
whether they were involved in the original approval of the contract.  We note that
directors have the same duty with respect to approval of an advisory contract,
whether or not the contract is also approved by shareholders.  We have modified the
proposed amendments to clarify that a fund is required to provide shareholder
reports disclosure only regarding board approvals during the fund's most recent
fiscal half-year. [FN26] Thus, if the board approves a contract during the first
half of a fiscal year, the disclosure would be required in the semi-annual report
for that period, but need not be repeated in the annual report.

FN26 Item 21(d)(6) of Form N-1A; Instruction 6.e. to Item 23 of Form N-2;
Instruction 6(v) to Item 27(a) of Form N-3.

Because fund shareholder reports will now contain disclosure with respect to all
advisory contracts approved by the board, we are removing the existing requirement
for disclosure in the SAI of Forms N-1A, N-2, and N-3 with respect to the board's
approval of any existing investment advisory contract. We agree with commenters who
argued that requiring discussion of the board's basis for approving an advisory
contract in multiple locations is duplicative.

However, we also agree with commenters who argued that it is important for
investors to have access to information about advisory contract approvals before
investing in a fund.  For that reason, we are requiring that a fund prospectus state

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01                                                        Page 7
69 FR 39798-01, 2004 WL 1452698 (F.R.)
**(Cite as: 69 FR 39798)**

that a discussion regarding the board of directors' basis for approving any
investment advisory contract is available in the fund's annual or semi-annual report
to shareholders, as applicable. [FN27] This disclosure will be required to indicate
the dates covered by the relevant shareholder report, so that a shareholder may
easily request the appropriate report.  The disclosure will be required to appear
adjacent to other prospectus disclosure about the fund's investment adviser. [FN28]

   FN27 Item 5(a)(1)(iii) of Form N-1A; Item 9.1.b.(4) of Form N-2; Item 6(b)(iii) of
Form N-3.

   FN28 Item 5(a)(1)(ii) of Form N-1A; Item 9.1.b.(3) of Form N-2; Item 6(b)(ii) of
Form N-3.

   The amendments we are adopting today will therefore result in complementary
disclosure requirements in fund shareholder reports, prospectuses, and proxy
statements.  The disclosure requirement in shareholder reports will provide existing
fund shareholders with information about any board approval of an investment
advisory contract during the most recent fiscal half-year.  The prospectus
disclosure requirement will inform prospective investors that this information is
available in shareholder reports.  Finally, the existing disclosure requirement in
fund proxy statements will continue to apply to any recommendation that shareholders
approve an investment advisory contract.

   Several commenters recommended that funds be either encouraged or required to
disclose information concerning board approval of investment advisory contracts on
their Web sites.  These commenters argued that Web site disclosure would provide
investors with quick and easy access to this information at low cost. We note that
we have recently taken steps to encourage Web site disclosure of fund shareholder
reports, by proposing amendments that would require that the cover page of a fund
prospectus state whether the fund makes available its shareholder reports on or
through its Web site. [FN29]

   FN29 See Investment Company Act Release No. 26383 (Mar. 11, 2004) [69 FR 12752
(Mar. 17, 2004)] (proposed Item 1(b)(1) of Form N-1A, Item 1.1.d of Form N-2, and
Item 1(a)(vi) of Form N-3).

B. Disclosure Enhancements

   We are adopting several enhancements to the existing proxy statement disclosure
requirements and are including these same enhancements in the new shareholder
reports disclosure requirement.  These enhancements clarify and reinforce a fund's
obligation under the existing proxy disclosure requirement to discuss the material
factors and the conclusions with respect thereto that formed the board's basis for
recommending that the shareholders approve an advisory contract.  They are intended
to address our concerns that some funds do not provide adequate specificity
regarding *39801 the board's basis for its decision.  We are adopting the
enhancements substantially as proposed, with some modifications to address
commenters' concerns.

   Selection of Adviser and Approval of Advisory Fee. The amendments clarify that the
fund's discussion must include factors relating to both the board's selection of the
investment adviser, and its approval of the advisory fee and any other amounts to be
paid under the advisory contract. [FN30] Two commenters objected to the use of the
phrase "selection of the investment adviser," arguing that this language suggests
that the annual review and approval of the advisory contract is an annual
opportunity to replace the investment adviser, and that it is not the role of the
directors, except in the most egregious circumstances, to override the investors'
choice of an adviser. We note, however, that although we would not expect that fund
boards would routinely replace investment advisers, the board does have a duty to
monitor the adviser's performance of its duties under the advisory contract, and to
consider replacing the adviser if necessary.  The directors' decision to renew an
investment advisory contract, in effect, constitutes the selection of the investment
adviser.

©  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01                                                                 Page 8
69 FR 39798-01, 2004 WL 1452698 (F.R.)
**(Cite as: 69 FR 39798)**

FN30 Item 21(d)(6)(i) of Form N-1A; Instruction 6.e.(i) to Item 23 of Form N-2; Instruction 6(v)(A) to Item 27(a) of Form N-3; Item 22(c)(11)(i) of Schedule 14A.

Specific Factors. The amendments will require a fund to include a discussion including, but not limited to, the following: (1) The nature, extent, and quality of the services to be provided by the investment adviser; (2) the investment performance of the fund and the investment adviser; (3) the costs of the services to be provided and profits to be realized by the investment adviser and its affiliates from the relationship with the fund; (4) the extent to which economies of scale would be realized as the fund grows; and (5) whether fee levels reflect these economies of scale for the benefit of fund investors. [FN31]

FN31 Id. Courts have used similar factors in determining whether investment advisers have met their fiduciary obligations under section 36(b) of the Investment Company Act [15 U.S.C. 80a-35(b)]. See, e.g., Gartenberg v. Merrill Lynch Asset Management, Inc. 694 F.2d 923, 929 (2nd Cir. 1982) ("Gartenberg") (examining several factors, including "the adviser-manager's cost in providing the service, the nature and quality of the service, the extent to which the adviser-manager realizes economies of scale as the fund grows larger, and the volume of orders which must be processed by the manager").

We are adding an instruction to clarify that if any of the enumerated factors is not relevant to the board's evaluation of an investment advisory contract, the discussion must note this and explain the reasons why that factor is not relevant. [FN32] This instruction is intended to address the concerns of commenters who argued that the proposal should be modified to allow for less or different disclosure with respect to advisory contracts with "non-sponsor advisers" (i.e., investment advisers, including subadvisers, to funds that are sponsored by third parties unaffiliated with the adviser). These commenters claimed that more tailored disclosure would be appropriate for such advisory contracts because the relationship between an unaffiliated subadviser or a non-sponsor adviser and a fund is truly "arm's-length." They also argued that the factors that directors would consider in approving an advisory contract with an unaffiliated subadviser or non-sponsor adviser are different.

FN32 Instruction 3 to Item 21(d)(6) of Form N-1A; Instruction 6.f. to Item 23 of Form N-2; Instruction 6(vi) to Item 27(a) of Form N-3; Instruction 2 to Item 22(c)(11) of Schedule 14A.

The instruction we are adding will permit a fund, including a fund with a non-sponsor adviser, to tailor its disclosure to its particular circumstances. At the same time, it will require each fund to address each of the enumerated factors, either substantively or by explaining why the factor is not relevant. This degree of uniformity in the discussion is designed to facilitate investor understanding of board approvals of investment advisory contracts. We emphasize that it is important that a fund disclose how a board evaluated and approved all investment advisory contracts, including contracts with non-sponsor advisers, such as unaffiliated subadvisers. Under the Investment Company Act, a fund's board plays an important role in the selection and oversight of the fund's adviser and subadvisers, and the fact that these contracts are the result of "arm's length" negotiations does not remove the need for board oversight. [FN33] Unaffiliated subadvisers may, for example, have other material business arrangements with the fund's adviser or principal underwriter, which the board should consider in the course of evaluating a subadviser's contract. [FN34]

FN33 See Investment Company Act Release No. 26230 (Oct. 23, 2003) [68 FR 61720, 61723 (Oct. 29, 2003)] ("Manager of Managers Proposing Release") (proposing rules that would codify exemptive orders issued for "manager of manager" funds that permit such funds to operate without obtaining shareholder approval when the fund's principal investment adviser hires a new subadviser or replaces an existing subadviser).

FN34 See Manager of Managers Proposing Release, supra note 33, 68 FR at 61723 n. 37 (noting that, in carrying out its obligations under section 15(c) of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Investment Company Act, a board should consider any material business arrangements between the adviser or principal underwriter and the subadviser, including the involvement of the subadviser in the distribution of the fund's shares).

We note that the amendments are not intended to require disclosure of the amount of the fee paid to an unaffiliated subadviser if that information would not otherwise be required to be disclosed. For example, if a manager of managers fund is not otherwise required to disclose separately the fee paid to each subadviser, the amendments would not require this disclosure. [FN35]

FN35 Sponsors of manager of managers funds have represented that they are able to negotiate lower fees with subadvisers if they do not have to disclose those fees separately, and in our exemptive orders we have provided them relief from our disclosure requirements. See, e.g., Endeavor Series Trust, Investment Company Act Release Nos. 24054 (Sept. 27, 1999) [64 FR 53428 (Oct. 1, 1999)] (notice) and 24108 (Oct. 22, 1999) [70 SEC Docket 3081 (Nov. 23, 1999)] (order); Frank Russell Investment Company, Investment Company Act Release Nos. 21108 (June 2, 1995) [60 FR 30321 (June 8, 1995)] (notice) and 21169 (June 28, 1995) [59 SEC Docket 2105 (July 25, 1995)] (order). The Commission has proposed form amendments that, if adopted, would permit a manager of managers fund to disclose only the aggregate amount of advisory fees that it pays to subadvisers as a group, rather than the fee paid to each unaffiliated subadviser. Manager of Managers Proposing Release, supra note 33, 68 FR at 61722.

Under the amendments, a fund's discussion is required to state how the board evaluated the costs of the services to be provided and the profits to be realized by the investment adviser and its affiliates from the relationship with the fund. One commenter argued that, to the extent that actual operating cost and profit information is required, such disclosure could have harmful competitive effects on investment advisers, and that in any event disclosure of specific cost and profit figures is not necessary to help investors understand the board's evaluation of this factor. We wish to clarify that disclosure of specific proprietary information about the operating costs and profits of the investment adviser and its affiliates is not necessary to meet this requirement.

Comparison of Fees and Services Provided by Adviser. The fund's discussion will be required to indicate whether the board relied upon comparisons of the services to be rendered and the amounts to be paid under the contract with those under other investment advisory contracts, such as contracts of the same and other investment advisers with other registered investment companies or *39802 other types of clients (e.g., pension funds and other institutional investors). If the board relied upon such comparisons, the discussion will be required to describe the comparisons that were relied on and how they assisted the board in concluding that the contract should be approved. [FN36]

FN36 Item 21(d)(6)(i) of Form N-1A; Instruction 6.e.(i) to Item 23 of Form N-2; Instruction 6(v)(A) to Item 27(a) of Form N-3; Item 22(c)(11)(i) of Schedule 14A.

Commenters were divided on the proposed requirement with respect to comparisons of fees and services. Several commenters supported the proposed requirement, arguing that any responsible board would at least seek to compare the terms of the contract under consideration with relevant terms for similar funds, and that by encouraging boards to compare the compensation funds pay to their advisers with the compensation that other institutional investors pay, there may be a downward pressure on fund advisory fees. By contrast, one commenter objected to the requirement insofar as it relates to comparisons with other types of clients, particularly pension funds. This commenter argued that fund boards typically do not use such comparisons as a basis for approving or renewing advisory contracts, but that, to avoid providing negative disclosure that the board did not consider the use of such comparisons, fund boards may feel compelled to consider this factor, notwithstanding its lack of relevance. We are adopting the requirement as proposed because we believe that information concerning whether and, if so, how the board relies on comparisons is important in understanding the board's decision. As adopted, the amendment requires a description of the comparisons upon which the board relied and how they assisted

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01                                                                    Page 10
69 FR 39798-01, 2004 WL 1452698 (F.R.)
(Cite as: 69 FR 39798)

the board in concluding that the contract should be approved, and does not require
an enumeration of the types of comparisons that the board did not use.

Evaluation of Factors. The existing SAI and proxy statement requirements state that
conclusory statements or a list of factors will not be considered sufficient
disclosure, and that a fund's discussion must relate the factors to the specific
circumstances of the fund and the investment advisory contract. [FN37] We are
clarifying this by requiring that the fund's discussion state how the board
evaluated each factor.  For example, it will not be sufficient to state that the
board considered the amount of the investment advisory fee without stating what the
board concluded about the amount of the fee and how that affected its determination
that the contract should be approved. [FN38]

FN37 See Instruction to Item 13(b)(10) of Form N-1A; Instruction to Item 18.13 of
Form N-2; Instruction to Item 20(l) of Form N-3; Instruction to Item 22(c)(11) of
Schedule 14A.

FN38 Instruction 2 to Item 21(d)(6) of Form N-1A; Instruction 6.f. to Item 23 of
Form N-2; Instruction 6(vi) to Item 27(a) of Form N-3; Instruction 1 to Item
22(c)(11) of Schedule 14A.

Commenters' views on this proposed requirement were divided.  On the one hand, some
commenters agreed that the requirement that the discussion state how the board
evaluated each factor would be useful in ensuring that the discussion has reasonable
detail and does not rely on boilerplate disclosure.  On the other hand, some
commenters argued that detailed information regarding the factors that the board
considered and the conclusions it reached is not of interest to most shareholders,
and that, as a factual matter, boards typically determine whether to approve an
advisory contract based on the totality of the factors considered.  We believe that
the proposed requirement will elicit more useful information than the existing
requirement.  It would be difficult for a board to reach a final conclusion as to
whether to approve an advisory contract without reaching conclusions as to each
material factor that forms the basis for the board's approval.  Therefore, a
discussion of the board's evaluation of the individual factors is important in order
to help investors understand how the board reached its decision on whether to
approve such a contract. [FN39]

FN39 In determining whether an advisory fee violates section 36(b) of the
Investment Company Act, courts have similarly evaluated the evidence with respect to
the individual factors enumerated in Gartenberg before reaching a conclusion as to
the ultimate issue.  See, e.g., Gartenberg, supra note 31; Kalish v.  Franklin
Advisers, Inc., 742 F.Supp. 1222, 1228-1250 (S.D.N.Y. 1990), aff'd, 928 F.2d 590
(2nd Cir.), cert. denied, 502 U.S. 818 (1991); Krinsk v.  Fund Asset Management, 715
F.Supp. 472, 486-503 (S.D.N.Y. 1988), aff'd, 875 F.2d 404 (2nd Cir.), cert. denied,
493 U.S. 919 (1989); Schuyt v.  Rowe Price Prime Reserve Fund, Inc., 663 F.Supp.
962, 973-989 (S.D.N.Y.), aff'd, 835 F.2d 45 (2nd Cir. 1987), cert. denied, 485 U.S.
1034 (1988).

C. Compliance Date

The effective date for the amendments to the requirements for fund reports to
shareholders and proxy statements is August 5, 2004.  All fund reports to
shareholders with respect to periods ending on or after March 31, 2005, and all
proxy statements filed on or after October 31, 2004, will be required to comply with
the amendments.  We are selecting the March 31, 2005 compliance date so that a fund
will only be required to comply with the new disclosure requirements prospectively,
with respect to board approvals occurring on or after October 1, 2004.  This will
give funds sufficient time to update their recordkeeping procedures in light of the
new disclosure requirements, and to determine whether additional procedures for
board approval of the disclosure that will be required in shareholder reports are
needed in order to enable the fund's principal executive and financial officers to
certify this disclosure.  All initial registration statements on Forms N-1A, N-2,
and N-3, and all post-effective amendments that are annual updates to effective
registration statements, filed on or after the transmission to shareholders of a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01                                                    Page 11
69 FR 39798-01, 2004 WL 1452698 (F.R.)
**(Cite as: 69 FR 39798)**

report containing the required disclosure must include the prospectus disclosure
stating that a discussion regarding the board's basis for approving any investment
advisory contract is available in the fund's shareholder reports.

   The effective date for the amendments to Item 12 of Form N-1A, Item 18 of Form N-2,
and Item 20 of Form N-3 that remove the current SAI disclosure requirement with
respect to the board's approval of any existing investment advisory contract is
January 31, 2006.  By that date, every fund should have begun providing disclosure
in its shareholder reports regarding the board's decision to approve the fund's
investment advisory contract.  Prior to January 31, 2006, a fund may omit disclosure
in its SAI with respect to any board approval of an investment advisory contract if
it has previously provided the required disclosure with respect to that board
approval in a shareholder report.

III.  Paperwork Reduction Act

   As explained in the Proposing Release, certain provisions of the amendments contain
"collection of information" requirements within the meaning of the Paperwork
Reduction Act of 1995. [FN40] The titles for the collections of information are: (1)
"Rule 30e-1 under the Investment Company Act of 1940, Reports to Stockholders of
Management Companies"; (2) "Form N-1A under the Investment Company Act of 1940 and
Securities Act of 1933, Registration Statement of Open-End Management Investment
Companies"; (3) "Form N-2-- Registration Statement of Closed-End Management
Investment Companies"; (4) "Form N-3--Registration Statement of Separate Accounts
Organized as Management Investment Companies"; and (5) "Rule 20a-1 under the
Investment Company Act, Solicitations of Proxies, Consents, *39803 and
Authorizations." An agency may not conduct or sponsor, and a person is not required
to respond to, a collection of information unless it displays a currently valid OMB
control number.

   FN40 44 U.S.C. 3501, et seq.

   Rule 30e-1 (OMB Control No. 3235-0025) was adopted under Section 30(e) of the
Investment Company Act. [FN41] Form N-1A (OMB Control No. 3235-0307), Form N-2 (OMB
Control No. 3235-0026), and Form N-3 (OMB Control No. 3235-0316) were adopted
pursuant to Section 8(a) of the Investment Company Act [FN42] and Section 5 of the
Securities Act. [FN43] Rule 20a-1 (OMB Control No. 3235-0158) was adopted pursuant
to Section 20(a) of the Investment Company Act. [FN44]

   FN41 15 U.S.C. 80a-29(e).

   FN42 15 U.S.C. 80a-8(a).

   FN43 15 U.S.C. 77e.

   FN44 15 U.S.C. 80a-20(a).

   We are adopting amendments to the requirements for fund shareholder reports in
Forms N-1A, N-2, and N-3 that will require funds to provide disclosure regarding the
material factors that formed the basis for the board of directors' approval of an
investment advisory contract during the most recent fiscal half-year.  The
additional burden hours imposed by these amendments are reflected in the collection
of information requirements for shareholder reports required by rule 30e-1 under the
Investment Company Act.  In addition, we are removing requirements from Forms N-1A,
N-2, and N-3 that require funds to provide disclosure in the SAI of these forms with
respect to the basis of the board's approval of any advisory contract, and we are
adding a provision requiring funds to provide a reference in the prospectus to the
availability of the new disclosure in fund shareholder reports.  Finally, we are
adopting amendments to Schedule 14A that will clarify and reinforce funds' existing
obligation to provide disclosure in proxy statements of the board of directors'
basis for a recommendation that shareholders approve an investment advisory
contract.

   We published notice soliciting comments on the collection of information

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

requirements in the Proposing Release and submitted these requirements to the Office of Management and Budget ("OMB") for review in accordance with 44 U.S.C. 3507(d) and 5 CFR 1320.11. [FN45] OMB approved these collection requirements. We received no comments on the collection of information requirements.

   FN45 See Proposing Release, supra note 1, 69 FR at 7855-7856.

Shareholder Reports

   Rule 30e-1, which requires funds to include in the shareholder reports the information that is required by the fund's registration statement form, including the amendments, contains collection of information requirements. [FN46] The respondents to this collection of information requirement are funds registered on Forms N-1A, N-2, and N-3. Compliance with the disclosure requirements of rule 30e-1 is mandatory. Responses to the disclosure requirements will not be kept confidential.

   FN46 The amendments are to the shareholder reports requirements in Forms N-1A, N-2, and N-3. Rule 30e-1(a) under the Investment Company Act [17 CFR 270.30e-1(a)] requires funds to include in the shareholder reports the information that is required by the fund's registration statement form.

   We estimate that there are approximately 3,800 investment companies subject to rule 30e-1. The current approved hour burden for preparing and filing semi-annual or annual shareholder reports in compliance with rule 30e-1 is 143.3 hours per report per fund, or a total of 1,088,984 annual burden hours (143.3 hours per report x 2 reports x 3,800 funds).

   We currently estimate that the 3,800 funds filing annual and semi-annual shareholder reports pursuant to rule 30e-1 include 9,706 portfolios, including 8,938 portfolios of open-end management investment companies ("mutual funds") registered on Form N-1A, 733 closed-end funds registered on Form N-2, and 35 sub-accounts of managed separate accounts registered on Form N-3. [FN47] We continue to estimate that the proposed amendments will increase the estimated burden hours for complying with rule 30e-1 by 2 hours per portfolio annually. Accordingly, the estimated total annual hour burden for all funds for complying with rule 30e-1 is 1,108,396 hours (1,088,984 hours + (9,706 portfolios x 2 hours)).

   FN47 The estimates of the number of mutual fund portfolios registered on Form N-1A, the number of closed-end funds registered on Form N-2, and the number of sub-accounts of managed separate accounts registered on Form N-3 are based on the Commission staff's analysis of reports filed on Form N-SAR in 2003.

Form N-1A

   Form N-1A, including the proposed amendments, contains collection of information requirements. The likely respondents to this information collection are open-end funds registering with the Commission. Compliance with the disclosure requirements of Form N-1A is mandatory. Responses to the disclosure requirements are not confidential.

   The current estimated total annual hour burden for preparing registration statements on Form N-1A is 1,142,296 hours. [FN48] In the Proposing Release, we estimated that the proposed amendments would not increase the hour burden for filing registration statements on Form N-1A.

   FN48 This number includes additional hour burdens that would be imposed if the Commission adopts its recently proposed rules relating to portfolio manager disclosure (30,998 additional hours), and disclosure of sales loads and revenue sharing in connection with the proposals for new mutual fund confirmation and point of sale disclosure (1,968 additional hours). Investment Company Act Release No. 26383 (Mar. 11, 2004) [69 FR 12752, 12759 (Mar. 17, 2004)]; Exchange Act Release No. 49148 (Jan. 29, 2004) [69 FR 6438, 6474 (Feb. 10, 2004)].

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01                                                        Page 13
69 FR 39798-01, 2004 WL 1452698 (F.R.)
(Cite as: 69 FR 39798)

The Commission estimates that, on an annual basis, registrants file initial registration statements on Form N-1A covering 483 portfolios, and file post-effective amendments on Form N-1A covering 8,455 portfolios. We estimate that the amendments we are adopting to Form N-1A that remove the current requirement for a fund to provide disclosure in the SAI concerning the board's basis for approving an existing investment advisory contract will reduce the hour burden per portfolio per filing of an initial registration statement by 2 hours and will reduce the hour burden per portfolio per filing of a post-effective amendment to a registration statement by 2 hours, thereby reducing the total annual hour burden by 17,876 hours. [FN49] In addition, we estimate that the amendments we are adopting that require a fund to provide a reference in its prospectus to the availability of the required disclosure in fund shareholder reports will have no impact on the hour burden for filing registration statements on Form N-1A. Thus, the estimated total annual hour burden for all funds for preparation and filing of initial registration statements and post-effective amendments to Form N-1A will be 1,124,420 hours (1,142,296 hours-17,876 hours).

    FN49 This estimate is based on the following calculation: (2 hours x 483 portfolios) + (2 hours x 8,455 portfolios) = 17,876 hours.

Form N-2

    Form N-2, including the proposed amendments, contains collection of information requirements. The likely respondents to this information collection are closed-end funds registering with the Commission. Compliance with the disclosure requirements of Form N-2 is mandatory. Responses to the disclosure requirements are not confidential.

    The current estimated total annual hour burden for preparing an initial registration statement on Form N-2 is *39804  134,844 hours. [FN50] In the Proposing Release, we estimated that the proposed amendments would not increase the hour burden for filing registration statements on Form N-2.

    FN50 This number includes the additional hour burden that would be imposed if the Commission adopts its recently proposed rules relating to portfolio manager disclosure (2,492 additional hours). See Investment Company Act Release No. 26383, supra note 48.

    The Commission estimates that, on an annual basis, 234 closed-end funds file initial registration statements on Form N-2, and 38 closed-end funds file post-effective amendments on Form N-2. We estimate that the amendments we are adopting to Form N-2 that remove the current requirement for a fund to provide disclosure in the SAI concerning the board's basis for approving an existing investment advisory contract will reduce the hour burden per portfolio per filing of an initial registration statement by 2 hours and will reduce the hour burden per portfolio per filing of a post-effective amendment to a registration statement by 2 hours, thereby reducing the total annual hour burden by 544 hours. [FN51] In addition, we estimate that the amendments we are adopting that require a fund to provide a reference in its prospectus to the availability of the required disclosure in fund shareholder reports will have no impact on the hour burden for filing registration statements on Form N-2. Thus, the estimated total annual hour burden for all closed-end funds for preparation and filing of initial registration statements and post-effective amendments to Form N-2 will be 134,300 hours (134,844 hours - 544 hours).

    FN51 This estimate is based on the following calculation: (2 hours x 234 portfolios) + (2 hours x 38 portfolios) = 544 hours.

Form N-3

    Form N-3, including the proposed amendments, contains collection of information requirements. The likely respondents to this information collection are separate accounts, organized as management investment companies offering variable annuities, registering with the Commission on Form N-3. Compliance with the disclosure requirements of Form N-3 is mandatory. Responses to the disclosure requirements are

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01                                                        Page 14
69 FR 39798-01, 2004 WL 1452698 (F.R.)
(Cite as: 69 FR 39798)

not confidential.

   The current estimated total annual hour burden for preparing registration
statements on Form N-3 is 34,832 hours. [FN52] In the Proposing Release, we
estimated that the proposed amendments would not increase the hour burden for filing
registration statements on Form N-3.

   FN52 This number includes the additional hour burden that would be imposed if the
Commission adopts its recently proposed rules relating to portfolio manager
disclosure (170 additional hours).  See Investment Company Act Release No. 26383,
supra note 48.

   The Commission estimates that, on an annual basis, initial registration statements
covering 3 portfolios are filed on Form N-3 and post-effective amendments covering
35 portfolios are filed on Form N-3.  We estimate that the amendments we are
adopting to Form N-3 that remove the current requirement for a fund to provide
disclosure in the SAI concerning the board's basis for approving an existing
investment advisory contract will reduce the hour burden per portfolio per filing of
an initial registration statement by 2 hours and will reduce the hour burden per
portfolio per filing of a post-effective amendment to a registration statement by 2
hours, thereby reducing the total annual hour burden by 76 hours. [FN53] In
addition, we estimate that the amendments we are adopting that require a fund to
provide a reference in its prospectus to the availability of the required disclosure
in fund shareholder reports will have no impact on the hour burden for filing
registration statements on Form N-3.  Thus, the estimated total annual hour burden
for all funds for preparation and filing of initial registration statements and
post-effective amendments to Form N-3 will be 34,756 hours (34,832 hours - 76
hours).

   FN53 This estimate is based on the following calculation: (2 hours x 3 portfolios)
+ (2 hours x 35 portfolios) = 76 hours.

Proxy Statements

   Rule 20a-1, including the proposed amendments to Schedule 14A, contains collection
of information requirements. [FN54] The respondents to this collection of
information requirement include funds registered on Forms N-1A, N-2, and N-3.
Compliance with the disclosure requirements of rule 20a-1 is mandatory.  Responses
to the disclosure requirements are not confidential.

   FN54 The amendments are to Item 22 of Schedule 14A.  Rule 20a-1 requires funds to
comply with Regulation 14A, Schedule 14A, and all other rules and regulations
adopted pursuant to section 14(a) of the Exchange Act that would be applicable to a
proxy solicitation if it were made in respect of a security registered pursuant to
section 12 of the Exchange Act.  The annual responses to rule 20a-1 reflect the
number of proxy and information statements that are filed by funds.

   The amendments to Schedule 14A will clarify and reinforce funds' existing
obligation to provide disclosure in proxy statements regarding the board's basis for
recommending that shareholders approve an investment advisory contract.  Because
funds are already required to provide disclosure in appropriate detail regarding the
material factors and the conclusions with respect thereto that formed the board's
basis for recommending shareholder approval of an investment advisory contract, we
continue to estimate that the amendments will not increase the hour burden for
complying with the requirements of rule 20a-1.

IV. Cost/Benefit Analysis

   The Commission is sensitive to the costs and benefits imposed by its rules.  The
amendments that the Commission is adopting will require funds to improve the
disclosure that they provide regarding the fund board's basis for approving, or
recommending that shareholders approve, an investment advisory contract.
Specifically, the amendments will:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01                                                          Page 15
69 FR 39798-01, 2004 WL 1452698 (F.R.)
(Cite as: 69 FR 39798)

. Require fund shareholder reports to discuss, in reasonable detail, the material
factors and the conclusions with respect to those factors that formed the basis for
the board's approval of an advisory contract during the most recent fiscal half-
year;

. Require a fund to provide a statement in its prospectus about the availability of
the required disclosure in fund shareholder reports; and

. Enhance the existing requirement for a fund to provide disclosure in a proxy
statement seeking approval of an investment advisory contract about the board's
basis for its recommendation that shareholders approve the contract.

A. Benefits

The amendments we are adopting will improve the disclosure provided by funds about
how their boards of directors evaluate and approve, and recommend shareholder
approval of, investment advisory contracts. First, the amendments will provide
existing fund shareholders with more timely information about the basis for the
board's approval of investment advisory contracts. The increased visibility of this
disclosure resulting from its inclusion in shareholder reports may encourage funds
to provide a meaningful explanation of the board's basis for approving an investment
advisory contract. This, in turn, may benefit investors by encouraging them to
consider more carefully the costs and value of the services rendered by the fund's
investment adviser, and by enabling them to make more informed choices among funds.

In addition, the increased visibility of this disclosure in shareholder reports may
encourage fund boards to engage in more vigorous and independent oversight of
investment advisory contracts. This increased oversight by *39805 fund boards
will also benefit investors. The requirement that funds provide a statement in the
prospectus about the availability of the new disclosure in shareholder reports will
further this goal by assisting investors in finding the new disclosure.

We also are removing current requirements from Forms N-1A, N-2, and N-3 that
require funds to provide disclosure in the SAI with respect to the basis of the
board's approval of any advisory contract, since this disclosure will now be
available in shareholder reports. For purposes of the Paperwork Reduction Act, we
have estimated that the amendments to Forms N-1A, N-2, and N-3 will reduce the
annual hour burden for filing each form by 17,876 hours, 544 hours, and 76 hours,
respectively, for a total reduction in annual burden of 18,496 hours. We estimate
that this reduction in the annual hour burden will equal total internal cost savings
of $1,549,410 annually, or approximately $408 per investment company. [FN55] The
removal of these disclosure requirements also will result in some external cost
savings, but because this disclosure was included in a fund's SAI, which is
typically not typeset, and is only required to be provided to shareholders upon
request, we estimate that these savings will be minimal.

FN55 These figures are based on a Commission estimate that approximately 3,800
investment companies would be subject to the amendments and an estimated hourly wage
rate of $83.77. The estimate of the number of investment companies is based on data
derived from the Commission's EDGAR filing system. The estimated wage rate is a
blended rate, based on published hourly wage rates for assistant/associate general
counsels ($82.05) and programmers ($42.05) in New York City, and the estimate that
staff in these categories will divide time equally on compliance with the disclosure
requirements, yielding a weighted wage rate of $62.05 (($82.05 x .50) + (42.05 x
.50))= $62.05). See Securities Industry Association, Report on Management &
Professional Earnings in the Securities Industry 2003 (Sept. 2003). This weighted
wage rate was then adjusted upward by 35% for overhead, reflecting the costs of
supervision, space, and administrative support, to obtain the total per hour
internal cost of $83.77 ($62.05 x 1.35) = $83.77). This estimated wage rate for
compliance attorneys differs from the estimate in the Proposing Release, which was
based on published compensation for compliance attorneys in New York City ($74.22)
contained in the Securities Industry Association's Report on Management &
Professional Earnings in the Securities Industry 2001 (Oct. 2001).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The amendments will also clarify and reinforce funds' obligation under the existing disclosure requirements in proxy statements to discuss the material factors and the conclusions with respect thereto that formed the basis for the board's approval of the fund's existing advisory contract, or its recommendation that shareholders approve an investment advisory contract. This improved disclosure in proxy statements will also benefit investors.

B. Costs

The amendments will impose new requirements on funds to provide disclosure in their shareholder reports regarding the fund board's basis for approving an investment advisory contract. We estimate that complying with the new disclosure requirements will entail a relatively small financial burden. Funds currently are required to provide similar disclosure in their SAIs and in relevant proxy statements, and the required information regarding a fund board's evaluation of each advisory contract should be readily available to management and to the fund board. Therefore, we expect that the cost of compiling this information should be minimal, and the primary costs attributable to the amendments will be those of reporting this information. These costs may include both internal costs (for attorneys and non-legal staff to prepare and review the required disclosure) and external costs (for printing, and typesetting, and mailing of the disclosure).

For purposes of the Paperwork Reduction Act, we have estimated that the new disclosure requirements will increase the annual hour burden for completing a shareholder report in compliance with rule 30e-1 under the Investment Company Act by 19,412 hours. We estimate that this additional burden will equal total internal costs of $1,626,143 annually, or approximately $428 per investment company. [FN56] In addition, we have estimated that the amendments to Schedule 14A will have no impact on the hour burden for complying with rule 20a-1 under the Investment Company Act.

    FN56 See supra note 55.

The external costs of providing the enhanced disclosure in fund shareholder reports regarding the process by which a fund board reviews and approves an investment advisory contract are expected to be limited, but will depend on the individual circumstances of each fund and its contractual relationships with its advisers and sub-advisers, and the nature of the process by which the board determines whether to approve the fund's advisory contract. We estimate that the additional disclosure that will be required in shareholder reports may add one additional page to a fund's annual or semi-annual report, at a cost of $0.02 per page. [FN57] We estimate that there are approximately 257 million fund shareholder accounts which would send out 231 million reports to shareholders annually that will include the required disclosure. [FN58] Therefore, we estimate that the additional disclosure in shareholder reports will cost approximately $4,620,000 ((231 million shareholder reports x $0.02 per page) in external costs for funds annually.

    FN57 This cost per page is based on an estimate that the typical shareholder report is approximately 25 pages long and costs $.52 to print and deliver. See Securities Act Release No. 33-7766 (Nov. 4, 1999) [64 FR 62540, 62543 (Nov. 16, 1999)].

    FN58 Investment Company Institute, Mutual Fund Fact Book 65 (43rd ed. 2003), at 63 (estimating approximately 251 million shareholder accounts associated with mutual funds). In addition, we estimate that there are approximately 2 million shareholder accounts associated with closed-end funds registered on Form N-2 and approximately 4 million shareholder accounts associated with managed separate accounts registered on Form N-3. These figures are based on the Commission staff's analysis of reports filed on Form N-SAR in 2003. We estimated the number of shareholder reports by reducing the number of accounts by 10% to reflect an estimated 10% savings in the number of reports that must be delivered to shareholders due to householding rules.

For purposes of the Paperwork Reduction Act, we have estimated that the amendments that we are adopting that require a fund to provide a reference in its prospectus to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the availability of the required disclosure in fund shareholder reports will not
result in an increase in internal costs. Similarly, we expect that the external
costs of providing the new prospectus disclosure will be minimal, because this
disclosure will not add significant length to the prospectus.

V. Consideration of Burden on Competition; Promotion of Efficiency, Competition, and
Capital Formation

   Section 23(a)(2) of the Exchange Act requires us, when adopting rules under the
Exchange Act, to consider the impact that any new rule would have on competition.
Section 23(a)(2) also prohibits us from adopting any rule that would impose a burden
on competition not necessary or appropriate in furtherance of the purposes of the
Exchange Act. [FN59] In addition, section 2(c) of the Investment Company Act, [FN60]
section 2(b) of the Securities Act, [FN61] and section 3(f) of the Exchange Act
[FN62] require the Commission, when engaging in rulemaking that requires it to
consider or determine whether an action is necessary or appropriate in the public
interest, to consider, in addition to the *39806 protection of investors, whether
the action will promote efficiency, competition, and capital formation.  In the
Proposing Release, we requested comment on whether the proposed amendments would
promote efficiency, competition, and capital formation.  We received no comments on
this issue.

   FN59 15 U.S.C. 78w(a)(2).

   FN60 15 U.S.C. 80a-2(c).

   FN61 15 U.S.C. 77(b).

   FN62 15 U.S.C. 78c(f).

   The amendments are designed to encourage better, more visible, and more timely
disclosure to fund shareholders about the material factors, and the conclusions with
respect to those factors, that formed the basis for the decision of a fund's board
of directors to approve or renew an investment advisory contract, or to recommend
approval of an investment advisory contract.  These amendments may thereby improve
efficiency.  By increasing transparency with respect to advisory fees, the
amendments may assist investors in making informed choices among funds and encourage
fund boards to engage in vigorous and independent oversight of advisory contracts,
which may promote more efficient allocation of investments by investors and more
efficient allocation of assets among competing funds.  These amendments may also
improve competition, as enhanced transparency regarding the board's basis for
approving an investment advisory contract may encourage investors to consider more
carefully the costs and value of the services rendered by the fund's investment
adviser.  Finally, the amendments have no effect on capital formation.

   As noted above, we believe that the amendments will benefit investors.  We note
that funds currently are required to provide similar disclosure in their SAIs and in
relevant proxy statements.

VI. Final Regulatory Flexibility Analysis

   This Final Regulatory Flexibility Analysis ("Analysis") has been prepared in
accordance with 5 U.S.C. 604, and relates to the Commission's rule and form
amendments under the Securities Act, the Exchange Act, and the Investment Company
Act to encourage better, more prominent, and more timely disclosure to shareholders
about the basis on which the board of directors of a fund approves, and recommends
shareholder approval of, investment advisory contracts.  An Initial Regulatory
Flexibility Analysis ("IRFA"), which was prepared in accordance with 5 U.S.C. 603,
was published in the release proposing these amendments.

A. Reasons for, and Objectives of, Amendments

   Sections I and II of this Release describe the reasons for and objectives of the
amendments.  As discussed in detail above, the amendments adopted by the Commission

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01                                                      Page 18
69 FR 39798-01, 2004 WL 1452698 (F.R.)
(Cite as: 69 FR 39798)

are designed to increase the transparency of the information that a fund provides regarding the board's basis for approving an investment advisory contract, or recommending that shareholders approve an investment advisory contract.

## B. Significant Issues Raised by Public Comment

In the IRFA for the proposed amendments, we requested comment on any aspect of the IRFA, including the number of small entities that would be affected by the proposed amendments, the likely impact of the proposal on small entities, the nature of any impact, and we asked commenters to provide any empirical data supporting the extent of the impact. We received no comment letters on the IRFA.

## C. Small Entities Subject to the Rule

For purposes of the Regulatory Flexibility Act, an investment company is a small entity if it, together with other investment companies in the same group of related investment companies, has net assets of $50 million or less as of the end of its most recent fiscal year. [FN63] Approximately 145 investment companies registered on Form N-1A meet this definition, and approximately 70 investment companies registered on Form N-2 meet this definition. [FN64] We estimate that few, if any, registered separate accounts registered on Form N-3 are small entities. [FN65]

FN63 17 CFR 270.0-10.

FN64 This estimate is based on an analysis by the Division of Investment Management staff of information from databases compiled by third-party information providers, including Morningstar, Inc. and Lipper.

FN65 This estimate is based on figures compiled by Division of Investment Management staff regarding separate accounts registered on Form N-3. In determining whether an insurance company separate account is a small entity for purposes of the Regulatory Flexibility Act, the assets of insurance company separate accounts are aggregated with the assets of their sponsoring insurance companies. Rule 0-10(b) under the Investment Company Act [17 CFR 270.0-10(b)].

## D. Reporting, Recordkeeping, and Other Compliance Requirements

These amendments will:

. Require fund shareholder reports to discuss, in reasonable detail, the material factors and the conclusions with respect to these factors that formed the basis for the board's approval of an advisory contract during the most recent fiscal half-year;

. Require a fund to provide a statement in its prospectus about the availability of the required disclosure in fund shareholder reports; and

. Enhance the existing requirements for a fund to provide disclosure in a proxy statement seeking approval of an investment advisory contract about the board's basis for its recommendation that shareholders approve the contract.

The Commission estimates some one-time formatting and ongoing costs and burdens that would be imposed on all funds, including funds that are small entities. These include the costs related to providing this disclosure in shareholder reports. These costs also could include expenses for legal fees. These amendments also require that funds provide a statement in the prospectus about the availability of this disclosure in shareholder reports. We note, with respect to the amendments to the disclosure requirements in fund proxy statements, that these amendments would clarify and reinforce funds' obligation under the existing disclosure requirements to discuss the board's basis for approving, or recommending shareholder approval of, any existing investment advisory contract. Finally, these amendments remove existing requirements that funds provide similar disclosure in the SAI. We expect that the cost of compliance with the amendments to the existing disclosure requirements in proxy statements, and the amendments requiring a reference in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01                                                        Page 19
69 FR 39798-01, 2004 WL 1452698 (F.R.)
**(Cite as: 69 FR 39798)**

fund prospectus to the new disclosure in shareholder reports, will be minimal.  We believe the benefits that will result to shareholders through better information with respect to their fund board's evaluation of such advisory contracts justify these potential costs.

E. Agency Action To Minimize Effect on Small Entities

 The Regulatory Flexibility Act directs us to consider significant alternatives that would accomplish our stated objective, while minimizing any significant adverse impact on small registrants.  In connection with the amendments, the Commission considered the following alternatives: (i) The establishment of differing compliance or reporting requirements or timetables that take into account the resources available to small entities; (ii) the clarification, consolidation, or simplification of compliance and reporting requirements under the proposed amendments for small entities; (iii) the use of performance rather than design standards; and (iv) an *39807  exemption from coverage of the proposed amendments, or any part thereof, for small entities.

 The Commission believes at the present time that special compliance or reporting requirements for small entities, or an exemption from coverage for small entities, would not be appropriate or consistent with investor protection.  The disclosure amendments will provide shareholders with greater transparency regarding the fund board's basis for approving an investment advisory contract, or recommending that shareholders approve an investment advisory contract.  Different disclosure requirements for funds that are small entities may create the risk that the shareholders in these funds would be less able to consider the costs and value of the services rendered by the fund's investment adviser, and less able to make informed choices among funds.  We believe it is important for the disclosure that is required by the amendments to be provided to shareholders by all funds, not just funds that are not considered small entities.

 We have endeavored through the amendments to minimize the regulatory burden on all funds, including small entities, while meeting our regulatory objectives.  Small entities should benefit from the Commission's reasoned approach to the amendments to the same degree as other investment companies. Further consolidation or simplification of the proposals for funds that are small entities would be inconsistent with the Commission's concern for investor protection.  Finally, we do not consider using performance rather than design standards to be consistent with our statutory mandate of investor protection in the present context.  Based on our past experience, we believe the disclosure will be more useful to investors if there are enumerated informational requirements.

VII. Statutory Authority

 The Commission is adopting amendments to Schedule 14A pursuant to authority set forth in sections 14 and 23(a)(1) of the Exchange Act [FN66] and sections 20(a) and 38 of the Investment Company Act. [FN67] The Commission is adopting amendments to Forms N-1A, N-2, and N-3 pursuant to authority set forth in sections 5, 6, 7, 10, and 19(a) of the Securities Act [FN68] and sections 8, 15, 24(a), 30, and 38 of the Investment Company Act. [FN69]

  FN66 15 U.S.C. 78n and 78w(a)(1).

  FN67 15 U.S.C. 80a-20, 80a-37.

  FN68 15 U.S.C. 77e, 77f, 77g, 77j, and 77s(a).

  FN69 15 U.S.C. 80a-8, 80a-15, 80a-24(a), 80a-29, and 80a-37.

List of Subjects

17 CFR Parts 239 and 240

 Reporting and recordkeeping requirements, Securities.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01                                                              Page 20
69 FR 39798-01, 2004 WL 1452698 (F.R.)
(Cite as: 69 FR 39798)

17 CFR Part 274

 Investment companies, Reporting and recordkeeping requirements, Securities.

Text of Rule and Form Amendments

 For the reasons set out in the preamble, the Commission amends Title 17, Chapter II of the Code of Federal Regulations as follows:

PART 239--FORMS PRESCRIBED UNDER THE SECURITIES ACT OF 1933

 1.  The general authority citation for Part 239 is revised to read as follows:

 Authority: 15 U.S.C. 77f, 77g, 77h, 77j, 77s, 77z-2, 77sss, 78c, 78l, 78m, 78n, 78o(d), 78u-5, 78w(a), 78ll(d), 79e, 79f, 79g, 79j, 79l, 79m, 79n, 79q, 79t, 80a-8, 80a-24, 80a-26, 80a-29, 80a-30, and 80a-37, unless otherwise noted.

* * * * *

PART 240--GENERAL RULES AND REGULATIONS, SECURITIES EXCHANGE ACT OF 1934

 2.  The authority citation for Part 240 continues to read in part as follows:

 Authority: 15 U.S.C. 77c, 77d, 77g, 77j, 77s, 77z-2, 77z-3, 77eee, 77ggg, 77nnn, 77sss, 77ttt, 78c, 78d, 78e, 78f, 78g, 78i, 78j, 78j-1, 78k, 78k-1, 78l, 78m, 78n, 78o, 78p, 78q, 78s, 78u-5, 78w, 78x, 78ll, 78mm, 79q, 79t, 80a-20, 80a-23, 80a-29, 80a-37, 80b-3, 80b-4, 80b-11, and 7201 et seq.; and 18 U.S.C. 1350, unless otherwise noted.

* * * * *

17 CFR § 240.14a-101

 3.  Section 240.14a-101 is amended by revising paragraph (c)(11) of Item 22 to read as follows:

17 CFR § 240.14a-101

§ 240.14a-101 Schedule 14A.  Information required in proxy statement.

* * * * *

Item 22.  Information required in investment company proxy statement.

* * * * *
 (c) * * *

 (11) Discuss in reasonable detail the material factors and the conclusions with respect thereto that form the basis for the recommendation of the board of directors that the shareholders approve an investment advisory contract. Include the following in the discussion:

 (i) Factors relating to both the board's selection of the investment adviser and approval of the advisory fee and any other amounts to be paid by the Fund under the contract.  This would include, but not be limited to, a discussion of the nature, extent, and quality of the services to be provided by the investment adviser; the investment performance of the Fund and the investment adviser; the costs of the services to be provided and profits to be realized by the investment adviser and its affiliates from the relationship with the Fund; the extent to which economies of scale would be realized as the Fund grows; and whether fee levels reflect these economies of scale for the benefit of Fund investors.  Also indicate in the discussion whether the board relied upon comparisons of the services to be rendered

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01
69 FR 39798-01, 2004 WL 1452698 (F.R.)
(Cite as: 69 FR 39798)

and the amounts to be paid under the contract with those under other investment advisory contracts, such as contracts of the same and other investment advisers with other registered investment companies or other types of clients (e.g., pension funds and other institutional investors).  If the board relied upon such comparisons, describe the comparisons that were relied on and how they assisted the board in determining to recommend that the shareholders approve the advisory contract; and

(ii) If applicable, any benefits derived or to be derived by the investment adviser from the relationship with the Fund such as soft dollar arrangements by which brokers provide research to the Fund or its investment adviser in return for allocating Fund brokerage.

Instructions. 1. Conclusory statements or a list of factors will not be considered sufficient disclosure. Relate the factors to the specific circumstances of the Fund and the investment advisory contract for which approval is sought and state how the board evaluated each factor.  For example, it is not sufficient to state that the board considered the amount of the investment advisory fee without stating what the board concluded about the amount of the fee and how that affected its determination to recommend approval of the contract.

2.  If any factor enumerated in paragraph (c)(11)(i) of this Item 22 is not relevant to the board's evaluation of the investment advisory contract for which approval is sought, note this and explain the reasons why that factor is not relevant.

* * * * *

PART 274--FORMS PRESCRIBED UNDER THE INVESTMENT COMPANY ACT OF 1940

4.  The authority citation for Part 274 continues to read in part as follows:

Authority: 15 U.S.C. 77f, 77g, 77h, 77j, 77s, 78c(b),  78l, 78m, 78n, 78o(d), 80a-8, 80a-24, 80a-26, and 80a-29, unless otherwise noted.

* * * * *

### 17 CFR §  239.15A

### 17 CFR §  274.11A

*39808  5.  Form N-1A (referenced in § §  239.15A and 274.11A) is amended by:

a.  Adding Item 5(a)(1)(iii);

b.  Removing Item 12(b)(10), including the Instruction; and

c.  Adding Item 21(d)(6).

The additions read as follows:

Note: The text of Form N-1A does not and this amendment will not appear in the Code of Federal Regulations.

FORM N-1A

* * * * *

PART A: INFORMATION REQUIRED IN A PROSPECTUS

* * * * *

Item 5. Management, Organization, and Capital Structure

©  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-11458-GAO    Document 31-6    Filed 05/18/2005    Page 22 of 26

69 FR 39798-01                                                      Page 22
69 FR 39798-01, 2004 WL 1452698 (F.R.)
(Cite as: 69 FR 39798)

(a) * * *

(1) * * *

(iii) Include a statement, adjacent to the disclosure required by paragraph
(a)(1)(ii) of this Item, that a discussion regarding the basis for the board of
directors approving any investment advisory contract of the Fund is available in the
Fund's annual or semi-annual report to shareholders, as applicable, and providing
the period covered by the relevant annual or semi-annual report.

* * * * *

PART B: INFORMATION REQUIRED IN A STATEMENT OF ADDITIONAL INFORMATION

* * * * *

Item 21.  Financial Statements

* * * * *
 (d) * * *

(6) Statement Regarding Basis for Approval of Investment Advisory Contract. If the
board of directors approved any investment advisory contract during the Fund's most
recent fiscal half-year, discuss in reasonable detail the material factors and the
conclusions with respect thereto that formed the basis for the board's approval.
Include the following in the discussion:

(i) Factors relating to both the board's selection of the investment adviser and
approval of the advisory fee and any other amounts to be paid by the Fund under the
contract.  This would include, but not be limited to, a discussion of the nature,
extent, and quality of the services to be provided by the investment adviser; the
investment performance of the Fund and the investment adviser; the costs of the
services to be provided and profits to be realized by the investment adviser and its
affiliates from the relationship with the Fund; the extent to which economies of
scale would be realized as the Fund grows; and whether fee levels reflect these
economies of scale for the benefit of Fund investors.  Also indicate in the
discussion whether the board relied upon comparisons of the services to be rendered
and the amounts to be paid under the contract with those under other investment
advisory contracts, such as contracts of the same and other investment advisers with
other registered investment companies or other types of clients (e.g., pension funds
and other institutional investors).  If the board relied upon such comparisons,
describe the comparisons that were relied on and how they assisted the board in
concluding that the contract should be approved; and

(ii) If applicable, any benefits derived or to be derived by the investment adviser
from the relationship with the Fund such as soft dollar arrangements by which
brokers provide research to the Fund or its investment adviser in return for
allocating Fund brokerage.

Instructions.

1.  Board approvals covered by this Item include both approvals of new investment
advisory contracts and approvals of contract renewals.  Investment advisory
contracts covered by this Item include subadvisory contracts.

2.  Conclusory statements or a list of factors will not be considered sufficient
disclosure.  Relate the factors to the specific circumstances of the Fund and the
investment advisory contract and state how the board evaluated each factor.  For
example, it is not sufficient to state that the board considered the amount of the
investment advisory fee without stating what the board concluded about the amount of
the fee and how that affected its decision to approve the contract.

3.  If any factor enumerated in paragraph (d)(6)(i) of this Item is not relevant to
the board's evaluation of an investment advisory contract, note this and explain the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01                                                                    Page 23
69 FR 39798-01, 2004 WL 1452698 (F.R.)
**(Cite as: 69 FR 39798)**

reasons why that factor is not relevant.

* * * * *

<u>17 CFR § 239.14</u>

<u>17 CFR § 274.11a-1</u>

6.  Form N-2 (referenced in § § 239.14 and 274.11a-1) is amended by:

a.  Removing "and" from the end of Item 9.1.b(2);

b.  Removing the period from the end of Item 9.1.b(3) and in its place adding ";
and";

c.  Adding Item 9.1.b(4);

d.  Removing Item 18.13;

e.  Redesignating Items 18.14 through 18.16 as Items 18.13 through 18.15;

f.  Adding Instructions 6.e and 6.f to Item 23; and

g.  In Instruction 8.a to Item 23, revising the reference "Item 18.16" to read
"Item 18.15".

The additions read as follows:

Note: The text of Form N-2 does not and this amendment will not appear in the Code
of Federal Regulations.

FORM N-2

* * * * *

PART A: INFORMATION REQUIRED IN A PROSPECTUS

* * * * *

Item 9. Management

1.  * * *

b.  * * *

(4) a statement, adjacent to the disclosure required by paragraph 1.b.(3) of this
Item, that a discussion regarding the basis for the board of directors approving any
investment advisory contract of the Registrant is available in the Registrant's
annual or semi-annual report to shareholders, as applicable, and providing the
period covered by the relevant annual or semi-annual report.

* * * * *

PART B: INFORMATION REQUIRED IN A STATEMENT OF ADDITIONAL INFORMATION

* * * * *

Item 23.  Financial Statements

* * * * *
Instructions.

* * * * *

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01                                                           Page 24
69 FR 39798-01, 2004 WL 1452698 (F.R.)
(Cite as: 69 FR 39798)

6.  * * *

e.  If the Registrant's board of directors approved any investment advisory
contract during the Registrant's most recent fiscal half-year, discuss in reasonable
detail the material factors and the conclusions with respect thereto that formed the
basis for the board's approval.  Include the following in the discussion:

(i) Factors relating to both the board's selection of the investment adviser and
approval of the advisory fee and any other amounts to be paid by the Registrant
under the contract.  This would include, but not be limited to, a discussion of the
nature, extent, and quality of the services to be provided by the investment
adviser; the investment performance of the Registrant and the investment adviser;
the costs of the services to be provided and profits to be realized by the
investment adviser and its affiliates from the relationship with the Registrant; the
extent to which economies of scale would be realized as the Registrant grows; and
whether fee levels reflect these economies of scale for the benefit of the
Registrant's *39809 investors.  Also indicate in the discussion whether the board
relied upon comparisons of the services to be rendered and the amounts to be paid
under the contract with those under other investment advisory contracts, such as
contracts of the same and other investment advisers with other registered investment
companies or other types of clients (e.g., pension funds and other institutional
investors).  If the board relied upon such comparisons, describe the comparisons
that were relied on and how they assisted the board in concluding that the contract
should be approved; and

(ii) If applicable, any benefits derived or to be derived by the investment adviser
from the relationship with the Registrant such as soft dollar arrangements by which
brokers provide research to the Registrant or its investment adviser in return for
allocating the Registrant's brokerage.

f.  Board approvals covered by Instruction 6.e. to this Item include both approvals
of new investment advisory contracts and approvals of contract renewals.  Investment
advisory contracts covered by Instruction 6.e. include subadvisory contracts.
Conclusory statements or a list of factors will not be considered sufficient
disclosure under Instruction 6.e. Relate the factors to the specific circumstances
of the Registrant and the investment advisory contract and state how the board
evaluated each factor.  For example, it is not sufficient to state that the board
considered the amount of the investment advisory fee without stating what the board
concluded about the amount of the fee and how that affected its decision to approve
the contract.  If any factor enumerated in Instruction 6.e.(i) to this Item is not
relevant to the board's evaluation of an investment advisory contract, note this and
explain the reasons why that factor is not relevant.

* * * * *

17 CFR §  239.17a

17 CFR §  274.11b

7.  Form N-3 (referenced in § §  239.17a and 274.11b) is amended by:

a.  Removing "and" from the end of Item 6(b)(i);

b.  At the end of Item 6(b)(ii), adding "and";

c.  Adding Item 6(b)(iii);

d.  Removing Item 20(l);

e.  Redesignating Items 20(m) through 20(o) as Items 20(l) through 20(n);

f.  Removing "and" from the end of Instruction 6(iii) to Item 27(a);

©  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01                                                    Page 25
69 FR 39798-01, 2004 WL 1452698 (F.R.)
(Cite as: 69 FR 39798)

g.  Removing the period from the end of Instruction 6(iv) to Item 27(a) and in its place adding a semi-colon;

h.  Adding Instructions 6(v) and 6(vi) to Item 27(a); and

i.  In Instruction 8(i) to Item 27(a), revising the reference "Item 20(o)" to read "Item 20(n)".

The additions read as follows:

Note: The text of Form N-3 does not and this amendment will not appear in the Code of Federal Regulations.

FORM N-3

* * * * *

PART A: INFORMATION REQUIRED IN A PROSPECTUS

* * * * *

Item 6. Management

* * * * *
 (b) * * *

(iii) a statement, adjacent to the disclosure required by paragraph (b)(ii) of this Item, that a discussion regarding the basis for the board of directors approving any investment advisory contract of the Registrant is available in the Registrant's annual or semi-annual report to shareholders, as applicable, and providing the period covered by the relevant annual or semi-annual report;

* * * * *

PART B: INFORMATION REQUIRED IN A STATEMENT OF ADDITIONAL INFORMATION

* * * * *

Item 27.  Financial Statements

 (a) * * *

 Instructions:

* * * * *
 6.  * * *

(v) If the Registrant's board of managers approved any investment advisory contract during the Registrant's most recent fiscal half-year, discuss in reasonable detail the material factors and the conclusions with respect thereto that formed the basis for the board's approval.  Include the following in the discussion:

(A) Factors relating to both the board's selection of the investment adviser and approval of the advisory fee and any other amounts to be paid by the Registrant under the contract.  This would include, but not be limited to, a discussion of the nature, extent, and quality of the services to be provided by the investment adviser; the investment performance of the Registrant and the investment adviser; the costs of the services to be provided and profits to be realized by the investment adviser and its affiliates from the relationship with the Registrant; the extent to which economies of scale would be realized as the Registrant grows; and whether fee levels reflect these economies of scale for the benefit of the Registrant's investors.  Also indicate in the discussion whether the board relied upon comparisons of the services to be rendered and the amounts to be paid under the contract with those under other investment advisory contracts, such as contracts of

©  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

69 FR 39798-01                                                      Page 26
69 FR 39798-01, 2004 WL 1452698 (F.R.)
**(Cite as: 69 FR 39798)**

the same and other investment advisers with other registered investment companies or other types of clients (e.g., pension funds and other institutional investors).  If the board relied upon such comparisons, describe the comparisons that were relied on and how they assisted the board in concluding that the contract should be approved; and

(B) If applicable, any benefits derived or to be derived by the investment adviser from the relationship with the Registrant such as soft dollar arrangements by which brokers provide research to the Registrant or its investment adviser in return for allocating the Registrant's brokerage; and

(vi) Board approvals covered by Instruction 6(v) to this Item include both approvals of new investment advisory contracts and approvals of contract renewals. Investment advisory contracts covered by Instruction 6(v) include subadvisory contracts.  Conclusory statements or a list of factors will not be considered sufficient disclosure under Instruction 6(v).  Relate the factors to the specific circumstances of the Registrant and the investment advisory contract and state how the board evaluated each factor.  For example, it is not sufficient to state that the board considered the amount of the investment advisory fee without stating what the board concluded about the amount of the fee and how that affected its decision to approve the contract.  If any factor enumerated in Instruction 6(v)(A) to this Item is not relevant to the board's evaluation of an investment advisory contract, note this and explain the reasons why that factor is not relevant.

* * * * *
By the Commission.

Dated: June 23, 2004.

Margaret H. McFarland,

Deputy Secretary.

[FR Doc. 04-14755 Filed 6-29-04; 8:45 am]

BILLING CODE 8010-01-P

69 FR 39798-01, 2004 WL 1452698 (F.R.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.