UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARCUS DUMOND, HENDRY BERDAT, STUART V. and ROSEMARY STURGESS, KATHLEEN BLAIR, WILLIAM and MARGIE BOOTH, KAREN PEACH, and RICHARD and EVELYN KELLER,<br><br>Plaintiffs,<br><br>v.<br><br>MASSACHUSETTS FINANCIAL SERVICES CO. and MFS FUND DISTRIBUTORS, INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 04-11458 (GAO)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' [PROPOSED] SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

A fair reading of the Complaint and Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opposition") makes abundantly clear that Plaintiffs' allegations against Defendants meet the applicable notice pleading standard. In a transparent attempt to avoid the recent Section 36(b) precedent mounting in Plaintiffs' favor, Defendants' Reply Memorandum in Sup-port of Defendants' Motion to Dismiss Plaintiffs' Complaint ("Reply") endeavors to distinguish analogous cases that support Plaintiffs' position by overlooking or distorting Plaintiffs' allegations. Plaintiffs respectfully submit this sur-reply to correct Defendants' inaccurate depiction of their Complaint.

As a preliminary matter, the premise underlying Defendants' Reply is faulty because it wrongly assumes that Plaintiffs must plead all of the *Gartenberg*[1] factors. Reply at 5-6. However, as this Court held in *Wicks v. Putnam Investment Mgmt, LLC,* 2005 WL 705360 (D. Mass. Mar. 28, 2005):

---

[1] *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923 (2d Cir. 1982).

> The First Circuit has not expressly adopted the *Gartenberg* factors or established a specific pleading standard for §36(b) claims. I agree with the plaintiffs that *Gartenberg* -- should it be the appropriate standard -- does not establish a heightened pleading requirement for §36(b) excessive fee claims. A plaintiff's failure to plead certain *Gartenberg* factors is not itself grounds for dismissal. The Court's focus in reviewing the defendants' motion to dismiss is on whether the allegations in the complaint set forth "a short and plain statement of the claim showing that the pleader[s][are] entitled to relief."

*Id.* at *4. *See also ING Principal Protection Funds Derivative Litig.*, 369 F.Supp.2d 163, 168 (D. Mass. 2005) (plaintiff's failure to plead *Gartnerberg* factors is not itself grounds for dismissal).

"Great specificity is ordinarily not required to survive a Rule 12(b)(6) motion…. [I]t is enough for a plaintiff to sketch an actionable claim by means of 'a generalized statement of facts from which the defendant will be able to frame a responsive pleading.' " *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank*, 958 F.2d 15, 17 (1st Cir.1992).

Defendants also criticize Plaintiffs because some of their allegations are made "on information and belief." Reply at 11-13, 17, 19-20, 21, 23, 24. However, even under Rule 9(b), "a plaintiff may make allegations of fraud on the basis of personal knowledge or on 'information and belief.'" *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 226 (1st Cir. 2004). Although in the securities fraud context, "such 'information and belief' allegations remain subject to the particularity requirements of Rule 9(b)," and "to the additional requirement that 'the complaint set forth the facts on which the belief is founded,'" *id.*, there is no such requirement where, as here, the Complaint is governed by the notice pleading standards set forth in Rule 8(a). *See Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 73 (1st Cir. 2000) (plaintiff can make allegations either on personal knowledge or on information and belief); *U.S. ex rel. Kneepkins v. Gambro Healthcare, Inc.*, 115 F.Supp.2d 35, 40 (D. Mass. 2000) (plaintiff must allege "if only on information and belief, the facts it asserts would provide the basis for [defendant's] liability."); *Canty v.Old Rochester Regional School Dist.*, 54 F.Supp.2d 66, 73 (D. Mass. 1999) (allegations of knowledge made on

"information and belief" are "sufficient under the liberal notice pleading standards"); *Steinbrecher v. Oswego Police Officer Dickey*, 138 F.Supp.2d 1103, 1109-10 (N.D.Ill. 2001) ("Pleading 'upon information and belief' is sufficient to satisfy federal notice pleading under Fed.R.Civ.P. 8(a)").

In addition, Defendants cherry pick specific language from the complaints at issue in the *Wicks, Richard Krantz*[2], *Strigliabotti*[3], *Jones*[4] and *Miller*[5] cases—all similar Section 36(b) actions that survived motions to dismiss—to demonstrate the unremarkable proposition that the Complaint in this action is not identical to the complaints in each of those cases. Reply at 18-25. Because the case at hand involves different parties and different transactions, this Complaint and the complaints in *Wicks, Krantz, Strigliabotti, Jones,* and *Miller* could not (and should not) be identical. However, each of the complaints in *Wicks, Krantz, Strigliabotti, Jones*, and *Miller* consist of allegations that are quite similar in type and scope to those made in this Complaint in the context of Defendants' motion to dismiss. Opposition at 8-11. The Court here should have no hesitation in following this group of well-reasoned decisions in denying Defendants' motion to dismiss.

Defendants go to great lengths in an attempt to distance this case from this Court's decision in *Wicks,* where this Court allowed similar Section 36(b) allegations to stand. 2005 WL 705360, at *4. In trying to distinguish *Wicks*, Defendants argue that the *Wicks* plaintiffs alleged that the Putnam Funds had under-performed, that Putnam performed "identical" services for its institutional clients, and that the *Wicks* complaint's allegations of fall-out benefits were "better." Reply at 18-20.

To begin with, Defendants, *sub silento*, acknowledge that Plaintiffs' allegations regarding

---

[2] *Richard Krantz v. Fidelity Mgmt. & Research Co.,* 98 F.Supp.2d 150 (D. Mass. 2000).
[3] *Strigliabotti v. Franklin Resources, Inc.,* 2005 WL 645529 (N.D. Cal. March 7, 2005).
[4] *Jones v. Harris Associates, L.P.*, 2005 WL 831301 (N.D. Ill. Apr. 7, 2005).
[5] *Miller v. Mitchell Hutchins Asset Mgmt., Inc.*, No. 01-CV-192-DRH (S.D. Ill. Mar. 6, 2003).

3

MFS's profitability from advising the Funds; the economies of scale realized by MFS, but not passed onto the Funds; and the lack of independence and conscientiousness of the Funds' trustees (Opposi-tion at 17-18, 20-21), are substantially similar to the allegations deemed sufficient in *Wicks*. More-over, even if Plaintiffs were required to plead all of the *Gartenberg* factors, which as discussed above (at pp. 1-2) is not the case, Defendants' attempt to distinguish this case from *Wicks* on the grounds that the *Wicks* plaintiffs have pled the other *Gartenberg* factors with greater specificity is unavailing.

As Plaintiffs here have already explained, "performance" is not the only indicator of the "nature" and "quality" of services provided by Defendants. *See* Opposition at 16. There are numerous allegations in the Complaint that bear directly on the nature and quality of services that Defendants provide to the Funds: namely that (1) the nature of Defendants' services has remained <u>unchanged</u> despite dramatic growth in the assets of the Funds and advisory revenues (Complaint, ¶¶ 14-16, 41) and (2) Defendants charge their institutional clients substantially less for the same services than they charge the Funds (Complaint, ¶ 42). Defendants' willingness to put their interests ahead of the interests of the Funds also reflects upon the quality of the services rendered. (Complaint, ¶¶42-45). For example, Defendants use 12b-1 fees paid by the Funds and their shareholders to attract other clients who benefit from considerations, such as fee rebates, with no corresponding economic benefit to the Funds and their shareholders (Complaint, ¶44). Defendants also participate in directed brokerage arrangements through which the Funds and their shareholders pay above-market rates to brokers who promote Defendants' mutual funds, benefiting Defendants' bottom line (Complaint, ¶45).

Defendants' attempts to distinguish the *Wicks* complaint with respect to comparative fees allegations are similarly weak, if not wholly disingenuous. Reply at 19. Like the *Wicks* plaintiffs,

4

Plaintiffs have specifically alleged that MFS provides "identical" services to its institutional accounts, such as the Public Employee Retirement System of Idaho ("PERSI") (Complaint, ¶ 10). By way of specific example, Plaintiffs point to Defendants' contract with PERSI, pursuant to which Defendants charge less than $600,000 for managing an equity portfolio of $173 million. Plaintiffs then contrast that fee with examples of what Defendants charge their mutual fund customers, showing that Defendants charge the MIT Fund 35 times more, the Mid-Cap Fund 20 times more, the New Discovery Fund 17 times more, and the Global Total Return Fund (a relatively small fund with only $500 million in assets) 5 times more (Complaint, ¶ 58). Significantly, the Complaint alleges that were the Mid-Cap and the New Discovery Funds subject to the same fee schedule as PERSI, those funds' "advisory fees would be shrunk by more than $10 million annually, costing fund shareholders less than half as much" (Complaint, ¶ 58). Thus, the Complaint's allegations plainly contradict Defendants' assertions (Reply at 19); just like the *Wicks* plaintiffs, Plaintiffs have specifically alleged that the services provided to institutional clients are 'identical," and have cited specific examples to demonstrate the inequities in the fees charged to the funds and the fees charged to Defendants' clients who bargain at arm's-length. *See also ING Principal Protection Fund*, 396 F. Supp. 2d at 169 (denying a motion to dismiss where the complaint alleged that "defendants charge plaintiffs much higher fees than other clients for equivalent advisory services").

Next, Defendants complain that Plaintiffs have made insufficient allegations about fall-out benefits. Reply at 19-20. Defendants' argument is a red herring. Plaintiffs have made numerous allegations about the types of fall-out benefits that inure to Defendants at the expense of the Funds (Complaint, ¶¶ 60-65), including allegations regarding directed brokerage arrangements under which Defendants direct the Funds' brokerage business to brokerage firms and pay them above-market rates to promote Defendants' mutual funds over other funds (Complaint, ¶ 45). In light of its recent

5

settlement with the Securities and Exchange Commission for engaging in directed brokerage and soft dollar arrangements, Defendants cannot reasonably deny that they engage in such practices. *See In re Massachusetts Financial Services Co.*, ICA Release No. 26409 (Mar. 31, 2004) (Ex. 1 hereto).

Of course, the *Wicks* opinion does not purport to make the complaint at issue there the gold standard for Section 36(b) cases. However, Plaintiffs maintain that it serves as a useful guide as to the type of allegations in a Section 36(b) action that should be sufficient to survive a Rule 12(b)(6) motion. Where, as here, the Complaint shares marked similarities with the *Wicks* complaint, dismissal is unwarranted.

Defendants' efforts to differentiate Plaintiffs' Complaint from another case from this District, *Richard Krantz,* are similarly based on a distortion of Plaintiffs' allegations. Reply at 20-21. Plaintiffs have made numerous allegations regarding the quality of Defendants' services, and performance is not the sole indicator of quality. Thus, Defendants' statement that Plaintiffs have alleged only that the quality of the services is "straightforward" is inaccurate because it is the "nature" (not "quality") of Defendants' services that Plaintiffs maintain are straightforward (Complaint, ¶ 41). Further, Defendants' attempt to distinguish *Richard Krantz* from the Plaintiffs' allegations regarding economies-of-scale by focusing on computer advances (Complaint, ¶ 15) amounts to a factual dispute—clearly improper for a motion to dismiss—and ignores the numerous other economies-of-scale allegations that Plaintiffs make (Complaint, ¶¶ 14, 16, 25, 49-55, 59).

Importantly, it was allegations that Defendants' revenues had increased as a percentage of the assets under management that the *Richard Krantz* court found particularly significant. *See* Opposition at 9 (citing *Richard Krantz*, 98 F.Supp.2d at 159). Like the plaintiffs in the *Richard Krantz* case, Plaintiffs make similar allegations about the growth in fees compared to the growth in assets under management. Complaint, ¶ 25 ("Despite the dramatic growth in assets managed by

6

Defendants, both the advisory and distribution fees charged by Defendants have grown, both in terms of whole dollars and as a percentage of assets"); Complaint, ¶ 54 ("In 2003, assets were $6.5 billion (a 3 times increase from 1969), with advisory fees at $78.4 million, a 17 times increase.").

Defendants' attempts to distinguish the *Strigliabotti*, *Jones* and *Miller* cases (Reply at 21-25) also depend on a misreading of the allegations in the Complaint. In contrast to Defendants' suggestions and implications (Reply at 21), Plaintiffs have alleged:

- that Defendants' fees have increased faster than assets under management (Complaint, ¶¶ 24, 54);

- that MFS has contributed substantially to its parent company's bottom line and that growth in assets has generated substantial economies of scale to the great benefit of Defendants and their parent company (Complaint, ¶¶ 14, 48); and

- (by way of specific comparisons) that there is a great disparity between what Defendants charge their mutual funds and what they charge their institutional clients for identical services (Complaint, ¶¶ 9, 10, 58).

With respect to the *Miller* case, it should also be noted that the *Miller* plaintiffs had had the benefit of some discovery prior to filing the amended complaint at issue[6]—something that Defendants have flatly denied Plaintiffs in this case while their motion to dismiss is pending. Report of Rule 26(f) Planning Meeting (July 7, 2005). *See Richard Krantz*, 98 F.Supp.2d at 159 (denying the defendant's motion to dismiss § 36(b) claim in part because defendants were not publicly owned corporations and plaintiffs had not had the benefit of discovery).

In short, to accept Defendants' arguments with respect to the *Wicks, Krantz, Strigliabotti, Jones,* and *Miller* decisions requires that one either completely ignore the Complaint's allegations or read them in an improperly narrow fashion. It would be absurd to expect (or require) that Plaintiffs make *precisely identical* allegations as those made in each of these cases. However, while these complaints in other cases allowed to proceed may differ as to some of the specific facts alleged, in

7

substance, they mirror the kind of allegations in the Complaint. Using these similar cases as a benchmark, Defendants' motion to dismiss should be denied.

| | |
|---|---|
| Dated: August 8, 2005 | Respectfully submitted: |

SHAPIRO HABER & URMY, LLP

/s/    Michelle H. Blauner
Michelle H. Blauner (BBO #549049)
Edward F. Haber (BBO #215620)
53 State Street
Boston, MA  02109
(617) 439-3939

Lynn L. Sarko
Michael D. Woerner
Tana Lin
Gretchen F. Cappio
KELLER ROHRBACK, LLP
1201 Third Avenue, #3200
Seattle, WA  98101
(206) 623-1900

Guy M. Burns
Jonathan S. Coleman
Becky Ferrell-Anton
JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, L.L.P.
100 North Tampa Street, Ste. 1800
Tampa, FL  33602
(813) 225-2500

Michael J. Brickman
James C. Bradley
Nina H. Fields
RICHARDSON PATRICK
WESTBROOK & BRICKMAN, LLC
174 East Bay Street
Charleston, SC  29401
(843) 727-6500

**Counsel for Plaintiffs**

---

6 Indeed, the Second Amended Complaint in *Miller* contained explicit cites to depositions taken in that case, as well as citations to the minutes of the Funds' board meeting. *See* Exhibit E to Plaintiffs' Opposition, Complaint at 15-17, 33-34.