UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 04-11458-GAO


MARCUS DUMOND, et al.,
Plaintiffs

v.

MASSACHUSETTS FINANCIAL SERVICES COMPANY and
MFS FUND DISTRIBUTORS, INC.,
Defendants.


MEMORANDUM AND ORDER
January 19, 2006


O'TOOLE, D.J.

**I.   Background**

The defendants Massachusetts Financial Services Company (MFS Company) and MFS Fund Distributors, Inc. (MFS Distributors) have moved to dismiss the complaint for failure to state a claim. I conclude that the motion ought to be DENIED.

This action is brought by ten individual plaintiffs on behalf of eleven mutual funds[1] within the MFS fund complex against MFS Company, the principal investment advisor of the MFS family of mutual funds, and MFS Distributors, the underwriter and distributor of the funds, for breaches of

---

[1] There are ten individual plaintiffs in the case that allege they are shareholders in eleven separate MFS Funds on whose behalf they make a § 36(b) claim.  These funds are the (1) MFS Capital Opportunities Fund, (2) MFS Emerging Growth Fund, (3) MFS Government Securities Fund, (4) MFS Government Limited Maturity Fund, (5) MFS Mid Cap Growth Fund, (6) MFS Research Fund, (7) MFS Value Fund, (8) MFS Municipal Income Fund, (9) MFS Strategic Growth Fund, (10) MFS Total Return Fund, and (11) Massachusetts Investors Growth Stock Fund.

fiduciary duty in violation of § 36(b) of the Investment Company Act (ICA) of 1940, 15 U.S.C. § 80a-35(b).

In general terms, the plaintiffs allege that the MFS Company and MFS Distributors have violated their fiduciary duties to the MFS Funds and their shareholders by charging fees that are disproportionately large, bear no reasonable relationship to the services rendered, and could not have been the product of arm's-length bargaining. According to the first three counts of the complaint,[2] the defendants have failed to pass on to the funds the benefits of economies of scale, have charged excessive distribution fees, have provided similar services to institutional clients for substantially lower fees than were charged the funds, and have paid excessive commissions to securities broker-dealers to execute trades for the funds in exchange for so-called "soft dollars" that benefitted the defendants but not the funds.

In brief, the defendants argue that the plaintiffs have not made factual allegations sufficient to state a claim under § 36(b). The defendants' contention is that the complaint is little more than boilerplate generalities and legal conclusions.

## II.  Legal Standards Governing Motion to Dismiss § 36(b) Claim

Under § 36(b), a security holder of a registered investment company (such as the MFS Funds here) may bring an action "on behalf of such company" against an investment adviser of that investment company or "any affiliated person of such investment adviser" for a breach of the statutorily created fiduciary duty "with respect to the receipt of compensation for services,

---

[2] The plaintiffs had brought, as Count IV, a claim under § 12(b) of the ICA, due to alleged violations by the defendants of that statute and SEC Rule 12b-1, 17 C.F.R. § 270.12b-1. In their opposition to this motion to dismiss, the plaintiffs stated that they have elected not to proceed further with that claim. Accordingly, Count IV will be dismissed.

or of payments of a material nature, paid by such registered investment company, or by the security holders thereof." 15 U.S.C. § 80a-35(b). In <u>Gartenberg v. Merrill Lynch Asset Mgmt., Inc.</u>, 694 F.2d 923 (2d Cir. 1982), the Second Circuit set forth a standard that has since been widely cited by other courts in addressing claims under § 36(b). According to <u>Gartenberg</u>, an investment adviser or manager may be liable for a breach of its fiduciary duty under § 36(b) if it charged a fee "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." <u>Id.</u> at 928. The <u>Gartenberg</u> court proposed six factors typically to be considered, including (1) the nature and quality of services provided to fund shareholders; (2) the profitability of the fund to the adviser-manager; (3) fall-out benefits; (4) economies of scale; (5) comparative fee structures; and (6) the independence and conscientiousness of the trustees. See <u>Krinsk v. Fund Asset Mgmt., Inc.</u>, 875 F.2d 404, 409 (2d Cir. 1989) (citing <u>Gartenberg</u>, 694 F.2d at 929-30). The First Circuit has not expressly adopted the so-called <u>Gartenberg</u> factors nor has it established a specific pleading standard for § 36(b) claims. My judgment, previously stated elsewhere, is that <u>Gartenberg</u> (if it were to be followed in this Circuit) does not establish a heightened pleading standard for § 36(b) claims and the plaintiffs' failure to plead facts that specifically address the <u>Gartenberg</u> factors is not in itself a ground for dismissal. See <u>Wicks v. Putnam Inv. Mgmt., LLC</u>, Civ. A. 04-10988, 2005 WL 705360, *4 (D. Mass. March 28, 2005). This conclusion is consistent with recent instruction from the Supreme Court and the First Circuit that heightened pleading standards should not be applied unless such a heightened

standard is mandated either by statute or rule of civil procedure. See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512-13 (2002); Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 66 (1st Cir. 2004). Because there is no heightened pleading standard for claims under § 36(b), the plaintiffs here need only comply with the usual notice pleading requirements of Fed. R. Civ. P. 8.

Under Rule 8, a complaint is sufficient as long as it contains a "short and plain statement of the claim showing that the pleader is entitled to relief" that "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." See Educadores, 367 F.3d at 66 (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Fed. R. Civ. P. 8(a). A court should dismiss a complaint on a Rule 12(b)(6) motion only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." See Educadores, 367 F.3d at 66 (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). Of course, as the defendants correctly point out, the liberality of Rule 8 should not be read to mean that there are not some minimal standards that must be met. The complaint should at least set forth basic facts as to who did what to whom, when, where and – if relevant to the case – why. See Educadores, 367 F.3d at 68. Additionally, in evaluating a motion to dismiss for failure to state a claim a court must "eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." See id. at 68. While a plaintiff need not plead facts in evidentiary detail, a complaint will be deemed insufficient if all it does is "[parrot] the language of a statutory cause of action, without providing some factual support." See United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 240 (1st Cir. 2004).

In sum, the following principles apply: (1) a § 36(b) plaintiff need only set forth a "short and plain statement" that gives "fair notice" of the claim of breach of fiduciary duty with respect to the receipt of compensation or other material payments made by the fund or its shareholders; and (2) the

plaintiff need not plead in a high degree of factual detail and failure to plead specifically any of the Gartenberg factors is not itself a ground for dismissal; but (3) a § 36(b) complaint is not sufficient if it rests solely on general and conclusory legal assertions that the fees charged were excessive.

### III.     Adequacy of the Complaint

With these principles in mind, I conclude that the complaint in this case contains sufficiently specific factual allegations to comport with Rule 8.

The plaintiffs have made allegations regarding the nature and quality of services provided to fund shareholders by the defendants. They allege that while the MFS Funds have grown dramatically in size, the nature of the services rendered by the defendants has changed little, if at all. Instead, they allege that the defendants' costs have actually decreased because of advances in communications and computer technologies. See Compl. ¶¶ 15, 41. The plaintiffs further allege that the incremental costs to the defendants of "providing advisory services to Plaintiffs are nominal, while the additional fees received by Defendants are hugely disproportionate given that the nature, quality, and level of the services remains the same." They claim that "a review of Defendants' full costs of providing advisory services will also demonstrate the enormous profitability to Defendants of managing the Funds." Compl. ¶ 47, see also Compl. ¶¶ 15, 48. In these respects, the plaintiffs' contention is that the defendants were required by their duty as fiduciaries with respect to compensation to pass on the cost-saving benefits from increases in scale and efficiency to their beneficiaries, the funds.

The plaintiffs also allege that the defendants receive indirect compensation through various channels, including receipt of "soft dollars" from broker dealers, Compl. ¶ 61, receipt of "kickbacks," either directly or indirectly, as transfer agency and custodian fees grow due to increases in the assets of the funds and number of shareholders, Compl. ¶ 62, receipt of compensation under "securities

lending arrangements" involving MFS Fund securities, Compl. ¶ 63, and the ability to resell investment advisory services paid for by the MFS Funds at virtually no additional cost, Compl. ¶ 64. According to the plaintiffs, despite their receipt of all this additional compensation, the defendants have not proportionately reduced the fees charged the funds as they should (according to the plaintiffs) as fiduciaries, but rather have selfishly limited the benefits of the additional sources of compensation to themselves.

The plaintiffs also allege that the defendants charge third party clients who truly bargain for MFS services at "arm's length" less for identical investment advisory services than they do the MFS Funds. See Compl. ¶¶ 9-10, 41-42, 58. This may be taken as an assertion, among other things, that the defendants have charged an above-market fee to the funds, where the market fee is defined as that established by true arm's length bargaining.

The plaintiffs further allege that the defendants were able to overcharge the funds because the MFS Funds' trustees lacked independence. In support of this contention, the plaintiffs say that the defendants provided the trustess with virtually no information regarding the advisory fees being charged to non-MFS Fund clients and the economies of scale or fall-out benefits received by the defendants, the trustees failed to request and evaluate information reasonably necessary to make an informed decision regarding the MFS Funds' distribution plans, and the trustees rarely, if ever, questioned any information or recommendations provided by the defendants. See Compl. ¶¶ 70-71.

All of these allegations are factual, not merely conclusory, though they may be allowably summary. The complaint, when read as whole, puts the defendants on fair notice of the plaintiffs § 36(b) claims and does not merely plead legal conclusions or simply parrot a statutory cause of action as the defendants allege. The defendants rely heavily on cases that are not binding precedent

6

in this district in order to argue that the complaint should be dismissed. See Sheldon Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140 (3d Cir. 2002); Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321 (4th Cir. 2001); Yampolsky v. Morgan Stanley Inv. Advisers, Inc., No. 03 Civ. 5710 (RO), 5896 (RO), 2004 WL 1065533 (S.D.N.Y. May 12, 2004). To the extent that those cases can be read as standing for a general principle that a plaintiff cannot state a claim sufficiently simply by alleging a legal conclusion that fees were excessive without any facts supporting that conclusion or by relying on generalizations about the securities industry and speculation, I agree and find that in this case–for the reasons set forth above–the plaintiffs have done more than that. On the other hand, to the extent those cases can be read as requiring a higher level of factual pleading under § 36(b), I find such an interpretation of the law to be inconsistent with the applicable standard under Rule 8, as I have described it above. Furthermore, this case presents a different set of alleged deficiencies than those that led the courts to dismissal in those cases, underscoring the fact that the analysis of the sufficiency of a complaint must be conducted on an individualized case-by-case basis.

Finally, the defendants argue that Counts II and III are simply duplicative of Count I and fail to state a claim. Each count asserts a particular basis for § 36(b) liability. It is certainly conceivable that the three counts could have been brought as one, but the objection seems more an editorial than a substantive one. There is no reason at this stage to worry about possible duplication. If that becomes a genuine problem, it can be dealt with at an appropriate time.

**IV.     Conclusion**

For the foregoing reasons, defendants' motion to dismiss is DENIED. Count IV is dismissed based on the plaintiffs' voluntary abandonment of that claim.

It is SO ORDERED.

| | |
|---|---|
| January 19, 2006 | \s\ George A. O'Toole, Jr. |
| DATE | DISTRICT JUDGE |