## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARCUS DUMOND, et al.,<br><br>                              Plaintiffs,<br><br>          v.<br><br>MASSACHUSETTS FINANCIAL SERVICES<br>COMPANY and MFS FUND DISTRIBUTORS, INC.,<br><br>                              Defendants. | No. 04-CV-11458-GAO |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER CONCERNING THE STATUTORY DAMAGES PERIOD

### INTRODUCTION

Plaintiffs are shareholders of several MFS mutual funds (collectively, the "Funds") who have brought claims under § 36(b) of the Investment Company Act of 1940 ("ICA") against Massachusetts Financial Services Company and MFS Fund Distributors, Inc. ("MFS" or "Defendants"), the Funds' investment adviser and distributor, respectively. Section 36(b) imposes upon an investment adviser, such as MFS, a fiduciary duty with respect to the receipt of compensation. 15 U.S.C. §80a-35(b).

Pursuant to investment management agreements with the Funds, MFS provides investment advisory services for which each Fund pays a fee based on its net asset value. In violation of their fiduciary duty Defendants have collected, and continue to collect, excessive investment management fees from the Funds and have wrongfully retained the benefits of economies of scale inherent in the investment advisory function as opposed to adequately sharing these benefits with the Funds and their shareholders. Further, Defendants have levied excessive 12b-1 fees on the Funds which inure little, if any, benefit to the Funds or their shareholders but which Defendants use as a means to extract additional advisory compensation.

Defendants have filed a Motion for Protective Order Concerning The Statutory Damages

Period ("Motion") (Docket No. 53),[1] which seeks a ruling from this Court (1) declaring that the damages period in this case shall be limited to May 5, 2003 to May 4, 2004, the one year period prior to its filing of the Complaint and (2) prohibiting plaintiffs from seeking discovery after May 4, 2004, except to the extent that documents created after that date contain or reflect responsive information relating to the period from May 5, 2003 to May 4, 2004.

In so arguing, Defendants rely upon §36(b)(3) of the ICA, which reads, in relevant part, as follows "***No award of damages shall be recoverable for any period prior to one year before the action was instituted***." 15 U.S.C. §80a-35(b)(3) (emphasis added).

Defendants' analysis of the damages period applicable under §36(b) is defective on several levels. Neither the unambiguous text of the statute, nor the case law Defendants cite, supports the notion that §36(b) precludes the recovery of damages incurred after the filing of the lawsuit. While the statute limits Plaintiffs' retrospective recovery, it in no way limits prospective damages for continuing wrongdoing. Therefore, Defendants' motion requesting a ruling limiting the damages period to one year, and a concomitant limitation on relevant discovery, should be denied.

## ARGUMENT

### A.     Section 36(b) Was Intended to Serve a Broad Remedial Purpose.

Section §36(b) of the ICA was enacted to serve a "broad remedial purpose" and was designed specifically to curb prevalent abuses by mutual fund advisers. See *Daily Income Fund v. Fox*, 464 U.S. 523, 541 (1984); Indeed, the impetus behind §36(b) was a recognition that the relationship between an investment adviser, such as MFS, and the mutual funds it manages is "fraught with potential conflicts of interest," *id.* at 536, and that "forces of arm's-length bargaining do not work

---

[1]Defendants' Motion incorporates by reference the arguments presented in Defendants' Memorandum in Support of Their Motion For Protective Order Concerning the Statutory Damages Period filed in Forsythe v. Sun Life Financial, Inc., No. 04-10584-GAO (D. Mass) (Docket No. 134) (the "Forsythe Memorandum").

in the mutual fund industry in the same manner as they do in other sectors of the American economy." Investment Company Amendments Act of 1970, S. Rep. No. 91-184, reprinted in 1970 U.S.C.C.A.N. 4897, 4901, 1969 WL 4981 (Leg. Hist. May 21, 1969). A check on investment advisers was needed because "self-dealing is not the exception but, so far as management is concerned, the order of the day." *Moses v. Burgin*, 445 F.3d 369, 376 (1st Cir. 1971).

Although a fund's unaffiliated directors are to act as "independent watchdogs" over the adviser, *Burks v. Lasker*, 441 U.S. 471, 484 (1979), Congress acknowledged that it was unrealistic to rely "solely on the fund's directors to assure reasonable adviser fees," *Daily*, 464 U.S. at 541. As a result, §36(b) was enacted to provide shareholders with an effective means to redress breaches of fiduciary duty, such as here, where self-dealing by an adviser has resulted in unfair and excessive fees. 1970 U.S.C.C.A.N. at 4898.

As the First Circuit held *In re Frank J. Evangelist*, 760 F.2d 27, 30 (1st Cir. 1985), actions under §36(b) are equitable and are to be administered on equitable standards. Defendants' Motion, which seeks to circumvent Plaintiffs' rights to redress ongoing breaches of fiduciary duty, must be considered against the broad, equitable and remedial purpose of §36(b). Barring Plaintiffs' ability to recover excessive fees levied on Fund assets after the filing of the Complaint would frustrate, not vindicate, the remedial purpose of the statute by jeopardizing shareholders' right to redress ongoing breaches of fiduciary duty under §36(b).

**B.    Neither the Clear Statutory Language of §36(b)(3), Nor the Case Law Interpreting It, Limits Plaintiffs' Ability to Pursue Post-Filing Damages for Continuing Violations of the Statute.**

**1.    The Plain Meaning of a Statute is Controlling.**

The First Circuit case law is well-established that the "starting point for interpretation of a statute is the language of the statute itself." *Arnold v. United Parcel Service, Inc.*, 136 F.3d 854 (1st Cir. 1998) (*quoting Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990)). If

the language of a statute "is plain and admits of no more than one meaning" and "if the law is within

the constitutional authority of the law-making body which passed it," then "the duty of interpretation

does not arise," and "the sole function of the courts is to enforce the statute according to its terms."

*Arnold*, 136 F.3d at 858 (*quoting Caminetti v. United States*, 242 U.S. 470, 485 (1917)).  Thus,

"[courts] need not look into a statute's legislative history if the statutory language is plain...."  Id.

(*citing Summit Inv. & Dev. Corp. v. Leroux*, 69 F.3d 608, 610 (1st Cir.1995) ("Plain statutory

language does not prompt recourse to countervailing legislative history.")).[2]

> ### 2. The Clear, Unambiguous Statutory Language Does Not Limit Post-Filing Damages.

Section 36(b)(3) of the ICA states, in no uncertain terms, the following: "***No award of***

***damages shall be recoverable for any period prior to one year before the action was instituted.***"

 15 U.S.C. §80a-35(b)(3) (emphasis added).   Thus, while the statute limits the ***pre***-filing damage

period to one year,[3] it in no was limits the recovery of ***post***-filing damages.  As a result, the statute's

one-year look back period is not a cap on ***future*** damage recovery.  Had Congress intended to

implement an absolute limit on ICA damages to a single twelve-month period prior to the filing of

---

[2]*See also Consumer Product Safety Comm. v. GTE Sylvania*, 447 U.S. 102, 108 (1980) ("Absent a clearly expressed legislative intent to the contrary, the language of the statute is regarded as conclusive"); *Strickland v. Maine Dept. of Human Services*, 48 F.3d 12, 16 (1st Cir. 1995) ("We look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed."); *U.S. v. Rivera*, 131 F.3d 222. 226 (1st Cir. 1997) ("Resort to legislative history typically is inappropriate when meaning of statute is plainly discernible from its words, and if statute's text is encompassing, clear on its face, and productive of plausible result, court's inquiry, at most, should be aimed at determining whether there is clearly expressed legislative intention contrary to statutory language, which would require court to question strong presumption that Congress expresses its intent through language it chooses."); *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 277 n.2 (1st Cir. 1999) (when a statute's plain meaning resolves the issue, the court "need not rummage through the legislative history or search for other interpretive aids").

[3] *See, e.g., Green v. Fund Asset Mgmt, L.P.*, 286 F.3d 682, 685 (3rd Cir. 2002) ("damages are not recoverable for any period ***prior to*** one year before the action was instituted") (emphasis added); *Krinsk v. Fund Asset Management, Inc.*, 875 F.2d 404, 408 n. 2 (2nd Cir. 1989) ("damages … may not be recovered for any period ***prior to*** one year before the commencement of the action") (emphasis added); *In re Dreyfus Mut. Funds Fee Litig*, 428 F.Supp.2d 342, 352 (W.D.Pa. 2005) ("This case was instituted on January 30, 2004. Therefore, plaintiffs cannot recover any damages sustained ***prior to*** January 30, 2003.") (emphasis added).

suit, it could have done so.  Instead, the ICA only limits the recovery of damages backwards in time but in no way limits continuing, post-filing damages that extend into the future.[4]

Thus, in *Hunt v. Invesco Funds Group, Inc.*, Civil Action No. H-04-02555, 2006 WL 1751900 at *1 (S.D. Tex. June 22, 2006), the Court recognized that "the language of the ICA … does not limit damages for the period of time following the filing of the action."  Specifically, in ruling on a Motion to Vacate or Clarify Statements Regarding the Damage Period and Clarify Discovery Time Period,  the *Hunt* court stated:

> The Court did not intend its statements regarding the limitation of damages under the ICA to constitute a ruling on the appropriate damages period for this case, nor did it intend its statements to be a ruling as to whether or not Plaintiffs can recover damages for continuing violations of the ICA during the period following the filing of their complaints. ***Additionally, the Court recognizes that the language of the ICA, that "[n]o award of damages shall be recoverable for any period prior to one year before the action was instituted," (emphasis added) does not limit damages for the period of time following the filing of the action***.[5]

*Id.*, at *1 (emphasis added).

---

[4] Even assuming arguendo that the language of §36(b)(3) could be regarded as ambiguous, a longer damages period would still apply under the well-accepted presumption that ambiguous language in a remedial statute should be construed broadly to effectuate its purpose.  *See Hogar Agua Y Vida En El Desierto, Inc. v. Suarez-Medina*, 36 F.3d 177, 181 (1st Cir. 1994) (remedial statute's ambiguous language should be generously construed consistent with its reformative mission).

[5] Case law interpreting analogous statutes supports a party's right to recover damages from post-filing violations.  For instance, §36(b)'s damage provision is strikingly similar to the statutory time limitation for patent infringement actions, which has been interpreted to limit only pre-filing damages.  The applicable patent infringement statute provides in relevant part that "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint."  *See* 35 U.S.C. §286. The Federal Circuit has stated that statute "only restricts the extent one can recover pre-filing damages." *Leinoff v. Milona*, 726 F.2d 734, 741 (Fed. Cir. 1984).  Similarly, the relevant "damage period" for an antitrust claim begins "four years prior to the filing of the complaint (15 U.S.C. §15b) and ends … the date of the commencement of trial on the liability issue." *Esposito v. Mister Softee, Inc.*, 1983 WL 1806, *1, n.4(E.D.N.Y. Apr. 11, 1983). Even the equitable defense of laches does not bar a claim for post-filing damages. *See, e.g., A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1041  (Fed. Cir. 1992) (en banc) (Laches bars the award of damages incurred prior to the filing of suit; it generally does not bar a claim for post-filing damages); *Giese v. Pierce Chemical Co.*, 20 F.Supp.2d 33, 38 (D. Mass. 1998) (Young, J.) (Where laches is established, the patent holder's claim for damages prior to suit may be barred, but post-filing damages and injunctive relief may still be available absent egregious circumstances").

Although the court did not specifically rule on the relevant damage period in *Hunt*, it was not in a position to do so.  The case was in the process of being transferred to another district and, discovery in *Hunt* was in its infancy.  As a result, the factual record was not yet developed to the degree that would have allowed the court to decide the issues of post-Complaint damages.  Nevertheless, despite the impending transfer, the *Hunt* court saw the importance of clarifying its earlier order that the defendants were improperly interpreting to limit discovery.  In doing so, the court specifically acknowledged the important and incontrovertible point that a clear reading of §36(b) does not limit post-filing damages.[6]

### C.    When a Continuing Wrong Is Alleged, As is the Case Here, Plaintiffs May Recover Damages Incurred Until The Time of Trial.

In support of their motion, Defendants erroneously state that Plaintiffs do not seek ongoing relief.  Contrary to Defendants' false allegations, the Complaint specifically alleges ongoing violations of §36(b) from which Plaintiffs and the Funds continue to be damaged and seeks damages from one year prior to the commencement of this lawsuit through the trial of this case.  *See* Complaint, ¶28 ("Because the conduct complained of herein is continuing in nature, Plaintiffs seek a recovery commencing at the earliest date in light of any applicable statute of limitations through the date of final judgment after trial"). *See also* Complaint, ¶¶, 74, 75, 78, 79, 83, 88.  Indeed, each count of Plaintiffs' Complaint alleges continuing breaches of fiduciary duty with respect to receipt of compensation under Defendants' continued agreements with the Funds.

---

[6]Other §36(b) cases have also recognize that future, ongoing damages, may be recoverable.  For example, in *Krinsk v. Fund Asset Mgmt., Inc.*, 715 F.Supp. 472 (S.D.N.Y. 1988), although the court did not expressly rule on post-complaint damages, it allowed evidence of post-complaint excessive fees (*id.*, at , 479, 483-84, 488, 494, and 49),  and substantively ruled that the fees for that time period were not excessive (*id.* at 502-03) – a ruling that would have been unnecessary if post-complaint fees are irrelevant. Indeed, in *Schuyt v. Rowe Price Prime Reserve Fund, Inc.*, 663 F.Supp. 962, 963.n.2 (S.D.N.Y. 1987), *aff'd*, 835 F.2d 45 (2d Cir. 1987), cert. denied, 485 U.S. 1034, the parties stipulated that the relevant period for purposes of trial on plaintiffs' §36(b) claims extended from April 24, 1979 through February 25, 1981 (representing "two complete contract years, 1979 and 1980, and the renewal process for the 1981 contract").

When a continuing wrong is alleged, as is the case here, damages correspondingly continue to run after the filing of the complaint. *McAllister v. Secretary of Health and Human Services*, 70 F.3d 1240, 1243 (Fed. Cir. 1995) ("a recovery for past damages ordinarily includes not only those damages that the plaintiff incurred before filing the complaint, but also any damages that the plaintiff incurs up to the time of trial."); *see also Norwest Bank Minnesota Nat'l Ass'n.*, 312 F.3d 447, 452 (D.C. Cir. 2002) (proof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of verdict); *Jones v. U.S.*, 255 F.3d 507, 509-510 (8th Cir. 2001) (affirming award of damages to investor "between the time of the loss and the date of trial); *Marquardt v. Starcraft Marine*, 876 F.2d 61, 62 (9th Cir. 1989) (affirming jury award "for general damages to the date of trial"); *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061-62 (8th Cir. 1994) (plaintiff entitled to "most complete relief possible").

As long as "the original pleading placed the defendant on notice that the disputed conduct was of a continuing nature, the defendant is generally expected to defend against all claims arising out of that course of conduct-whether accruing before or after the original pleading was filed." *Kemper Ins. Companies v. U.S.*, 2004 WL 1811390, *4 (W.D.N.Y. Aug. 13, 2004) . *See also McAllister v. Secretary of Health and Human Services*, 70 F.3d 1240, 1243 (Fed. Cir. 1995) ("A recovery for past damages ordinarily includes not only those damages that the plaintiff incurred before filing the complaint, but also any damages that the plaintiff incurs up to the time of trial.").

**D.    The Case Law Cited By Defendants Is Unavailing.**

There is no controlling authority in the First Circuit on the of whether question damage period for a §36(b) claim may extend past the filing date, presenting an issue of first impression for this Court.  None of the cases cited by Defendants constitutes controlling authority requiring this Court to limit damages in this case to the one-year period prior to the filing of the Complaint.  Indeed, no controlling decision has squarely ruled that §36(b) damages end when a suit is filed.  Faced with this dilemma, Defendants paint a distorted picture of courts' "rulings" in order to create the impression that they support Defendants' flawed interpretation of §36(b).  However, a review of these cases makes readily apparent that Defendants have not accurately represented their holdings.

For example, in both *Daily*, *supra*, and *Grossman v. Johnson*, 674 F.2d 115 (1st Cir. 1982), the only First Circuit case cited by Defendants, the courts held that the demand requirement governing derivative actions does not apply to §36(b) actions.  These cases contain no discussion or interpretation of the limitation of damages pursuant to §36(b)(3) but simply paraphrase the statute as part of a general discussion of other, unrelated issues.  *Daily*, 464 U.S. at 526, n.2; *Grossman*, 674 F.2d at 199.  Indeed, the *Daily* and *Grossman* courts were not presented with the issue of when the damages period under §36(b) ends, much less did they hold that damages accruing after a suit is filed are precluded.

Likewise, the decisions Defendants cite from other jurisdictions do not rule on the issue of post-filing damages and, therefore, are equally unavailing.  Rather, Defendants have managed to round up several cases in which courts merely paraphrased or summarized §36(b)'s language, in the context of addressing other unrelated issues, without engaging in any statutory interpretation.  For instance, in *Green v. Nuveen Advisory Corp.*, 295 F.3d 738, 743 (7th Cir. 2002), the court paraphrased the statute, but the holding contains no discussion or interpretation of limitation of

damages under §36(b).  Similarly, in *Fox v. Reich & Tang, Inc.*, 692 F.2d 250,261 (2nd Cir. 1982), the court was not asked to determine when the damages period under §36(b) ends, and, in discussing the inapplicability of demand requirements, the court simply paraphrased portions of the statute.

In *In re AllianceBernstein Mutual Fund Excessive Fee Litig.*, No. 04-4885, 2006 WL 74439, *2 (S.D.N.Y. Jan. 11 2006), the district court granted a motion to dismiss §36(b) claims based on the fact that plaintiffs failed to plead facts demonstrating that any of the fees charged during the one-year period prior to filing of the complaint were excessive.  The court made no ruling on, and there was no discussion of, the statute's effect on damages continuing after the complaint was filed. In *Krinsk v. Fund Asset Management, Inc.*, No. 85-8428, 1986 WL 205, **2-4 (S.D.N.Y. May 9, 1986), the court was confronted with whether the one-year limitations period for pre-filing damages could be tolled during the pendency of substantially similar actions by other shareholders.  The court ruled tolling was inappropriate, but the tolling sought by the Krinsk plaintiffs was to preserve the ability to seek damages prior to one year preceding the filing of the complaint.  The court did not interpret the statute in terms of damages continuing after the date the complaint was filed (although, as discussed in footnote 6, *supra*, the court did allow evidence of post-filing breaches of fiduciary duty to be presented at trial).   Similarly, in *Brever v. Federated Equity Mgmt. Co.*, 233 F.R.D. 429, 433, 435 (W.D.Penn. 2005) and *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1037-38 (2d Cir. 1992), any mention of the limitations period under §36(b) is merely *dicta* and provides no support for Defendants' position regarding post-filing damages.

The only ruling that supports Defendants' interpretation of §36(b)(3) is a District of Minnesota discovery order in *Gallus v. American Express Fin. Corp.*, Case No. 04-4498 (D. Minn. May 30, 2006).  There, the Magistrate Judge limited plaintiffs' discovery related to post-complaint damages but not post-complaint liability.  As such, *Gallus* does not support the discovery issues

raised in Defendants' Motion. Nevertheless, *Gallus* is not binding authority for this court and contrary to the plain language of §36(b). Indeed, because the language of §36(b) is clear, if used to limit Plaintiffs' post-filing damages here, *Gallus* encourages a result that is anathema to accepted rules of statutory interpretation. *Cons. Prod. Safety Comm. v. GTE Sylvania*, 447 U.S. 102, 108 (1980) ("Absent a clearly expressed legislative intent to the contrary, the language of the statute is regarded as conclusive").

      **E.**      **The Legislative History Proffered by Defendants does not Contradict Plaintiffs' Interpretation of the Plain Language of Section 36(b).**

As discussed above, the analysis of a statute's meaning must begin with the language of the statute itself, and, if that language is clear and unambiguous, any further construction is foreclosed. In the event that the text of a statute is not clear, the First Circuit has directed courts to review legislative intent "skeptically" and has noted the inherent unreliability in legislative history:

> Critics say, for example, that legislative history is written by staffers rather than by Congress itself; that it is easily manipulated; that it complicates the tasks of execution and obedience; and that it often is shaped by members of Congress who cannot achieve passage of a desired interpretation in the actual text of an enacted statute.

*Strickland v. Maine Dept. Serv.*, 48 F.3d 12, 17 n.3 (1st Cir. 1995). In the present case, the statutory language is clear and unambiguous, negating the need to resort to secondary sources-such as legislative history-for guidance. Defendants' rogue interpretation of unequivocal statutory language regarding post-filing damages, coupled with their efforts to resort to obscure legislative history to, in essence, "muddy the waters," encourages a result that is wholly inconsistent with accepted rules of statutory interpretation. To be sure, a limitation on damages under §36(b)(3) would require a departure from the plain language of the statute.

However, assuming this Court decides to consider the legislative history proffered by Defendants (if only to confirm the correctness of its plain reading of the text), that history does not

contradict the plain language of §36(b). For instance, Defendants suggest that *Brever*, *supra,* and *AllianceBernstein*, *supra*, support the position that the legislative history of § 36(b) is consistent with Defendants' faulty interpretation of the statute. This argument is unavailing. The quoted portions of *Brever* and *AllianceBernstein* merely support those courts' holdings that damages are not recoverable any farther back than the one-year period prior to the filing of suit, a result clearly dictated by the statutory language. Neither court was presented with the question of whether post-filing damages are recoverable, and their discussions did not deal with when damages under §36(b) end. *AllianceBernstein*, 2006 WL 74439, at *2; *Brever*, 223 F.R.D. at 433,35.

Second, the legislative history each case borrowed does not speak to post-filing limitations either. Like the cases in which it was cited, the legislative history cited by *Brever* and *Alliance-Berstein* is limited in application to a discussion of the policy behind the limitation period before the filing of the complaint. *AllianceBernstein*, 2006 WL 74439, at*2 n.3; *Brever*, 223 F.R.D. at 432-33. The quoted history does not address the period after the filing of the complaint and does not provide any rationale for ending damages at the time the complaint is filed. Thus, Defendants' citations to the legislative history of §36(b) suffer from the same shortcomings and near-sighted analysis that Defendants employed when citing to case law.

Defendants also rely upon the SEC's original proposal for the legislation that became §36(b), which included a damage limitation going back two years as opposed to the one-year damage period that Congress ultimately enacted. Defendants surmise that because Congress shortened the period from that proposed by the SEC, it intended to restrict the damage period to the one-year period preceding the filing of a complaint and was not receptive to "open-ended" or "rolling" damages. Once again, Defendants resort to illogical leaps of reasoning based on legislative history taken out of context that does not address post-filing damages. It is clear that the SEC's proposal was intended to limit damages before the filing of a complaint but does not discuss whether damages end at any

particular time.  See Report of the Securities and Exchange Commission on the Public Policy

Implications of Investment Company Growth, H.R.Rep. No. 2337, 89th Cong., 2d Sess. (1966) at

pp. 144, 147-46 ("SEC Report").

The same SEC report also recommended that injunctive relief and other equitable remedies

be available going forward:

> The two year limitation on recovery of compensation paid by
> investment companies prior to the institution of suit *would not affect
> the jurisdiction of the courts to enjoin for the future the payment of
> compensation deemed violative of the statutory standard*.

See SEC Report, at p. 147 (emphasis added).

Thus, the SEC clearly intended that parties would be entitled to post-complaint relief.

Indeed, the availability of injunctive relief eventually found its way into what became §36(b)'s

inclusion of "damages and other relief." *Jones v. Harris Associates, L.P.*, No. 04-8305, 2005 WL

831301, **2-3 (N.D. Ill. 2005) ("plain language of [§36(b)] refutes [adviser's] contention that the

only remedy to be had is monetary").

**F.    Defendants' Interpretation of Section 36(b)'s Limitation on Damages is Belied
by Other Sections of the ICA and is Illogical Because Any One-Year Period
May Encompass as Many as Three Contract Periods.**

Defendants also argue the "one year damage limitation fits into a statutory framework in

which investment advisers are required to have a new contract (and thus new fees) negotiated and

approved by the independent trustees every year." Thus, they argue that under the statutory scheme,

Congress intended §36(b) to redress only the most recent agreement that violate the statute.

First, had Congress been interested in limiting damages to the most recent contract year, it

could have written the statute to allow damages for just "one year's contract."  As evidenced by the

plain language of the statute, it did not.  Further, Defendants' argument that a new contract (and thus

new fees) must be negotiated each year is belied by other sections of the ICA that govern the

approval and continuance of a fund's advisory agreement. Specifically, §15(a) requires that an investment advisory agreement may "continue in effect for a period more than two years from the date of its execution, only so long as such continuance is specifically approved at least annually" by the fund's trustees or a majority vote of the fund's shareholders. 15 U.S.C. §80a-15(a). Therefore, the ICA does not require that a new contract be executed each year, rather, it requires that, in order for an investment adviser – such as MFS – to continue in that capacity, its contract with the fund must be evaluated and continued annually by the fund's board.

This is precisely what happened at MFS. Here, minutes of Fund board meetings and memoranda from MFS and the independent trustees' counsel, which discuss renewal of the Funds' agreements in 2002, demonstrate unequivocally that a continuation of the investment advisory agreements (not a re-negotiation of new contracts) is precisely what occurs with respect to the Funds.[7] In addition, publicly filed documents for the Funds indicate that in 2003, 2004, 2005, and 2006 the Funds' investment advisory agreements were similarly continued. *See, e.g.*, Statements Additional Information for the MFS Total Return Fund dated February, 2004, February, 2005, and February 2006 [relevant excerpts attached hereto as Exhibits 7, 8 and 9, respectively] (stating the "Advisory Agreement has an initial two-year term and continues in effect thereafter only if such

_____

[7]*See* Minutes of the June 19, 2002 Meeting of the Trustees of the MFS Funds [relevant excerpts in redacted form are Exhibit 1]; Memorandum to the MFS Funds Board dated March 31, 2002 [relevant excerpts attached in redacted form are Exhibit 2]; Memorandum from Ropes & Gray to Trustees dated March 31, 2002 [relevant excerpts in redacted form are Exhibit 3]; Minutes of the June 18, 2003 Meeting of the Trustees of the MFS Funds [relevant excerpts in redacted form are Exhibit 4]; Memorandum to the MFS Funds, dated March 31, 2003 [relevant excerpts in redacted form are Exhibit 5]; Memorandum from Ropes& Gray to Trustee, dated March 31, 2003 [relevant excerpts in redacted form are Exhibit 6]. Copies of the Exhibits 1 - 6, have been served upon Defendants' counsel but are not appended to this Opposition. Pursuant to the Stipulation and Protective Order [Docket No. 130], Plaintiffs' Counsel has notified Defendants of their intent to use redacted excerpts of the foregoing documents, which have been designated as confidential, in connection with this memorandum. Plaintiffs do not believe that the documents, in their redacted form, contain any confidential information. Nevertheless, under the Stipulation and Protective Order, Defendants have five days in which to file a motion to impound. If no motion to impound is filed, Plaintiffs will file Exhibits 1 - 6 with the Court as part of a supplemental filing. Otherwise, Plaintiffs will filed the Exhibits under seal, pursuant to this Court's order.

*continuance* is specifically approved at least annually by the Board of Trustees or by vote of a majority of the Fund's shares ….") (emphasis added).

The foregoing documentation makes readily apparent that, consistent with §15(a), the Funds' advisory agreements were initially approved and have since been continued annually by the Funds' trustees.  Thus, the statutory framework, as well as its practical implementation by MFS and the Funds' trustees, supports Plaintiffs' position that the advisory agreements are continued (and thus that the alleged wrongs are continuing in nature), not that each renewal constitutes a new contract and a new cause of action.

Not only do Defendants misperceive the statutory framework governing the advisory contract approval process, Defendants' reading of §36(b) also defies logic and is internally inconsistent.  As an initial matter, to have any chance at practical application, the contract renewal periods would have to line up perfectly with the filing date of the complaint.  Otherwise the one-year period prior to the filing of the complaint will necessarily subsume fees paid pursuant to two contract years as is the case here.[8]

In this case, the one-year period prior to the filing of the Complaint is May 5, 2003 to May 4, 2004.  It is indisputable that this period of time involves at least two contract renewal periods (the contract covering the period of time from August 1, 2002 to July 31, 2003, and the contract covering the period of time from August 1, 2003 to July 31, 2004).  Thus, assuming arguendo that Defendants are correct that each contract year constitutes a separate cause of action, at the very minimum, the operative Complaint asserts causes of action related to two contract years, the later of which cover fees paid through the end of July 2004 – nearly three months after this action was filed.  Moreover,

---

[8]In the unlikely event that the filing date was the same as the contract renewal date, Defendants' approach does not address the judicial and practical inefficiencies caused by the need to file yearly suits to redress an adviser's receipt of excessive fees year after year.

by May 4, 2004, Defendant had already commenced the renewal process fo the August 1, 2004 - June 31, 2005 contract year, thereby implicating a third contract year in this action.

Ultimately, discovery will determine for how long the wrongdoing, and therefore, the damages continued. If as alleged in the Complaint, the wrongdoing continued after the Complaint was filed, then Plaintiffs should be able recover of those excessive fees on behalf of the Funds for the post-filing period.

### G.   Defendants' Attempt to Limit Post-filing Damages Would Result In Gross Inefficiencies and Would Waste Judicial Resources.

A decision that §36(b) limits recovery of damages to the one-year period prior to the filing of the complaint would result in gross inefficiencies and waste already-limited judicial resources. If accepted, Defendants' position as to the applicable damages period would require Plaintiffs to file yearly suits in order to protect and preserve their rights to seek redress for Defendants' ongoing violations of the ICA. Otherwise, plaintiffs – who continue to be harmed – could not protect themselves against an arbitrary one-year damage ceiling. The end result of Defendants' approach would be an unnecessary inundation of the courts with identical lawsuits that would then have to be consolidated for trial, or separately tried – in either case an extremely inefficient process.[9] Bogging down the federal courts with needless case filings could not be the result that Congress intended.

There are no practical considerations that provide a rationale for overriding the plain language of 36(b). It is clear that Defendants' interpretation would encourage repeated lawsuits and interfere with the orderly administration of justice. The wrongs (and concomitant damages) alleged by Plaintiffs did not artificially end when the complaint was filed. Thus, such continuing damages are properly measured up to the date of trial.

---

[9]This is precisely what has happened in *Wicks v. Putnam Investments, LLC,* No. 04-cv-10988(D. Mass).

**H.    Defendants' Allegations Regarding Plaintiffs' Discovery Requests Are Unfounded And Its Attempts to Restrict Discovery Are Improper.**

In addition to being dependent on an erroneous interpretation of the damages limitation in §36(b) cases, Defendants' attempt to curtail relevant discovery by limiting it to the damage period in this case is in contravention of the liberal mandate of the federal rules.[10]   The scope of discoverable information is delineated in Fed. R. Civ. P. 26(b)(1), which states in relevant part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party.... It is not ground for objection that the information sought will be inadmissible at the trial if information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The Federal Rules of Civil Procedure provide for broad discovery extending to "any matter, not privileged, that is relevant to the claim or defense of any party."   Fed. R. Civ. P. 26(b)(1); see *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).   "[T]he scope of discovery under the federal rules is broad and 'discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995).  A plaintiff should be allowed extensive discovery in order to prove his or her case.  *See Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975).  "Relevancy is to be broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D.Mass.1984) (*quoting Miller*

---

[10]It had been Plaintiffs' understanding, that pursuant to this Court's instructions, the issue of the applicable damages period would be decided first and that Plaintiffs, therefore, would not have to address any of the additional discovery issues raised by Defendants' Motion.  The Court scheduled a discovery hearing on January 23, 2007, to address those discovery issues not resolved by the resolution of the damage period. Because Plaintiffs' counsel and Defendants' counsel could not reach an common understanding about this issue, Plaintiffs' counsel responds to Defendants' discovery argument herein.

*v. Doctor's General Hospital*, 76 F.R.D. 136, 138 (W.D.Okla.1977)).

Courts in this District have long recognized that a party resisting discovery "has the burden of showing some sufficient reason why discovery should not be allowed ⋯" *Flag Fables, Inc. v. Jean Ann's Country Flags and Crafts, Inc.*, 730 F.Supp. 116 (D.Mass.,1989) (*citing Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D.Mass.1976)); *see also Fairbanks v. American Can Co.*, 110 F.R.D. 685, 687 (D.Mass.1986).

Here, though Defendants seek relief pursuant to Rules 26(b)(2) and 26(c), their motion is devoid of the type of cost-benefit analysis that is required to demonstrate that discovery should not be had, much less to demonstrate good cause for a protective order.[11] Rather, Defendants' motion relies on a series of conclusory remarks about "expense" and time that do not establish that any alleged burden outweighs Plaintiffs' need for documents related to the advisory agreements that are the subject of the Complaint. Defendants also have made unsupported, generic objections to the "relevancy," "overly broad," and "granular," nature of the discovery sought. In fact, the only basis proffered by Defendants for any of these conclusory discovery objections is based upon their faulty interpretation of the damages limitation set forth in §36(b)(3) and their allegation that almost all documents created after the filing of the complaint are irrelevant if their view of the damages period is accepted. However, the Defendants do admit that even under their faulty interpretation of the damages period, Plaintiffs are entitled to documents that post-date the Complaint.

Notwithstanding Defendants' generalized objections, Plaintiffs' discovery requests are particularly tailored to factors relevant to the determination of whether the fees charged to the Funds are excessive and the extent to which Defendants have realized economies-of-scale benefits but have

---

[11]Defendants appear to be seeking relief under Fed. R. Civ. P. 26(b)(2)(iii), which permits the court to limit discovery if it determines that the "burden of expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

not passed them on to the Funds.[12]   This inquiry necessarily entails a review of the services Defendants provide the Funds (and the quality of that service) and the financial benefit that Defendants derive from their relationship with the Funds, including Defendants' costs and profitability-information that is critical to Plaintiffs' claims.

Further, even if Defendants were correct as to the applicable damages period (which they are not), Defendants' limitations on the time period for discovery hinders Plaintiffs' ability to prove their case by preventing them from accessing and evaluating crucial information related to economic cycles.  As a practical matter, whether fees are excessive in a particular year cannot be determined based on a static snapshot of information for that year but rather depends on how the data and the dynamics of the evaluative process change over time.  The evaluation of whether fees in any given year are excessive is guided by context and history.   Other courts addressing similar issues in the context of a §36(b) case have agreed:  "The Court is unaware of any case law or statute which provides that the limitations period establishes the time boundaries for relevant evidence.  Evidence regarding repeated approval of the management agreement may reflect upon the excessive nature of the fees."  *Batra v. Investors Research Corp.*, 144 F.R.D. 97, 98-99 (W.D. Mo. 1992).

---

[12]In fact, Plaintiffs' discovery requests in large part track the *Gartenberg* factors that courts and fund directors have considered relevant when determining whether a fee violates §36(b).  *Krinsk v. Fund Asset Mgmt, Inc.*, 875 F.2d 404, 409 (2d Cir. 1989) (defining the factors set forth in *Gartenberg v. Merrill Lynch Asset Mgt., Inc.*, 694 F. 2d 923, 929-30 (2d Cir. 1982) as (1) the nature and quality of the services provided by the adviser to the funds; (2) the profitability of the fund to the adviser-manager; (3) economies of scale in operating the fund; (4) comparative fee structures; (5) fall-out benefits, i.e., indirect profits to the adviser attributable in some way to the existence of the fund; and (6) the independence and conscientiousness of the directors).  As this Court recognized in *Wicks v. Putnam Investment Management, LLC*, No. 04-10988, 2005 WL 705360, *4 (D. Mass. March 28, 2005), the First Circuit has not expressly adopted the *Gartenberg* factors and Plaintiffs question whether this Circuit would adopt the *Gartenberg* standard, which departs so dramatically from the notion of what constitutes a breach of fiduciary duty.  Nevertheless, Plaintiffs have tailored their discovery requests to these factors in light of the fact that some courts have followed *Gartenberg* and that *Gartenberg* factors represent the very minimum inquiry a fund board should undertake when reviewing fees.

To be useful, the information sought by Plaintiffs needs to cover a time period which allows the evaluation of internal and external changes that affect that information.   For these reasons, Plaintiffs urge this court to reject Defendants' attempt to limit the temporal scope of discovery.

## CONCLUSION

The primary purpose of §36(b) is to protect shareholders from excessive fees and other abuses at the hands of opportunistic advisors and conflicted directors.  Section 36(b)(3)'s damage limitation is like any other statute of limitations - it looks backwards (not forward) and seeks to provide parties with protection from stale damage claims, and from being forced to defend oneself after memories have faded, witnesses have disappeared, and evidence has been lost.  Section 36(b)(3) seeks to provide the investment community with minimal disruptive effect on the mutual fund industry structure by restricting parties from going too far back in time in order to seek recoupment of excessive fees paid in years past.  However, here Defendants seek to take a backwards looking statute of limitations and apply it to bar all damages for violations which continue after the Complaint is filed. Defendants' position is inconsistent with the plain language of the statute, the law of the First Circuit on statutory construction, and is not supported by the case law.  It, therefore, should be rejected by the Court.

Defendants have failed to show the requisite good cause which would entitle them to a protective order.  As such, Plaintiffs respectfully request that Defendants' Motion be denied and that they be ordered to produce the discovery requested by Plaintiffs.

Dated: November 9, 2006                Respectfully submitted:

                                       SHAPIRO HABER & URMY LLP

                                         /s/ Michelle H. Blauner
                                       Edward F. Haber BBO #215620
                                       Michelle H. Blauner BBO #549049
                                       53 State Street
                                       Boston, MA  02109
                                       Telephone: (617) 439-3939

                                       Lynn Lincoln Sarko
                                       Michael D. Woerner
                                       Laura Gerber
                                       KELLER ROHRBACK, L.L.P.
                                       1201 Third Avenue, Suite 3200
                                       Seattle, WA 98101-3052
                                       Telephone: (206) 623-1900

                                       Michael J. Brickman
                                       James C. Bradley
                                       Nina H. Fields
                                       RICHARDSON,  PATRICK,  WESTBROOK  &
                                       BRICKMAN, LLC
                                       174 East Bay Street
                                       Charleston, SC  29401
                                       Telephone: (842) 727-6500

                                       Guy M. Burns
                                       Jonathan S. Coleman
                                       Becky Ferrell-Anton
                                       JOHNSON, POPE, BOKOR, RUPPEL & BURNS,
                                       L.L.P.
                                       100 North Tampa Street, Ste. 1800
                                       Tampa, FL  33602
                                       Telephone: (813) 225-2500

                                       Attorneys for Plaintiffs

**<u>Certificate of Service</u>**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on the 9th day of November, 2006.

**/s/ Michelle H. Blauner**
Michelle H. Blauner