

# FORM 485BPOS

## MFS SERIES TRUST V – MFRFX

Filed: January 28, 2005 (period: )

Registration statement for management investment companies) 485(b)

```
                                                -------------------------
                                                MFS (R) TOTAL RETURN FUND
                                                -------------------------

                                                FEBRUARY 1, 2005

M F S(SM)                                       STATEMENT OF ADDITIONAL
INVESTMENT MANAGEMENT(R)                                    INFORMATION

A SERIES OF MFS SERIES TRUST V
500 BOYLSTON STREET, BOSTON, MA 02116
(617) 954-5000
```

This Statement of Additional Information, as amended or supplemented from time to time (the "SAI"), sets forth information which may be of interest to investors, but which is not necessarily included in the Fund's Prospectus dated February 1, 2005. This SAI should be read in conjunction with the Prospectus. The Fund's financial statements are incorporated into this SAI by reference to the Fund's most recent Annual Report to shareholders. A copy of the Annual Report accompanies this SAI. You may obtain a copy of the Fund's Prospectus and Annual Report without charge by contacting MFS Service Center, Inc. (see back cover of Part II of this SAI for address and phone number).

This SAI is divided into two Parts -- Part I and Part II. Part I contains information that is particular to the Fund, while Part II contains information that generally applies to each of the funds in the MFS Family of Funds (the "MFS Funds"). Each Part of the SAI has a variety of appendices which can be found at the end of Part I and Part II, respectively.

THIS SAI IS NOT A PROSPECTUS AND IS AUTHORIZED FOR DISTRIBUTION TO PROSPECTIVE INVESTORS ONLY IF PRECEDED OR ACCOMPANIED BY A CURRENT PROSPECTUS.

Source: MFS SERIES TRUST V, 485BPOS, January 28, 2005

STATEMENT OF ADDITIONAL INFORMATION
PART II

Part II of this SAI, updated through January 1, 2005, as amended or supplemented from time to time, describes policies and practices that apply to each of the Funds in the MFS Family of Funds. References in this Part II to a "Fund" mean each Fund in the MFS Family of Funds, unless noted otherwise. References in this Part II to a "Trust" means the Massachusetts business trust of which the Fund is a series, or, if the Fund is itself a Massachusetts business trust, references to a "Trust" shall mean the Fund.

-----------------
TABLE OF CONTENTS
-----------------

|      |                                                                                    | PAGE |
|------|------------------------------------------------------------------------------------|------|
| I    | Management of the Fund                                                             | 1    |
|      | Trustees/Officers                                                                  | 1    |
|      | Investment Adviser                                                                 | 1    |
|      | Administrator                                                                      | 2    |
|      | Custodian                                                                          | 2    |
|      | Shareholder Servicing Agent                                                        | 3    |
|      | Distributor                                                                        | 3    |
|      | Program Manager                                                                    | 3    |
|      | Codes of Ethics                                                                    | 3    |
| II   | Principal Share Characteristics                                                    | 3    |
|      | Class A, Class 529A and Class J Shares                                             | 3    |
|      | Class B, Class 529B, Class C, Class 529C, Class R1, Class R2 and Class I Shares    | 4    |
|      | Waiver of Sales Charges                                                            | 4    |
|      | Financial Adviser Commissions and Concessions                                      | 4    |
|      | General                                                                            | 4    |
| III  | Distribution Plan                                                                  | 5    |
|      | Features Common to Each Class of Shares                                            | 5    |
|      | Features Unique to Each Class of Shares                                            | 6    |
| IV   | Investment Techniques, Practices, Risks and Restrictions                           | 7    |
| V    | Net Income and Distributions                                                       | 7    |
|      | Money Market Funds                                                                 | 7    |
|      | Other Funds                                                                        | 7    |
| VI   | Tax Considerations                                                                 | 8    |
|      | Taxation of the Fund                                                               | 8    |
|      | Taxation of Shareholders                                                           | 8    |
|      | Special Rules for Municipal Fund Distributions                                     | 11   |
|      | Special Considerations for 529 Share Classes                                       | 12   |
| VII  | Portfolio Transactions and Brokerage Commissions                                   | 13   |
| VIII | Disclosure of Portfolio Holdings                                                   | 14   |
| IX   | Determination of Net Asset Value                                                   | 15   |
|      | Money Market Funds                                                                 | 16   |
|      | Other Funds                                                                        | 16   |
| X    | Shareholder Services                                                               | 16   |
|      | Investment and Withdrawal Programs                                                 | 16   |
|      | Exchange Privilege                                                                 | 19   |
|      | Tax-Deferred Retirement Plans                                                      | 20   |
|      | Qualified Tuition Programs                                                         | 20   |
| XI   | Description of Shares, Voting Rights and Liabilities                               | 20   |
|      | Appendix A -- Waivers of Sales Charges                                             | A-1  |
|      | Appendix B -- Financial Intermediary Commissions and Concessions                   | B-1  |
|      | Appendix C -- Investment Techniques, Practices and Risks                           | C-1  |
|      | Appendix D -- Description of Bond Ratings                                          | D-1  |
|      | Appendix E -- Trustees and Officers -- Identification and Background               | E-1  |
|      | Appendix F -- Investment Restrictions                                              | F-1  |
|      | Appendix G -- Proxy Voting Policies and Procedures                                 | G-1  |
|      | Appendix H -- Recipients of Non-Public Portfolio Holdings on an Ongoing Basis      | H-1  |

I    MANAGEMENT OF THE FUND

     TRUSTEES/OFFICERS

     BOARD OVERSIGHT -- The Board of Trustees which oversees the Fund provides broad supervision over the affairs of the Fund. The Adviser is responsible for the investment management of the Fund's assets, and the officers of the Trust are responsible for its operations. The Trustees have appointed several persons to serve as "Advisory Trustees", each of

whom have been nominated by the Trustees for election as Trustees by shareholders.

TRUSTEES AND OFFICERS -- IDENTIFICATION AND BACKGROUND -- The identification and background of the Trustees and Officers of the Trust are set forth in Appendix E of this Part II.

TRUSTEE RETIREMENT PLAN -- Prior to December 31, 2001, the Trust (except MFS Series Trust XI) had a retirement plan for non-interested Trustees and Trustees who were not officers of the Trust. Effective as of December 31, 2001, the Trustees terminated the Trust's retirement plan except as to Trustees who retired on or prior to that date. When the plan was terminated, an amount equivalent to the present value of each applicable Trustee's accrued benefits thereunder through the date of termination was calculated. For certain Funds, the Trustees received a lump sum payment of this amount. For other Funds, the Trustees deferred receipt of these accrued benefits under a new deferred benefit plan, under which the value of the benefits is periodically readjusted as though an equivalent amount had been invested in shares of the applicable Fund. The deferred benefits will be paid to the Trustees upon retirement or thereafter and will be based on the performance of the applicable Funds. Deferral of fees in accordance with the plan will not materially affect a Fund's assets, liabilities or net income per share. The plan does not obligate a Fund to retain the services of any Trustee or pay any particular level of compensation to any Trustee. The plan is not funded and a Fund's obligation to pay the Trustee's deferred compensation is a general unsecured obligation.

Trustees who retired on or prior to December 31, 2001, and who had served as Trustee for at least five years at the time of retirement, are entitled to certain payments under the retirement plan. Each such Trustee is entitled to receive annual payments during his or her lifetime of up to 50% of the Trustee's average annual compensation (based on the three years prior to his or her retirement) depending on the Trustee's length of service. The Fund amortizes its payment obligations under the plan.

INDEMNIFICATION OF TRUSTEES AND OFFICERS -- The Declaration of Trust of the Trust provides that the Trust will indemnify its Trustees and officers against liabilities and expenses incurred in connection with litigation in which they may be involved because of their offices with the Trust, unless, as to liabilities to the Trust or its shareholders, it is determined that they engaged in willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of their offices, or with respect to any matter, unless it is adjudicated that they did not act in good faith in the reasonable belief that their actions were in the best interest of the Trust. In the case of settlement, such indemnification will not be provided unless it has been determined, pursuant to the Declaration of Trust, that they have not engaged in willful misfeasance, bad faith, gross negligence or reckless disregard of their duties. Rights to indemnification or insurance cannot be limited retroactively.

INVESTMENT ADVISER
The Trust has retained Massachusetts Financial Services Company ("MFS" or the "Adviser") as the investment adviser for its Funds. MFS and its predecessor organizations have a history of money management dating from 1924. MFS is a subsidiary of Sun Life of Canada (U.S.) Financial Services Holdings, Inc., which in turn is an indirect wholly owned subsidiary of Sun Life Financial Services of Canada, Inc. (an insurance company).

MFS votes proxies on behalf of the Funds pursuant to the proxy voting policies described in Appendix G to this SAI. Information regarding how each Fund voted proxies relating to portfolio securities during the most recent twelve month period ended June 30th is available without charge by visiting mfs.com and clicking on "Proxy Voting" and by visiting the SEC's website at http://www.sec.gov.

INVESTMENT ADVISORY AGREEMENT -- The Adviser manages the Fund pursuant to an Investment Advisory Agreement (the "Advisory Agreement") for all of the Funds in the Trust. Under the Advisory Agreement, the Adviser provides the Fund with overall investment advisory services. Subject to such policies as the Trustees may determine, the Adviser makes investment decisions for the Fund. For these services and facilities, the Adviser receives an annual investment advisory fee, computed daily and paid monthly, as disclosed in the Prospectus under the heading "Management of the Fund(s)."

The Adviser pays the compensation of the Trust's officers and of any Trustee who is an officer of the Adviser. The Adviser also furnishes at its own expense investment advisory and administrative services, including office space, equipment, clerical personnel, investment advisory facilities, and all executive and supervisory personnel necessary for managing the Fund's investments and effecting its portfolio transactions.

Source: MFS SERIES TRUST V, 485BPOS, January 28, 2005

The Trust pays the compensation of the Trustees who are "not affiliated" with the Adviser and all expenses of the Fund (other than those assumed by the Adviser) including but not limited to: management fees; Rule 12b-1 fees; administrative services fees; program management services fees; governmental fees; interest charges; taxes; membership dues in the Investment Company Institute allocable to the Fund; fees and expenses of independent auditors, of legal counsel, and of any transfer agent, registrar or dividend disbursing agent of the Fund; expenses of repurchasing and redeeming shares and servicing shareholder accounts; expenses of preparing, printing and mailing stock certificates, shareholder reports, notices, proxy statements, confirmations, periodic investment statements and reports to governmental officers and commissions; brokerage and other expenses connected with the execution, recording and settlement of portfolio security transactions; insurance premiums; fees and expenses of the Fund's custodian, for all services to the Fund, including safekeeping of funds and securities and maintaining required books and accounts; expenses of calculating the net asset value of shares of the Fund; organizational and start up costs; and such non-recurring or extraordinary expenses as may arise, including those relating to actions, suits or proceedings to which the Fund is a party or otherwise may have an exposure, and the legal obligation which the Fund may have to indemnify the Trust's Trustees and officers with respect thereto. Expenses relating to the issuance, registration and qualification of shares of the Fund and the preparation, printing and mailing of prospectuses for such purposes are borne by the Fund except that the Distribution Agreement with MFS Fund Distributors, Inc. ("MFD") requires MFD to pay for prospectuses that are to be used for sales purposes. Expenses of the Trust which are not attributable to a specific series are allocated between the series in a manner believed by management of the Trust to be fair and equitable.

The Advisory Agreement has an initial two-year term and continues in effect thereafter only if such continuance is specifically approved at least annually by the Board of Trustees or by vote of a majority of the Fund's shares (as defined in "Investment Restrictions" in Appendix F of this Part II of this SAI) and, in either case, by a majority of the Trustees who are not parties to the Advisory Agreement or interested persons of any such party. The Advisory Agreement terminates automatically if it is assigned and may be terminated without penalty by vote of a majority of the Fund's shares (as defined in "Investment Restrictions" in Appendix F of this Part II of this SAI), or by either party on not more than 60 days' nor less than 30 days' written notice. The Advisory Agreement may be approved, renewed, amended or terminated as to one Fund in the Trust, even though the Agreement is not approved, renewed, amended or terminated as to any other Fund in the Trust.

The Advisory Agreement grants to the Trust and the Fund a non-exclusive and non-transferable right and sub-license to use the names "Massachusetts Financial Services," "MFS" or any derivatives or logos associated with those names. If MFS for any reason no longer serves as investment adviser to the Fund, the Fund will promptly cease to use these MFS marks. MFS may permit other clients to use these MFS marks in their names or other material.

The Advisory Agreement also provides that neither the Adviser nor its personnel shall be liable for any error of judgment or mistake of law or for any loss arising out of any investment or for any act or omission in the execution and management of the Fund, except for willful misfeasance, bad faith, gross negligence or reckless disregard of its or their duties and obligations under the Advisory Agreement.

ADMINISTRATOR
MFS provides certain financial, legal, shareholder communications, compliance, and other administrative services to the Funds. Under a Master Administrative Services Agreement between the Funds and MFS, MFS is entitled to partial reimbursement of the costs MFS incurs to provide these services, subject to review and approval by the Boards of Trustees of the Funds. Each Fund is allocated a portion of these administrative costs based on its size and relative average net assets.

Effective April 1, 2004, each Fund pays MFS an administrative fee up to the following annual percentage rates of the Fund's average daily net assets:

| | |
|---|---|
| First $2 billion | 0.01120% |
| Next $2.5 billion | 0.00832% |
| Next $2.5 billion | 0.00032% |
| In excess of $7 billion | 0.00000% |

In addition, MFS is responsible for providing certain administrative services with respect to Class R2 shares. These services include various administrative, recordkeeping and communication/educational services with respect to the retirement plans which invest in Class R2 shares, and may be provided directly by MFS or by a third party. The Fund pays an annual 0.25% administrative service fee solely from the assets of Class R2